**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN
DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| RAVI P. RAWAT, on behalf of himself and others similarly situated,<br><br>          Plaintiff,<br>v.<br><br>NAVISTAR INTERNATIONAL CORPORATION,<br><br>          Defendant. | No. 08-3038<br><br>Honorable John W. Darrah |

**EMERGENCY MOTION FOR A PROTECTIVE ORDER TO PREVENT
DEFENDANT FROM CONTACTING PUTATIVE CLASS MEMBERS AND
SOLICITING RELEASES**

Plaintiff Ravi P. Rawat asks this Court to for an emergency protective order

granting interim class certification and appointing interim class counsel, plus until the

Court resolves the class issues, an order: (a) barring Defendant from making contacts

and/or communications with class members regarding this case; (b) barring Defendant

from soliciting or obtaining further releases from class members; (c) voiding all releases

Defendant obtained from class members; (d) requiring Defendant to produce copies of all

communications with putative class members regarding this case or their rights under the

Company's Stock Option Plan; and (e) ordering a corrective Notice to be sent to all class

members, at Defendant's expense.

**INTRODUCTION**

This case is brought on behalf of current and former employees of Navistar whose

stock options expired during the Navistar's "blackout period." (in this context, a period

during which employee stock options could not be exercised)  Navistar's blackout period

began on April 6, 2006 when the Company announced that its financials were materially misstated and the Company would have to go through a process to restate those financials.  During the blackout period, Navistar refused to permit employees and former employees to exercise their options, during which a large number of such options expired.  By refusing to permit their exercise and enforce their option rights, Navistar breached its obligations under those option contracts.

Although the Company previously did nothing to remedy its resulting breach of the employees' right to exercise stock options, once this action was filed the Company set upon a dishonest scheme to thwart this litigation and coercively obtain releases from the putative class.

### 1.    Defendant's Scheme to Undermine this Litigation

This case was filed on May 23, 2008 and served on May 23, 2008.  Declaration of Clinton A. Krislov ¶ 2 (attached hereto as Ex. A).[1]  On June 11, 2008, Defendant's counsel Robin Hulshizer called to introduce her firm and requested Plaintiff counsel's agreement to extend Navistar's time to respond to Plaintiff's complaint, representing that the extension was for "convenience of counsel," ascribed to weddings and vacations. CAK Dec. ¶ 3.  Plaintiff's counsel Krislov readily agreed to the extension. CAK Dec. ¶ 3.

Less than two weeks later, on June 24, 2008, the hearing date for Defendant's Motion to Extend time to respond, undersigned counsel Clinton A. Krislov received an anonymous call inquiring about the case from a person claiming to be a putative class member who has received a communication from Navistar that asked the recipients to release their claims against the Company and covenant not to sue.  CAK Dec. ¶ 4.  The same day, at 10:14 a.m. Krislov e-mailed Ms. Hulshizer with his concerns. CAK Dec. ¶

---

[1] References to the Krislov Declaration will appear "CAK Dec. ¶ __.)

5. (e-mail attached as Ex. B)  An hour later, Ms. Hulshizer returned the call professing not to have seen the e-mail and confirmed that the letter was sent to all option holders not currently in litigation with the Company.  CAK Dec. ¶ 6.

The Letter[2].  Review shows that the letter is indeed misleading and coerces class members into precipitously signing releases (rather than encouraging class members to seek their own counsel and tax advice, they are promised that releases received before July 3 are promised check by July 31, with all other releases received by August 1, promised a check by August 31) explicitly precluding them from participating in this action, and directing any questions to the Company.  Indeed, the extension was not for convenience of counsel, but a subterfuge to allow the Defendant a sufficient opportunity to contact putative class members in an effort to undermine this litigation.

