**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| RAVI P. RAWAT, on behalf of himself and others similarly situated, | |
| Plaintiff, | No. 08 C 3038 |
| v. | |
| NAVISTAR INTERNATIONAL CORPORATION, | Judge John W. Darrah |
| Defendant. | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR
LACK OF SUBJECT MATTER JURISDICTION**

Plaintiff Ravi P. Rawat hereby responds to Defendant Navistar's Motion to
Dismiss for Lack of Subject Matter Jurisdiction.

**PRELIMINARY STATEMENT**

Plaintiff cannot adequately respond to Defendant's Motion to Dismiss for Lack of
Subject Matter Jurisdiction until Defendant produces the requested documents, to support
the assertion that there are only 56 affected persons.

Defendant filed a motion to dismiss for lack of subject matter jurisdiction based
*solely* on the assertion that Plaintiff's jurisdictional allegations fail because Plaintiff's
class definition would include fewer than 100 class members, which is the required
number of class members for this Court's jurisdiction under the Class Action Fairness
Act.

After Defendant represented to the Court that there were fewer than 100 class
members, Plaintiff served document requests targeted to the specifics of Defendant's
assertion. To date, Defendant has failed to produce a single document to that request.

## BACKGROUND

On May 23, 2008, Plaintiff filed this case on behalf of Navistar's employees and former employees whose options lapsed during Navistar's self-caused blackout period. Plaintiff filed a lawsuit in the Northern District of Illinois on May 23, 2008; the federal class action complaint was served on May 29, 2008. After an emergency motion based on Defendant's inadequate and coercive offer to putative class members, Defendant filed this motion to dismiss for lack of subject matter jurisdiction.

On July 18, 2008, out of an abundance of caution, in case the lack of subject matter jurisdiction would render this case void, Plaintiff then filed an identical action in the Circuit Court of Cook County, and promptly sought an injunction in state court to extend this Court's June 30, 2008 order and preserve the status quo until the Court could reach the merits (in light of Defendant's assertion that no federal jurisdiction exists).

Surprisingly, on July 29, 2008, the eve of the hearing on that injunction motion, Defendant removed that case to federal court, asserting that federal jurisdiction now *does* exist for *that* case. (While there are still only 56 affected persons, Navistar asserts that a slight alteration in verbiage now stretched the case to cover more than 100 people. The removed case is identically titled, under No. 08 C 4305). On Plaintiff's motion to preserve the status quo beyond the August 1, 2008 date set by this Court, we were shocked to discover that Navistar had actually processed acceptances and mailed checks to putative class members before August 1, 2008. Nonetheless, in deference to this Court, Emergency Judge Der-Yeghiayan ordered that Plaintiff raise the issue before this Court and that Defendant agreed not to issue any further checks until your Honor had a chance to address this after your Honor's return on August 15, 2008.

## ARGUMENT

Defendant's sole argument to support its motion to dismiss for lack of subject matter jurisdiction is based on the assertion that there are fewer than 100 class members, as required by the Class Action Fairness Act. Accordingly, Plaintiff requested a limited universe of documents tailored only to the issue of Defendant's assertion of lack of subject matter jurisdiction. Defendant has refused to produce any documents. Until Defendant produces the requested discovery into whether there are indeed fewer than 100 class members, Defendant's motion should be either continued or denied.

1.　　**Plaintiff has a Right to Discovery on Subject Matter Jurisdiction and Cannot Respond to Defendant's Motion to Dismiss Until Defendant Responds to Plaintiff's Document Requests**

Defendant asserts that this Court lacks jurisdiction because the putative class has fewer than 100 members. D's MTD at 4-6. Defendant has not produced any evidence, beyond a self-serving affidavit by a Navistar employee, to support this assertion.