The best interests of the class are at stake. Indeed, this Court's intervention is necessary to protect putative class members from hastily signing away their rights for a dubious payment with adverse tax consequences.  A defendant's *ex parte* communication with putative class members for purposes of settlement is situation rife with conflicts and abuse, especially where Defendant's communications coerce putative class members into signing releases.

> ## 2.    *Navistar's Inadequate and Coercive Offer*

More specifically, Navistar's June 20, 2008, letter -- apparently sent to all employees and former employees whose options expired during the blackout period[3] who were not in litigation with the Company (i.e., excepting only Mr. Rawat) -- improperly

---

[2] Attached hereto as Exhibit C.

[3] Importantly, the recipients of the letter were all members of the putative class described in Plaintiff's Class Action Complaint.

asks putative class members to release not only their current claims against the Company, but also asks putative class members sign a covenant not to sue and explicitly references this case. Importantly, the letter incentivizes class members to act before July 3, 2008 (but not after August 1, 2008) and channels any questions solely to Defendant Navistar.

As consideration, Navistar offers the putative class members the difference between the: "closing price on the date your option expired and the exercise price for all of your options on the expiration date." *Id.* In return, Navistar asks putative class members to release all claims to the expired options and "the claims described **in the putative class action complaint filed against the Company by attorney Clinton A. Krislov on behalf of Mr. Ravi P. Rawat**. . ." *Id.* (emphasis added) Navistar mandated that the putative class members must respond by August 1, 2008, and if class members respond as soon as July 3, 2008, the Company will accelerate the cash payment.

The deadlines to respond and secure rapid payment of the offer are rapidly approaching, making a protective order necessary. The putative class has an extremely limited amount of time to return the releases to the Company and the Company has added an incentive to class members to send those releases immediately.

In more than 33 years of practice, 25 years of class action practice, undersigned counsel Krislov has never previously experienced conduct of this sort. Irrefutably, the request to extend time to answer was a ruse to facilitate Defendant's scheme -- this letter was an improper attempt to undermine the litigation by offering putative class members inadequate consideration for their claims against the Company.

### 3.    *Relief sought by Plaintiff*

Accordingly, Plaintiff asks this Court to grant interim class certification and

appoint interim class counsel and enter a protective order:  (a) barring Defendant from

making contacts and/or communications with class members regarding this case; (b)

barring Defendant from soliciting or obtaining further releases from class members; (c)

voiding all releases Defendant obtained from class members; (d) requiring Defendant to

produce copies of all communications with putative class members regarding this case or

their rights under the Company's Stock Option Plan; and (e) ordering a corrective Notice

to be sent to all class members, at Defendant's expense.

## NATURE OF THE ACTION

Navistar's employees and former employees who received stock options pursuant

to the Company's Stock Option Plan were unable to exercise those vested options for an

indefinite period of time beginning April 6, 2006 (the "blackout period") because of the

Company's malfeasance.  Specifically, Navistar needed to restate its financials that were

previously materially misstated.

By causing the blackout period and refusing to allow Navistar employee stock

option holders to exercise their options – which are contracts[4] -- during this blackout

period, Navistar breached the option contracts and its duty of good faith and fair dealing

to the option holders.

All of the options were granted pursuant to and are governed by a single

document: Navistar's Stock Option Plan.  The class consists of current and former

---

[4] It is well settled that stock options are contracts.  *Lamb v. Emhart Corp.*, 47 F.3d 551, 560 (2d Cir. 1995)("The issuance of stock options constitutes a contract between the employer and employee, supported by the consideration of the employee's subsequent continued employment."); *Scully v. U.S. Wats, Inc*., 238 F.3d 497, 507 (3d Cir. 2001)(stating "an executive stock option is a contract"), *In re Allen*, 226 B.R. 857, 862 (N.D. Ill. 1998)(stating "A stock option is a contract for transfer of shares of stock, subject to the same rules of construction as any other contract")(citations omitted), *Owen v. Merts*, 405 S.W.2d 273, 277 (Ark. 1966), *Klusener v. Commissioner of Internal Revenue*, Nos. 5383-87, 6237-87, 1989 WL 14814 (U.S. Tx. Ct.).