Indeed, once the question of lack of jurisdiction is raised by a party, the party asserting jurisdiction must be given an opportunity to be heard before dismissal is ordered. *Parkside Medical Services Corp. v. Lincoln West Hosp., Inc.*, 1989 WL 75430 (N.D.Ill.1989), citing, *American Federation of Musicians, AFL-CIO v. Bonatz*, 475 F.2d 433, 437 (3rd Cir.1973). The defendant's motion to dismiss becomes a factual attack upon the jurisdictional allegations of the complaint. *Id.* In deciding this motion the court may receive evidence such as affidavits and deposition testimony in order to resolve the factual dispute. *Id.*

Reasonable discovery for purposes of demonstrating that jurisdiction does exist should be allowed, and failure to permit such discovery would be treated as reversible

error. *Id.*, citing, *Majd-Pour v. Georgianna Comm. Hosp., Inc.*, 724 F.2d 901, 903 (11th Cir.1984). See also, *Ignatiev v. U.S.*, 238 F.3d 464, 467 (D.C. Cir. 2001)(stating "[w]e have previously required that plaintiffs be given an opportunity for discovery of facts necessary to establish jurisdiction prior to decision of a 12(b)(1) motion", citing, *El-Fadl v. Cent. Bank of Jordan*, 75 F.3d 668, 676 (D.C.Cir.1996); *Crane v. Carr*, 814 F.2d 758, 764 (D.C.Cir.1987)).

The *Parkside* court specifically held that "consistent with this case principle, the plaintiff should be allowed to pursue discovery from the defendant but only to the extent that it is directed toward resolving those questions which are fundamental in determining whether subject matter jurisdiction exists. Discovery which goes to the merits of the case will not be allowed." *Id.*

This exact situation exists here. After Defendant represented to the Court that there were fewer than 100 class members, Plaintiff served document requests targeted specifically to that representation. (Ex. A). To date, Defendant has failed to produce *any* documents in response. Indeed, Defendant cannot simply deny the allegations in Plaintiff's complaint to avoid liability, and refuse to produce any discovery to test the assertion.

Without the requested discovery, all of which are records solely in Defendant's possession, Plaintiff cannot determine if there are indeed fewer than 100 class members. The dispute is clearly factual, with Defendant in sole possession of the facts needed to determine whether subject-matter jurisdiction exists.

**2.  Defendant Removed Plaintiff's State Court Action Which Supports the Need for Discovery Before Plaintiff Responds to Defendant's Motion to Dismiss**

Further, out of an abundance of caution, Plaintiff refiled this case in the Circuit Court of Cook County alleging the same claims as this case, as well as a claim under the Illinois Wage Payment and Collection Act.  Defendant promptly removed the case to this Court, asserting that Plaintiff expanded his class definition to include more than one hundred class members, giving this Court subject matter jurisdiction. (Ex. B)

Defendant's removal shows that the number of class members involved is suited only to its convenience and therefore further supports Plaintiff's need for discovery before substantively responding to the Defendant's motion to dismiss.

**3.  Plaintiff Believes that Discovery is Essential to Appropriately Handle these Cases**

Ultimately, Plaintiff seeks to represent a class of individuals whose stock options expired during Navistar's blackout period.  If discovery shows that there are more than 100 class members, as Defendant suggests in its Notice of Removal, then this Court should continue jurisdiction over this case.  But, if as Defendant asserts in its Motion to Dismiss for Lack of Subject Matter Jurisdiction, discovery shows that the universe of individuals whose options expired during Navistar's blackout period only encompasses 56 class members, then the most efficient way to deal with the cases should be to bring them both before this Court with *Rawat I* (filed May 23, 2008) dismissed and *Rawat II* (filed July 18, 2008 and removed July 29, 2008) remanded to the Circuit Court of Cook County. [1]

---

[1] Alternative suggestion:  An alternative way of dealing with the matter would be to just consolidate the two cases because they are the identical case, in which the latter of which Defendant asserts is properly before this Court.

## CONCLUSION

Defendant has sought to dismiss this action based on the assertion that there are fewer than 100 class members without producing substantive evidence to support its assertion. Plaintiff's discovery requests are reasonable and directly related to the issue of subject matter jurisdiction, and should be answered prior to a determination by this Court.

Accordingly, Plaintiff asks that this Court deny Defendant's motion for lack of subject matter jurisdiction.