Navistar employees who received -- but could not exercise -- their stock options. Class members were harmed because their options either expired or became less valuable during the blackout period.

## PROCEDURAL BACKGROUND

On May 23, 2008, Plaintiff filed this class action on behalf of all employees and former employees whose options expired during the Company's blackout period. Plaintiff properly served the Company on May 29, 2008.  Navistar was scheduled to respond by June 18, 2008.

On June 11, 2008, Navistar's counsel contacted Plaintiff's counsel to secure an extension, for convenience of counsel, to respond to Plaintiff's Class Action Complaint. Plaintiff's counsel agreed to the extension based Defendant's representations that it could not respond by June 18, 2008, because of scheduling conflict.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 23(d)(3) and (5), it is well settled that courts may "impos[e] conditions on the representative parties or on intervenors … [and] deal[] with similar procedural matters." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981)[5].  The Supreme Court, in *Gulf Oil*, recognized that class actions serve an important function in our system of civil justice, but present opportunities for abuse. *Id.* The Court further declared that courts have the power to restrict communications between defendants and putative class members before the class is even certified.  *Id.* at 100.  See

---

[5] Although *Gulf Oil* involved contact with a putative class by plaintiff's counsel, lower courts have applied the case to contact initiated by defendants and their counsel as well. *Jones v. Jeld-Wen, Inc*., --- F.R.D. ---, 2008 WL 2058517 (S.D. Fla. 2008)(citing *Kleiner v. First National Bank of Atlanta*, 751 F.2d 1193 (11th Cir.1985); *Great Rivers Cooperative of South-Eastern Iowa v. Farmland Industries, Inc*., 59 F.3d 764 (8th Cir.1995); *Cox Nuclear Medicine v. Gold Cup Coffee Services, Inc*., 214 F.R.D. 696 (S.D. Ala.2003)).

also, *In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237 (S.D.N.Y. 2006)(stating that "a unilateral communications scheme . . . is rife with potential for coercion.")

Communications that undermine the purposes of Rule 23 include misleading communications and communications which affect a putative class members' decision to participate in the class action. *Id.* (citing *Hampton Hardware Inc. v. Cotter & Co. Inc.*, 156 F.R.D. 630, 632 (N.D. Tex. 1994)). Navistar's communication falls squarely within in this standard because it clearly attempts to undermine the litigation.

## ARGUMENT

Almost a month after the Defendant had been served with Plaintiff's Class Action Complaint, Defendant contacted putative class members[6] in order to persuade the class members to release their claims against the Company in exchange for a cash payment reflecting the difference between their options' exercise price and the Company's closing price on the day their options expired. It is imperative to the interests of the class that this Court halts this practice and allows Plaintiff's counsel access to the documents sent to the putative class members.

Plaintiff asks for a protective order under Fed. R. Civ. P. 23(d)(3) and (5): (a) barring Defendants from making contacts and/or communications with class members regarding this case; (b) barring Defendants from soliciting or obtaining further releases from class members; (c) voiding all release forms Defendants obtained from class members; (d) requiring Defendants to produce copies of all communications with putative class members regarding this case or their rights under the Company's Stock

---

[6] Notably, the putative class members' rights in this litigation were protected as of the filing date of the complaint. See, *Kahan v. Rosenstiel*, 424 F.2d 161, 169 (3d Cir. 1970).

Option Plan; and (e) ordering a corrective Notice to be sent to all class members, at Defendants' expense.

### A.    Defendant's Communication With Putative Class Members Is Improper

When a defendant contacts putative class members for the purpose of altering the status of a pending litigation, such communication is improper without judicial authorization. *In re Currency Conversion Fee Antitrust Litig*., 361 F. Supp. at 253 (citing *Hampton Hardware*, 156 F.R.D. at 633). Quite obviously, the Company's offer is meant to materially prejudice this litigation.