Dated: August 1, 2008

Respectfully submitted,

__s/Clinton A. Krislov_____
Clinton A. Krislov

Clinton A. Krislov
Jeffrey M. Salas
KRISLOV & ASSOCIATES, LTD.
20 North Wacker Drive, Suite 1350
Chicago, Illinois  60606
Tel.:  (312) 606-0500
Fax:  (312) 606-0207

Law Offices of Mark Baiocchi
184 Shuman Blvd.
Suite 250
Naperville, IL 60563
Tel: (630) 983-4200
Fax: (630) 983-4223

EXHIBIT A

IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN
DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| RAVI P. RAWAT, on behalf of himself and others similarly situated,<br><br>         Plaintiff,<br><br>v.<br><br>NAVISTAR INTERNATIONAL CORPORATION,<br><br>         Defendant. | No. 08-3038<br><br>Honorable John W. Darrah |

## PLAINTIFF'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiffs hereby request that defendants produce the documents described below for inspection and copying by Plaintiffs' counsel at the law offices of Krislov & Associates, Ltd., 20 North Wacker Drive, Suite 1350, Chicago, Illinois, 60606, within the time period provided by the Rules.

## I.    DEFINITIONS

1.    The term "blackout period" refers to the indefinite period of time, beginning April 6, 2006, where exercising Navistar Stock Options was restricted and/or prohibited.

2.    The term "communications" refers to any exchange of information by any means of transmission, including, but not limited to, face-to-face conversations, mail, electronic mail, telegram, overnight delivery, telephone, facsimile or telex.

3.    The term "documents" is defined to be synonymous with the use of this term in the Fed. R. Civ. P. 34(a) and means documents whether fixed in tangible medium or electronically stored on disk or tape.  The word "documents" shall include, by way of example and not by way of limitation, all of the following:  papers, correspondence, trade

letters, envelopes, memoranda, telegrams, cables, notes, messages, reports, studies, press releases, comparisons, books, accounts, checks, audio and video recordings, pleadings, testimony, articles, bulletins, pamphlets, brochures, magazines, questionnaires, surveys, charts, newspapers, calendars, desk calendars, pocket calendars, lists, logs, publications, notices, diagrams, instructions, diaries, minutes of meetings, corporate minutes, orders, resolutions, agendas, memorials or notes or oral communications, whether by telephone or face-to-face, contracts, agreements, drafts of or proposed contracts or agreements, memoranda of understanding, letters of intent, transcriptions of audio or video recordings, computer tapes, computer diskettes or disks, or any other tangible thing on which any handwriting, typing, printing, photostatic, electronic or other form of communication or information is recorded or reproduced, together with all notations on any of the foregoing, all originals, file copies or other unique copies of the foregoing and all versions or drafts thereof, whether used or not.

4.    The term "Navistar" or "Defendant" means Navistar International Corporation, its predecessors, successors, parents, subsidiaries, divisions, affiliates, or anyone acting or purporting to act on their behalf, including any of their respective directors, officers, managing agents, agents, employees, attorneys, accountants, or other representatives.

5.    "Data" is equivalent to the term "electronic data" as defined herein.

6.    "Electronic Data" means the original (or identical duplicate when the original is not available) and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings of every kind and description whether inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means. Electronic data includes, by way of example only, computer programs (whether private, commercial or work-in-progress), programming notes or instructions, activity listings of electronic mail receipts or transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs and outlines,

electronic mail, instant messaging, operating systems, source code of all types, peripheral drivers, batch tiles, ASCII files, and any and all miscellaneous files or file fragments, regardless of the media on which they reside and regardless of whether such electronic data consists in an active file, deleted file, or file fragment. Electronic data includes any and all items stored on computer memories, hard disks, floppy disks, CD-ROMs, DVDs, removable media such as Zip disks, Snap servers, Jaz cartridges, and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, on or in any other vehicle for digital data storage or transmittal. The term electronic data also includes the file, folder tabs or containers and labels appended to, or associated with, any physical storage device associated with each original or copy thereof.

7.    "Electronic Media" means any magnetic or other storage media device used to record electronic data. Electronic media devices may include, but are not limited to, computer memories, hard disks, floppy disks, Snap servers, DVDs, CD-ROM, and removable media and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, or on or in any other vehicle for digital data storage or transmittal.