Further, Defendant's offer to the putative class members fails to recognize that an employee who exercises a stock option has a choice: 1) to immediately sell his or her share on the open market; or 2) hold his or her share for investment and/or tax purposes and sell at a later date. Here, the offer assumes that each and every class member would have sold on the date that he or she exercised the option. Considering that Navistar's stock price traded between $27 (at the beginning of the blackout period) and $75 (currently), the price at which a class member could have – indeed could still -- sell his or her shares is significantly higher that what has been offered to the class.

### 1.    The communication is misleading and coercive

Even a cursory reading of the letter shows that Defendant is trying to settle this action's claims without involving class counsel. The letter coerces putative class members into accepting less consideration than the litigation seeks. In fact, the letter's content is a thinly veiled "take it or leave it" offer.[7] With consecutive sentences stating:

---

[7] The offer was sent to option holders that were both employees and non-employees. Courts have consistently held that "if the class and the class opponent are in an ongoing business relationship, communications from the class opponent to the class may be coercive." *Ralph Oldsmobile Inc. v.*

". . . The Company does not believe that it has an obligation to compensate individuals for the Expired Options or that the claims set forth in the Complaint are valid, and **we intend to vigorously contest all of the relief Mr. Rawat seeks**." Ex. C (emphasis added)

Followed by:

"This **one-time opportunity** will be available until **August 1, 2008**. . ." *Id*. (emphasis added)

Even more coercively, Defendant guarantees an extra incentive for quick action:

"If we receive the executed Payment and Release **on or before July 3, 2008**, unless you direct otherwise we will mail a check in the amount of your payment . . . on or before July 31, 2008." *Id.* (emphasis added)

Further, the letter does not outline the recipient's rights and encourages employees not to contact putative class counsel, but the Company, stating:

"If you have questions not answered in this letter, please contact Howard Kuppler at (630) 753-2149." *Id.*

This letter is a unilateral effort to influence putative class members' decisions to participate in this litigation and the exact type of coercive communication that Courts routinely curb. See, *In re Currency*, 361 F. Supp. at 253 (holding that defendants' unsupervised communications were improper because they sought to eliminate putative class members' rights in the litigation). *In re School Asbestos Litig.*, 842 F.2d 671, 683 (3d Cir. 1988)(condemning attempts in a communication to affect a class member's decision to participate in the litigation) and *Hampton Hardware v. Cotter & Co.*, 156 F.R.D. 630, 634 (N.D. Tex. 1994)(stating "communications as to the instant litigation must end.").

Finally, the Manual for Complex Litigation echoes the reasoning in *In re*

---

*General Motors Corp.*, 2001 WL 1035132 (S.D.N.Y.)(citing *Jenifer v. Delaware Solid Waste Auth.*, 1999 WL 117762 (D. Del.).

*Currency*, and *Hampton Hardware*, stating that: "Defendants and their counsel generally may communicate with potential class members in the ordinary course of business, including discussing settlement before certification, but may not give false, misleading, or intimidating information, conceal material information, or attempt to influence the decision about whether to request exclusion from a class certified under Rule 23(b)(3)." *Manual for Complex Litigation*, Fourth § 21.12 (2004).

Defendant's solicitation is not merely a communication sent in the ordinary course of business, but is in direct relation to the litigation and has improperly made a coercive and misleading offer to putative class members to avoid scrutiny by this Court.

Barring Defendant from communicating with the Class and voiding any releases sent by the class will allow the litigation proceed to for maximum benefit of the putative class, rather than the class being faced with a unilateral, coercive, offer.