8.    "Deleted file" means any electronic data file that has been deleted or deleted from the electronic media on which it resided, including but not limited to, any file whose File Allocation Table (FAT) entry has been modified to indicate the file as being deleted and/or which is riot readily visible to the operating system and/or the software with which it was produced.

9.    "File Fragment" means any electronic data file that exists as a subset of an original active file. A file fragment may be active or deleted. The cause of fragmentation can include, but is not limited to, the execution of ordinary file management routines such as the creation of new files over parts of previously deleted files, the creation of files on disks which do not have enough contiguous blocks to write the file from beginning to end, where the file has been split up between several sections of the disk (each piece a

fragment).   Other causes include manual intervention, electronic surges, or physical defects on electronic media.

10.    "Native format" means the default format of a data file created by its associated software program.  For example. Microsoft Excel produces its output as '.xls' files by default, which is the native format of Excel.  Microsoft word produces native files with a '.doc' extension, which is the native format of Word.

11.    "Network" means any hardware or software combination that connects two or more computers together and which allows the computers to share or transfer data between them.  For the purposes of this definition, the connection between or among the microcomputers need not be either physical or direct (i.e., wireless networks, and sharing or transferring data via indirect routes utilizing modems and phone company facilities). In addition, there need not be a central file or data server or a central network operating system in place (i.e., peer-to-peer networks and networks utilizing a mainframe host to facilitate data transfer).

12.    "Plaintiff" refers to the named plaintiff in Ravi P. Rawat.

13.    "Identify" when used in reference to a natural person means the following should be stated: (a) Full name; (b) Present or last known home and business addresses; (c) Telephone number at home and business; and (d) Employer and position or job title.

14.    "Identify" when used in reference to any entity, means the following should be stated: (a) Full name; (b) Place and date of incorporation or creation; (c) Main office address; and (d) Telephone numbers for any addresses identified.

15.    "Identify" when used in reference to any document means to give, to the extent known, the: (a) type of document; (b) general subject matter; (c) date of the document; (d) author(s), addressee(s) and recipient(s); and (e) Bates stamp number, if any.

16.    "Identify" when used in reference to any electronic data, means to state the software or operating system under which the data was created, title and author, the type of data (example: word processing document, spreadsheet, database, application

program, etc.), and all other means of identifying that document or information with sufficient particularity to meet the requirements of the Federal Rules of Civil Procedure, and its present or last known location or custodian. If any such electronic data was, or no longer is, in the possession or subject to your control, state what disposition was made of it and the reason for such disposition.

17.    "Meeting" means the contemporaneous presence of any natural persons (including by telephone, videoconference, or via the Internet or a company intranet) for any purpose, whether or not such presence was prearranged, and whether or not the meeting was formal or informal, or occurred in connection with some other activity.

18.    "Complaint" refers to the complaint in *Rawat v. Navistar Int'l Corp*, Case No. 08cv3038 (N.D. Ill.).

19.    A "Stock Option" is an employee stock option granted pursuant to any Navistar Stock Option Plan.

20.    The term "or" should be construed as disjunctive and conjunctive, and "any" and "all" as used herein shall include "each" and "every." Similarly, the singular includes the plural, and vice versa.

21.    The term "person" means any individual, corporation, partnership, firm, association, government agency or other organization recognizable at law, and its agents and employees.

22.    The term "concerning" means relating to, referring to, describing, evidencing, or constituting. Requests for documents "concerning" any subject matter include documents concerning communications regarding that subject matter.

23.    "Policy" means any rule, procedure, practice, or course of conduct, whether formal or informal, written or unwritten, recorded or unrecorded, which was recognized or followed, explicitly or implicitly, by Navistar.

24.    "Produced" with respect to any document, shall include authored, dictated, edited, reviewed, or approved, in whole or in part.

25.    "Rotation" means any plan, policy or scheme that involves the re-use of an electronic media device after it has been used for backup, archival or other electronic data storage purposes, particularly if such re-use results in the alteration and/or destruction of the electronic data residing on the device prior to it being re-used.