### 2.    The offer to putative class members is inadequate

The offer to the putative class members seeks a release in consideration of a cash payment. The cash payment reflects the spread between his or her options' exercise price and the Navistar's trading price the day that the option expired. The offer, however, fails to disclose that class members may be entitled to a higher cash payment. If the putative class members exercised and held the options instead of immediately selling the options, they would receive a two-fold benefit: 1) Navistar's stock appreciated, making holding the stock more valuable than immediately selling the stock; and 2) holding the stock creates more favorable tax treatment than an immediate sale.

Indeed, Navistar's offer fails to acknowledge or disclose that fact in its offer, which radically undervalues the consideration.

**B.     This Court may void all releases sent to the Company**

Further, this Court may void the releases sent by putative class members to the coercive offer. *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1199 (11th Cir. 1985)(finding that a district court had the power to void "opt-outs" by class members that stemmed from defendant's improper communications with putative class members.") The misleading and coercive nature of the notice weighs in favor of voiding all releases sent to the Company.

**C.     The Court Should Allow Corrective Notice at Defendant's Expense**

Plaintiff also asks this Court to compel production of all communications sent to each individual class member, with each "Statement of Offer" attached thereto. Such information is needed to correct the misleading and coercive "offer." Exacerbating matters, putative class members have only days to respond to the offer before it expires, with an incentive to respond within two weeks, creating undue pressure on the class members to respond hastily. Corrective notice to the putative class is essential. Courts have continually found this measure appropriate to allow class members to have all available information to make informed decision about their rights. See *Ralph Oldsmobile Inc. v. General Motors Corp.*, 2001 WL 1035132 (S.D.N.Y.) and *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193 (11th Cir. 1985).

**D.     Who's responsible?**

While Plaintiff will take Ms. Hulshizer's word that she was unaware, it is not believable that this was done without knowledge of Navistar's counsel, the Law Offices of Laurence H. Levine and Latham & Watkins LLP, and they should be compelled to explain this conduct.

## CONCLUSION

Accordingly, because of Defendant's improper contact with putative class members in an effort to materially prejudice this litigation, Plaintiff asks this Court to certify an interim class and appoint interim class counsel and for an order: (a) barring Defendant from making contacts and/or communications with class members regarding this case; (b) barring Defendant from soliciting or obtaining further releases from class members; (c) voiding all releases Defendant obtained from class members; (d) requiring Defendant to produce copies of all communications with putative class members regarding this case or their rights under the Company's Stock Option Plan; and (e) ordering a corrective Notice to be sent to all class members, at Defendant's expense.

Dated:  June 25, 2008

Respectfully submitted,


_s/Clinton A. Krislov_____
Clinton A. Krislov

Clinton A. Krislov
Jeffrey M. Salas
KRISLOV & ASSOCIATES, LTD.
20 North Wacker Drive, Suite 1350
Chicago, Illinois  60606
Tel.:  (312) 606-0500
Fax:  (312) 606-0207

## PROOF OF SERVICE

I, Jeffrey M. Salas, an attorney, state that I caused a copy of the foregoing Motion to be delivered via the Court's Electronic Case Filing System on Wednesday, June 25, 2008 to the counsel below.

/s/ Jeffrey M. Salas_____
Attorney for Plaintiff

Robin Hulshizer
Cary R. Perlman
Latham & Watkins LLP
233 South Wacker Drive
5800 Sears Tower
Chicago, IL 60606
(312) 876-7700

Laurence Harvey Levine
Laurence H. Levine Law Offices
190 South LaSalle
Suite 3120
Chicago, IL 60603
312 927 0625

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| RAVI P. RAWAT, on behalf of himself and others similarly situated,<br><br>                Plaintiff,<br>v.<br><br>NAVISTAR INTERNATIONAL CORPORATION,<br><br>                Defendant. | No. 08-3038<br><br>Honorable John W. Darrah |

**DECLARATION OF CLINTON A. KRISLOV IN SUPPORT TO PLAINTIFF'S EMERGENCY MOTION FOR A PROTECTIVE ORDER TO PREVENT DEFENDANT FROM CONTACTING PUTATIVE CLASS MEMBERS**

I, CLINTON A. KRISLOV, declare as follows:

1.      I am an attorney duly licensed to practice before all of the courts of the States of Illinois and Michigan and am the principal of the law firm Krislov & Associates, Ltd.  I have personal knowledge of the matters stated herein and, if called upon, I could and would competently testify thereto.   I make this declaration in support of Plaintiff Ravi P. Rawat's Emergency Motion For a Protective Order to Prevent Defendant from Contacting Putative Class Members and Soliciting Releases.