26.    "Support" means any help or assistance provided to a user of a computer by another individual, whether or not in an official job capacity. Such help or assistance may take the form of, but is not limited to, answering questions, in person or via mechanical means, direct intervention, training, software troubleshooting, hardware troubleshooting, programming, systems consulting, maintenance, repair, or user forums. Providers of support may be employees, contractors, or other third-party providers.

27.    "Telephone records" includes, without limitation, diaries, telephone directories, Rolodexes (electronic or paper), address books, telephone logs, recordings of telephone conversations, and telephone bills (both local and long distance). To the extent that you use Internet telephony in any manner, this definition applies to that type of telephone usage as well.

28.    "You" and "Your" refer to Defendant, individually or collectively, as defined above and in the Complaint.

## II.    INSTRUCTIONS

29.    All documents shall be produced in the order they are kept in the ordinary course of business, and shall be produced in their original size, original folders, binders, covers or containers, or facsimile thereof.

30.    Unless otherwise indicated, the relevant time period ("Relevant Time Period") for each request shall be January 1, 1995 through the date of service of this document request.

31.    These requests relate to all documents which are in defendants' possession, custody or control or in the possession, custody or control of Navistar's predecessors, successors, parents, subsidiaries, divisions, or affiliates, or any of

Navistar's respective directors, officers, managing agents, employees, attorneys, accountants, or other representatives.

32.    Each Defendant shall produce the original of each document described below or, if the original is not in its or his custody, then a copy thereof, and in any event, all non-identical copies which differ from the original or from the other copies produced for any reason, including, but not limited to, the making of notes thereon.

33.    If production of a document is withheld pursuant to a claim of privilege, as to each such withheld document, state the following information:

    (a)    Which privilege is claimed;

    (b)    A precise statement of the facts upon which said claim of privilege is based; and

    (c)    The following information describing each purportedly privileged document:

        (i)    Its nature, *e.g.*, agreement, letter, memorandum, etc.;

        (ii)    The date it was prepared;

        (iii)    The date it bears;

        (iv)    The date it was sent;

        (v)    The date it was received;

        (vi)    The identity of the person preparing it;

        (vii)    The identity of the person sending it;

        (viii)    The identity of each person to whom it was sent or was to have been sent, including all addressees and all recipients of copies;

        (ix)    A statement as to whom each identified person represented or purported to represent at all relevant times; and

    (d)    A precise description of the place where each copy of that document is kept, including the title or description of the file in which said document may be found and the location of such file.

34.    Whenever a document is not produced in full or is produced in redacted form, so indicate on the document and state with particularity the reason or reasons it is not being produced in full and describe to the best of your knowledge, information and belief, and with as much particularity as possible, those portions of the document which are not being produced.

35.    If a document responsive to these requests was at any time in defendants' possession, custody or control but now is no longer available for production, as to each such document state the following information:

    (a)    Whether the document is missing or lost;

    (b)    Whether it has been destroyed;

    (c)    Whether the document has been transferred or delivered to another person or entity and, if so, at whose request;

    (d)    Whether the document has been otherwise disposed of; and

    (e)    A precise statement of the circumstances surrounding the disposition of the document and the date of the document's disposition.

## I.    DOCUMENTS TO BE PRODUCED BY DEFENDANT

Any and all documents or communications in the possession, custody, or control of Defendant relating to:

1.    all communications sent to any Stock Option holders during or after the Blackout Period by Navistar, its Stock Option administrator, or any other agent of Navistar with respect to their Stock Options.

2.    all communications regarding stock options with any individual who had any Stock Options expire after April 6, 2006.

3.    all communications from any third party Stock Option administrator during or after the Blackout Period to holders of Stock Options or former holders of Stock Options, including, but not limited to any "Notice of Cancellation and Expiration of All Employee Stock Options."

4.     all communications between the Defendant and the Stock Option administrator during or after the Blackout Period addressing the issue of Stock Options.

5.     all Stock Options granted between January 1, 1995 and the present, including both Incentive Stock Options and Non-qualified Stock Options, including, but not limited to all documents that:

    a.   identify each and every person who received a Stock Option grant;

    b.   identify the type of each Stock Option grant, e.g., Incentive Stock Option, Non-Qualified Stock Option;

    c.   identify the number of Stock Options granted to each such individual;

    d.   identify the date of each Stock Option grant;

    e.   identify the exercise price for each Stock Option;

    f.   identify the exercise date of each Stock Option; and

    g.   identify the expiration date of each the Stock Option.