2.      On May 23, 2008, Plaintiff Ravi P. Rawat filed the above-captioned action in the Northern District of Illinois.  The complaint was served on the Defendant on May 29, 2008.

3.      On June 11, 2008, Defendant's counsel Robin Hulshizer called me to introduce her firm, requested our agreement to extend Navistar's time to respond to Plaintiff's complaint, representing that the extension was for "convenience of counsel," ascribed to weddings and vacations. I told her that this was not likely to be a problem and confirmed this on June 13, 2008.

4.      On June 24, 2008, during the time set for hearing on Defendant's Unopposed Motion to Extend Time to Respond, I received an anonymous call inquiring about the case from a person claiming to be a putative class member who had received a communication from Navistar that asked the recipients to release their claims against the Company and covenant not to sue.

5.      Also on June 24, 2008, at 10:14 a.m., I e-mailed Ms. Hulshizer and demanded to see any such communication sent by Defendant.

6.      She called me back an hour later claiming not to have received my e-mail, but was ostensibly calling to advise me of a letter sent by Navistar and agreed to provide me a copy of that letter.

7.      Later that afternoon, we received the communication from Ms. Hulshizer's colleague, Cary R. Perlman.

8.      Mr. Perlman's cover letter and Navistar's June 20, 2008 letter is attached to Plaintiff's motion as Exhibit C.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 25th day of June, 2008, at Chicago, Illinois.


_____
Clinton A. Krislov

# EXHIBIT B

**Clint**

| | |
|---|---|
| **From:** | Clint |
| **Sent:** | Tuesday, June 24, 2008 10:14 AM |
| **To:** | 'robin.hulshizer@lw.com' |
| **Cc:** | 'Mark Baiocchi'; Jeff |
| **Subject:** | Navistar-When I extended you the courtesy of additional time to answer, I never imagined that it would be used in this fashion. |

Robin,

We have received notification that the company is contacting putative class members, asking them to agree to forego litigation over the options. While I agreed to extend you the courtesy of additional time to answer, which you asserted to be due to other lawyer's weddings or other litigation matters, I have never experienced it being used strategically to solicit putative class members to waive their rights. This is entirely inappropriate.

I demand that you immediately provide me with particulars of all such communications, identities of those who received them, and your assurance that all such actions will cease.

**Clint Krislov**
**Krislov & Associates, Ltd.**
**Civic Opera Building-Suite 1350**
**Chicago, IL   60606**
**312-606-0500**
**facsimile:312-606-0207**
**email:Clint@krislovlaw.com**
**website:www.krislovlaw.com**

1

# EXHIBIT C

Cary R. Perlman

Sears Tower, Suite 5800
233 S. Wacker Dr.
Chicago, Illinois 60606
Tel: +1.312.876.7700  Fax: +1.312.993.9767
www.lw.com

# LATHAM&WATKINS LLP

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Barcelona | New Jersey |
| Brussels | New York |
| Chicago | Northern Virginia |
| Frankfurt | Orange County |
| Hamburg | Paris |
| Hong Kong | San Diego |
| London | San Francisco |
| Los Angeles | Shanghai |
| Madrid | Silicon Valley |
| Milan | Singapore |
| Moscow | Tokyo |
| Munich | Washington, D.C. |

File No. 010255-0330

**By Email and U.S. Mail**

June 24, 2008

Mr. Clinton A. Krislov
Krislov & Associates, Ltd.
20 North Wacker Drive, Suite 1350
Chicago, IL 60606

Re:    Rawat v. Navistar International Corporation

Dear Mr. Krislov:

Pursuant to our telephone call this morning, please find attached a courtesy copy of the form of letter and the form of release mailed last Friday to certain current and former employees of Navistar.