6.     all Board meetings and/or Committee meetings and/or communications and/or discussions after April 6, 2006 addressing the subject of Stock Options expiring during the Blackout Period.

7.     support for Exhibit A of Defendant's June 26, 2008 Motion to Dismiss, titled "Declaration of Monica Stark."

Dated: July 3, 2008

_____
Clinton A. Krislov

Clinton A. Krislov
Jeffrey M. Salas
KRISLOV & ASSOCIATES, LTD.
20 North Wacker Drive, Suite 1350
Chicago, Illinois 60606
Tel.: (312) 606-0500
Fax: (312) 606-0207

## PROOF OF SERVICE

I, Jeffrey M. Salas, an attorney, state that I caused a copy of the foregoing Plaintiff's First Set of Requests for the Production of Documents to be delivered via hand delivery on July 3, 2008 to the counsel below.

Attorney for Plaintiff

Robin Hulshizer
Cary R. Perlman
Latham & Watkins LLP
233 South Wacker Drive
5800 Sears Tower
Chicago, IL 60606
(312) 876-7700

Laurence Harvey Levine
Laurence H. Levine Law Offices
190 South LaSalle
Suite 3120
Chicago, IL 60603
312 927 0625

EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RAVI P. RAWAT, on behalf of himself and others similarly situated, | ) ) ) | |
| | ) | Case No. _____ |
| Plaintiff, | ) | |
| v. | ) ) | |
| NAVISTAR INTERNATIONAL CORPORATION, | ) ) | |
| | ) | |
| Defendant. | ) | |

## NAVISTAR INTERNATIONAL CORPORATION'S NOTICE OF REMOVAL

Defendant Navistar International Corporation ("Navistar"), by its counsel, hereby gives notice of removal of this action, pursuant to 28 U.S.C. §§ 1332, 1441, 1446 and 1453, from the Circuit Court of Cook County, County Department, Chancery Division, to the United States District Court for the Northern District of Illinois.

### I.   BACKGROUND

1.     On July 18, 2008, Plaintiff Ravi P. Rawat ("Plaintiff") filed a class action complaint in the Circuit Court of Cook County, County Department, Chancery Division styled Ravi P. Rawat, et al. v. Navistar International Corporation, Case No. 08 CH 26042.  Plaintiff has not yet served Navistar with service of process, and Navistar reserves all objections to service.  A true copy of the Complaint and all exhibits thereto are attached hereto as Exhibit 1.

2.     The Complaint asserts Illinois state law claims for breach of contract, breach of the implied covenant of good faith and fair dealing, violation of the Illinois Wage Payment and Collection Act, and for declaratory relief.  See Compl., Ex. 1 hereto, at ¶¶ 52-76.  The Complaint alleges that Navistar prevented Plaintiff and the putative class from exercising stock options during a "blackout" period imposed when Navistar was not current with its public financial

statements. See id. at ¶¶ 23-32. Plaintiff filed this Complaint in state court after filing a similar

class action in federal court. See Complaint in Rawat, et al. v. Navistar International

Corporation, Case No. 08 CV 3038, currently pending in the United States District Court for the

Northern District of Illinois (the "Original, Federal Complaint").

## II.    GROUNDS FOR REMOVAL

3.    Plaintiff's claims are removable, because the Class Action Fairness Act

("CAFA") provides this Court with jurisdiction. See 28 U.S.C. §§ 1332(d), 1453. CAFA

extends federal jurisdiction over class actions where: (1) any member of the proposed class is a

citizen of a state different from any defendant (i.e., minimal diversity exists); (2) the putative

class consists of more than 100 members; and (3) the amount in controversy is $5 million or

more, aggregating all claims and exclusive of interests and costs. See 28 U.S.C. §§ 1332(d)(2),

1332(d)(5)(B).[1] Each of these requirements is readily met here. See disc. infra at 2-4.