Sincerely,

Cary R. Perlman
of LATHAM & WATKINS LLP

cc: Robin Hulshizer

CH\1036042.1



**Navistar, Inc.**
4201 Winfield Road
Warrenville, IL 60555  USA

**P** : 630-753-3052
**W** : navistar.com

**Annette M. Freund**
Vice President,
Compensation, Benefits
and HR Support

June 20, 2008

Re:  Expired Stock Options

Dear _____:

As you know, until recently Navistar International Corporation (the "Company") has not been current with its Form 10-K filings with the Securities and Exchange Commission ("SEC").  During the time the Company was not current, there were limits on your ability to exercise your stock options.  The expiration date for certain stock options fell within the period when these limits were in effect.  In my letter to you of January 15, 2008, the Company identified the option expiration issue, informed you that we planned to address the issue with the Board of Directors, and promised to communicate with you again regarding the Board's decision.

On June 16, 2008, we raised these matters with the Board.  We are pleased to report that the Board has authorized us to extend to you a one-time opportunity to obtain a cash payment from the Company in resolution of any and all issues in connection with vested stock options that expired during the period when the above-described trading restrictions were in place (the "Expired Options").

The amount of your cash payment will be the difference between the closing price on the date your option expired and the exercise price for all of your options "in the money" on the option expiration date – *i.e.*, your payment will match the profit you would have made had you sold the shares at the end of the day the option expired, subject to applicable withholding taxes.  For example, if you had vested stock options exercisable at $25.00, and the stock closing price on the date those options expired was $65.00, we will pay you $40.00 times the number of Expired Options.  The payments available to **you** individually are set forth on the enclosed Statement of Offer (*Exhibit A*).  For your convenience, we have enclosed publicly available data reflecting the closing price of the Company's common stock on the option expiration date.

As consideration for the payment described in this letter, you must execute and return to the Company a release of claims in the form attached as *Exhibit B* to this letter ("Payment and Release").  The Payment and Release makes clear that your choice to accept the cash payment is a full and complete resolution of any and all claims you may have associated with the Expired Options.  Because the Payment and Release affects your rights and precludes litigation with the Company (including preclusion of your participation in the lawsuit described below), you should review it carefully before signing it.

On or about May 23, 2008, Mr. Ravi P. Rawat filed a putative class action complaint against the Company (the "Complaint") related to the option expiration issue. Mr. Rawat's Complaint was filed in the United States District Court for the Northern District of Illinois (Case No. 1:08-cv-03038), and it alleges that the Company breached stock option agreements with those who hold Expired Options. The Complaint also alleges that the Company breached "an implied covenant of good faith and fair dealing" in connection with the Expired Options. The Company does not believe that it has an obligation to compensate individuals for the Expired Options or that the claims set forth in the Complaint are valid, and we intend to vigorously contest all of the relief Mr. Rawat seeks.

This one-time opportunity will be available to you until August 1, 2008. If you choose to take advantage of this offer, the process will be as follows: *Execute the Payment and Release. Return it to Mr. Howard Kuppler, Navistar International Corporation, 4201 Winfield Road, P.O. Box 1488, Warrenville, IL 60555* **no later than August 1, 2008.** *If we receive the executed Payment and Release on or before July 3, 2008, unless you direct otherwise we will mail a check in the amount of your payment, less applicable withholding taxes, to your home address on or before July 31, 2008. If we receive the executed Payment and Release on or before August 1, 2008, unless you direct otherwise we will mail a check in the amount of your payment, less applicable withholding taxes, to your home address on or before August 29, 2008.*

Your execution and return of the Payment and Release constitutes your acceptance of this offer.