### A.    Minimal Diversity

4.    In the Complaint, Plaintiff defines his proposed class as "all Navistar employees

and former employees whose stock options either expired or who were prevented from

exercising their options during the Navistar's 'blackout' period. (April 6, 2006 – May 29,

2008)." See Compl., Ex. 1 hereto, at ¶ 46. Plaintiff's class definition does not restrict the class

to Illinois citizens. See id. Courts have held that substantially similar class definitions support

the existence of minimal diversity. See 28 U.S.C. § 1332(d)(2)(A); McMorris v. TJX

Companies, Inc., 493 F. Supp. 158, 162-64 (D. Mass. 2007); Larsen v. Pioneer Hi-Bred

Intern., Inc., No. 4:06-cv-0077-JAJ, 2007 WL 3341698, at *4-5 (S.D. Iowa Nov. 9, 2007).

Moreover, Navistar's records indicate that at least one putative class member is a citizen of a

---

[1]    A "class action" includes any civil action filed under Federal Rule of Civil Procedure 23
or "similar State statute or rule of judicial procedure." See 28 U.S.C. § 1332(d)(1)(B).

CH\1043091.3

state other than Illinois or Delaware, and Navistar is a Delaware corporation with its principal

place of business in Illinois. See Declaration of Monica Stark, Ex. 2 hereto, at ¶¶ 4-5, 9; 28

U.S.C. § 1332(c)(1). Consequently, minimal diversity exists. See id.

### B.    Number Of Class Members

5.    Plaintiff brings this case on behalf of "[a]ll Navistar employees and former

employees whose stock options either expired or who were prevented from exercising their

options during the Navistar's 'blackout' period. (April 6, 2006 – May 29, 2008)." See Compl.,

Ex. 1 hereto, at ¶ 46. As already noted by Navistar in connection with Plaintiff's Original,

Federal Complaint, the number of individuals whose vested stock options expired during the

"blackout" is fifty-six.[2] See, e.g., Declaration of Monica Stark, Ex. 2 hereto, at ¶¶ 8-9.

However, the number of putative class members who possessed stock options that that "either

expired or who were prevented from exercising their options" during the "blackout period"

exceeds 100 persons. See id. at ¶¶ 11-12. Therefore, the requirement of CAFA that the putative

class consist of more than 100 members is satisfied. See 28 U.S.C. § 1332(d)(5)(B).

### C.    Amount In Controversy

6.    The amount in controversy exceeds $5 million. Plaintiff has expressly plead that

he seeks injunctive relief as well as "compensatory damages and exemplary damages" See

Compl., Ex. 1 hereto, at ¶¶ 57, 63, 71, 76, Prayer for Relief. Notably, Plaintiff alleges that the

---

[2]    Plaintiff originally brought this action in federal court pursuant to CAFA on behalf of a
class of "[a]ll individuals whose vested options expired during Navistar's 'blackout period'" See
Original, Federal Compl., Ex. 3 hereto, at ¶ 36. As stated, there are only 56 individuals who fall
within that class definition. See Declaration of Monica Stark, Ex. 2 hereto, at ¶¶ 8-9; Navistar's
Mot. to Dismiss, Ex. 4 hereto. Accordingly, Navistar moved to dismiss that Complaint for lack
of subject matter jurisdiction. See id.; 28 U.S.C. § 1332(d)(5)(B). When he decided to file a
second case in state court while the federal case was still pending, however, Plaintiff's lawyer
chose to expand his putative class definition to include additional persons, such that this
requirement of CAFA is satisfied for the second filing. See id.; Compl., Ex. 1 hereto, at ¶ 46.

putative class members should receive $75.90 per share, the price of Navistar's stock on the day

the "blackout" purportedly ended. See id. at ¶¶ 41-42. Plaintiff also alleges that "Defendant's

attempt to settle the claims of [putative] class members significantly undervalues...their claims."

Mem. in Supp. Of Mot. for Prelim. Inj., Ex. 5 hereto, at 13 (emphasis supplied). Navistar need

only show a reasonable probability that the amount in controversy exceeds $5 million. Brill v.

Countrywide Home Loans, Inc., 427 F.3d 446, 448 (7th Cir. 2005). Given that the allegedly

"undervalued" offers to only a sub-set the putative class exceeds $5 million, there is a reasonable

probability that the amount in controversy for the more than 100 class members exceeds $5

million. See Stark Decl., Ex. 2 hereto, at ¶ 10.