If you have questions not answered in this letter, please contact Howard Kuppler at (630) 753-2149.

*Annette*

Attachments:

Exhibit A – Statement of Offer
Exhibit B – Payment and Release

## PAYMENT AND RELEASE

Execution of this Payment and Release constitutes acceptance of the offer reflected in that certain letter dated June 20, 2008, from Annette Freund (the "Freund Letter").

**General Release.** For adequate and valuable consideration exchanged between the parties, the sufficiency of which is hereby acknowledged, _____ ("Releasor"), on behalf of Releasor and on behalf of Releasor's past, present and future respective predecessors, successors, heirs, assigns and any of the respective owners, members, managers, partners, principals, directors, officers, agents and employees of any of the foregoing, with full understanding of the contents and legal effect of this release, and having the right and opportunity to consult with counsel and a tax advisor, hereby releases and forever discharges Navistar International Corporation. (the "Company" or "Releasee") and its parents, subsidiaries, affiliates, related companies, agents, heirs, assigns, attorneys, lenders, and insurers, and any of the respective owners, members, managers, partners, principals, directors, officers, agents and employees of any of the foregoing, from any and all judgments, claims, demands, grievances, damages or causes of action of any kind or nature whatsoever, whether in contract (express or implied), covenant of good faith and fair dealing (express or implied), tort, statutory, or otherwise, whether legal or equitable, that Releasor has or may have in any way related to Releasor's stock options, whether in the money or out of the money, that expired during the period when there were certain limits on Releasor's ability to exercise Releasor's vested stock options ("Expired Options"), including but not limited to the claims described in the putative class action complaint filed against the Company by attorney Clinton A. Krislov on behalf of Mr. Ravi P. Rawat in the United States District Court for the Northern District of Illinois (Case No. 1:08-cv-03038), and as described in the Freund Letter.

**Covenant Not to Sue.** A "covenant not to sue" is a legal term which creates a promise not to file a lawsuit in court. It is different from the General Release of claims contained above. Besides waiving and releasing the claims covered by the General Release, Releasor further agrees never to sue the Company in any forum for any reason covered by the General Release language in the above paragraph. Notwithstanding this Covenant Not to Sue, Releasor may bring a claim against the Company to enforce this Payment and Release.

1

**Payment/Consideration.** In consideration for this Release, the Company shall pay Releasor a cash payment in the amount set forth in the Statement of Offer attached as Exhibit A to the Freund Letter, which Exhibit A is incorporated by reference as if fully set forth herein. Releasor acknowledges and agrees that the Company has no obligation to compensate Releasor for the Expired Options.

**Taxes.** Releasor agrees that all tax liability which may result from the payment of money as set forth herein rests with Releasor alone.

**Consultation With Legal Counsel, Advisors.** By signing this Release, Releasor expressly acknowledges that Releasor has had the opportunity to consult with legal counsel and a tax advisor of Releasor's choosing prior to signing this Release if Releasor so desires.

**Governing Law.** This Release will be governed by and construed in accordance with the laws of the State of Delaware applicable to agreements made and/or to be performed in that State, without regard to any choice of law provisions thereof.

**Complete Agreement.** Except as provided herein, this Agreement supersedes all prior and contemporaneous agreements of any kind between the parties relating to the Expired Options.

**Severability.** If any provision of this Release is invalid or unenforceable, the balance of this Release will remain in effect, and if such provision is inapplicable to any person or circumstance, it will nevertheless remain applicable to all other persons and circumstances.

THIS IS A FULL AND FINAL RELEASE – I HAVE READ, UNDERSTOOD AND VOLUNTARILY AGREED TO THE TERMS OF THIS RELEASE BEFORE SIGNING.

Executed this _____ day of _____, 2008.


_____
Releasor

2