7.      Moreover, Plaintiff has already conceded in his Original, Federal Complaint that

the amount in controversy exceeds $5 million, even for the narrower class proposed in the earlier

lawsuit. See Original, Federal Complaint, Ex. 3 hereto, at ¶ 2. In that earlier complaint, Plaintiff

alleged that "the amount in controversy exceeds $5,000,000" for a class of persons much

narrower than the class in the Complaint Navistar is now removing from state court. See id.

Consequently, the amount in controversy here plainly exceeds $5 million. See 28 U.S.C.

§ 1332(d)(2); Hart v. Fed Ex Group Package Sys. Inc., 457 F.3d 675, 608 (7th Cir. 2006).

### III.   COMPLIANCE WITH THE REMOVAL STATUTE

8.      The Notice of Removal was properly filed in the United States District Court for

the Northern District of Illinois, because the Circuit Court of Cook County, County Department,

Chancery Division is located in this judicial district. See 28 U.S.C. § 1441(a).

9.      The Notice of Removal is signed pursuant to Rule 11 of the Federal Rules of Civil

Procedure. See 28 U.S.C. § 1446(a).

10.     Plaintiff has yet to serve Navistar with the Complaint. Accordingly, this Notice

CH\1043091.3

of Removal is timely under 28 U.S.C. § 1446(b) because the 30 day limitation has not yet started to run. See 28 U.S.C. § 1448; Collins v. Pontikes, 447 F. Supp. 2d 895, 897 (N.D. Ill. 2006) ("a named defendant's time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons, but not by mere receipt of the complaint unattended by any formal service"), quoting Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 353-56 (1999).

11.    Consent to federal jurisdiction is not necessary given that the basis for federal jurisdiction is CAFA. See 28 U.S.C. § 1453(b) ("A class action may be removed to a district court of the United States in accordance with section 1446 ... except that such action may be removed by any defendant without the consent of all defendants.").

12.    Pursuant to 28 U.S.C. § 1446(a), a copy of all pleadings and orders known to Navistar in this action, which papers include the Complaint, and other papers, are attached. See Exs. 1, 5 hereto.

13.    Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for Plaintiff and a copy, along with a Notice of Filing of the Notice of Removal, is being filed with the Circuit Court of Cook County, County Department, Chancery Division.

## IV.    CONCLUSION

For the foregoing reasons, Navistar respectfully requests that this Court exercise jurisdiction over this action and enter orders and grant relief as may be necessary to secure removal and to prevent further proceedings in this matter in the Circuit Court of Cook County, County Department, Chancery Division. Navistar further requests such other and further relief as the Court deems appropriate.

5

CH\1043091.3

Dated:  July 29, 2008                 Respectfully submitted,

/s/Robert C. Levels                 
One of the Attorneys for Defendant Navistar
International Corporation

| | |
|---|---|
| Laurence H. Levine | Cary R. Perlman |
| Maaike S. Almeida | Mark S. Mester |
| LAURENCE H. LEVINE LAW OFFICES | Robin M. Hulshizer |
| 190 South LaSalle Street, Suite 3120 | Robert C. Levels |
| Chicago, Illinois 60603 | LATHAM & WATKINS LLP |
| Phone: (312) 291-7000 | Sears Tower, Suite 5800 |
| Fax: (312) 291-7015 | 233 South Wacker Drive |
| | Chicago, Illinois 60606 |
| | Phone: (312) 876-7700 |
| | Fax: (312) 993-9767 |

6

## CERTIFICATE OF SERVICE

I, Robert C. Levels, hereby certify that on July 29, 2008, I served a copy of Navistar

International Corporation's NOTICE OF REMOVAL TO UNITED STATES DISTRICT

COURT via hand delivery, upon:

> Clinton A. Krislov
> Jeffrey M. Salas
> KRISLOV & ASSOCIATES, LTD.
> 20 North Wacker Drive, Suite 1350
> Chicago, Illinois 60606

/s/Robert C. Levels
Robert C. Levels

CH\1043091.3