**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **RAVI P. RAWAT, on behalf of himself and others similarly situated,** | ) | |
| | ) | |
| | ) | **Case No. 1:08-cv-03038** |
| **Plaintiff,** | ) | |
| **v.** | ) | |
| | ) | **Judge John W. Darrah** |
| **NAVISTAR INTERNATIONAL CORPORATION,** | ) | |
| | ) | **Magistrate Judge Nan R. Nolan** |
| | ) | |
| **Defendant.** | ) | |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF NAVISTAR'S
MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

Defendant Navistar International Corporation ("Navistar" or the "Company") submits the following reply memorandum in further support of its motion to dismiss the above-captioned Complaint filed by Plaintiff Ravi P. Rawat ("Plaintiff" or "Rawat").

## I.      INTRODUCTION

Plaintiff's sole opposition to Navistar's motion to dismiss is the claim that he requires discovery to address an issue he was obligated to investigate **before** he filed the case – namely, whether Plaintiff's proposed class of "[a]ll individuals whose vested options expired during Navistar's 'blackout period'" consists of less than 100 persons.  Plaintiff offers no facts whatsoever suggesting that the proposed class is large enough for federal jurisdiction, claiming instead that Navistar's failure to produce documents (at a time when no documents were due) and Navistar's removal of Plaintiff's duplicative state course (which proposed a **different** class) supports the need for jurisdictional discovery.  Plaintiff is mistaken.

With its motion to dismiss, Navistar submitted the sworn declaration of Monica Stark, Navistar's Director of Corporate Compensation and Human Resources Policy.  Ms. Stark's declaration establishes that the number of persons in Plaintiff's proposed class is fifty-six (56)

persons, far less than the 100 needed under the Class Action Fairness Act ("CAFA").  Ms. Stark

relied upon her personal knowledge and Navistar's business records, which foundation

repeatedly has been found to be adequate to support such a declaration.  In addition, Navistar **has**

produced documents to Plaintiff's counsel.  Navistar voluntarily produced a printout from the

computer database that tracks stock options, and the printout supports Ms. Stark's declaration.

Any further discovery on what amounts to the simple task of **counting** the number of people

with options that expired during the "blackout period" would be duplicative.

Furthermore, the only confusion generated by Plaintiff's admittedly duplicative state

court case is why Plaintiff thought it was a good idea to try and get a state court judge to overrule

the previous decision of this Court.  Navistar removed the duplicative state court case to federal

court because Plaintiff **changed** the proposed class – inadvertently, Plaintiff now claims – to one

with more than 100 persons.  There is no mystery here.  Accordingly, Navistar's motion should

be granted without further imposition on the time and resources of the Court and the parties.

## II.     <u>FACTUAL BACKGROUND</u>

The factual background for this memorandum is set forth below.  Though largely

immaterial to Navistar's motion, the subsequent filing of a new lawsuit by Plaintiff is addressed

below because Plaintiff's opposition seeks to bootstrap a wasteful demand for discovery in this

case on Navistar's reasonable response to Plaintiff's second-filed action.

### A.     **Plaintiff And His Counsel File A Second, Duplicative Lawsuit**

Purportedly in response to Navistar's motion to dismiss, Plaintiff filed a duplicative suit

in state court, asserting the same claims as in this suit but on behalf of a **broader** proposed class.

<u>See</u> <u>Rawat II</u> Compl., Ex. 1 hereto, at ¶ 46.  Plaintiff's new proposed class consists of "all

Navistar employees and former employees whose stock options either expired *or who were*

*prevented from exercising their options* during the Navistar's 'blackout' period.  (April 6, 2006

2

– May 29, 2008)."[1]  Compare Rawat II Compl., Ex. 1 hereto, at ¶ 46 (emphasis supplied), with Rawat I Compl. at ¶ 36 (proposed class of "[a]ll individuals whose vested options expired during Navistar's "blackout period").  Thus, the proposed class in Rawat II consists of not only the individuals whose options expired during the "blackout" period (i.e., the 56 persons in the proposed class in Rawat I), but also the individuals who held vested options during the defined period and whose options did **not** expire.[2]  See id.

### B.     Plaintiff's Gambit To Relitigate This Court's Orders In State And Federal Court

Had Plaintiff filed the complaint in Rawat II and waited for the outcome of this motion to dismiss – or better still, voluntarily dismissed – it might be credible to claim he filed Rawat II "out of an abundance of caution."  See Pl.'s Opp. at 2.  In reality, Plaintiff's counsel sought to use his "new" case to circumvent and countermand the orders of this Court, and for that purpose he liked his chances better in state court.  Specifically, Plaintiff filed a motion for a preliminary injunction and a motion for a temporary restraining order in Rawat II seeking the exact same relief denied by this Court in June – namely, an order enjoining the settlements that **48 out of the 51 individuals who received the June 20, 2008, cash offer chose to accept**.  See Aug. 1, 2008 Rawat II Order, Ex. 2 hereto (before Emergency Judge Der-Yeghiayan); Pl.'s Rawat II Mot. for

---

[1]     Navistar refers to the case Plaintiff filed in state court, now removed and pending before Judge Moran, as Rawat II, and the case pending before this Court as Rawat I.

[2]     The "new" members of the proposed class in Rawat II appear to consist of people who had the chance to exercise their options at a price **higher** than prices during the blackout.  See http://finance.yahoo.com/q/hp?s =NAV (showing that Navistar's stock closed at $78.99 on June 5, 2008, higher than any price during the "blackout.").  Thus, the new class members have no injury as a matter of law.  Apparently realizing too late that the newly proposed class members in Rawat II had the ability to sell at the very price that Plaintiff is arguing for in Rawat I, Plaintiff's counsel states in his opposition brief that "[u]ltimately," Plaintiff only "seeks to represent a class of individuals whose stock options *expired* during Navistar's blackout period."  Pl.'s Opp. at 5 (emphasis added).

Prelim. Inj., Ex. 3 hereto, at <u>passim</u>; Pl.'s <u>Rawat II</u> Emergency Mot. for TRO, Ex. 4 hereto, at <u>passim</u>; <u>but see</u> Navistar's <u>Rawat II</u> Opp., Ex. 5 hereto, at <u>passim</u>.  (In this regard, the passion of Plaintiff's counsel for keeping money out of the hands of people who have rejected his representation is extraordinary.)

After <u>Rawat II</u> was removed, the emergency judge assigned properly denied Plaintiff's motions.  <u>See</u> Aug. 1, 2008 <u>Rawat II</u> Order, Ex. 2 hereto.  In so doing, he recognized that Plaintiff should have addressed any disagreement with this Court's orders **to this Court** rather than to a state court judge and another federal judge in a separate, duplicative case.  <u>See</u> <u>id.</u>

### C.     Plaintiff's Overbroad And Improper Discovery Requests

Plaintiff's other response to the pending motion to dismiss was to serve discovery requests on Navistar -- not jurisdictional discovery, but broad and intentionally burdensome discovery.  Specifically, on July 3, 2008, Plaintiff served Rule 34 requests seeking, <u>inter</u> <u>alia</u>, (i) documents relating to all stock options granted over the past 13 years; (ii) communications between Navistar and its stock options administrator; (iii) communications between Navistar and stock option holders; and (iv) board of directors and committee documents regarding options expiring during the blackout period.  <u>See</u> Pl.'s First Set of Requests for the Production of Documents ("Document Requests"), Ex. 6 hereto, at Nos. 1-7.

Although Plaintiff implies that Navistar was late in responding (<u>see</u>, <u>e.g.</u>, Pl.'s Opp. at 1), Navistar served written objections to the discovery requests on the date they were due under Rule 34.  <u>See</u> Navistar's Objections and Responses to Pl.'s First Set of Discovery Requests, Ex. 7 hereto.  Then, in a good faith effort to avoid yet another round of motion practice, Navistar convened a teleconference with Plaintiff's counsel to discuss its objections.  At that time, Navistar agreed to and did produce support for the declaration of Monica Stark as to the number of persons in the putative class.  <u>See</u> Aug. 12, 2008 Corresp. fr. R. Levels to C. Krislov and J.

4

Salas, Ex. 8 hereto, at 2; Stock Option Database Printout (NAV000001-28), Ex. 9 hereto.[3]  This

printout fully supports Ms. Stark's declaration and independently confirms that there is no

legitimate dispute as to the number of persons in the proposed class here.  See id.  Thus, Navistar

has produced both a declaration in support of its jurisdictional argument and confirming

documents.  It is Plaintiff that has produced **nothing** in support of his claim.

### III.    ARGUMENT

Plaintiff does not dispute Navistar's legal conclusions with respect to jurisdiction but

claims that he requires discovery in order to contest the size of the putative class.  As discussed

below, no such discovery is necessary or appropriate, and the Court may properly dismiss

Plaintiff's complaint for lack of subject matter jurisdiction on the record as it stands.

### A.    Plaintiff's Discovery Is Improper Under Federal Rule Of Civil Procedure 26(d)(1)

Plaintiff failed to comply with Federal Rule of Civil Procedure 26(d)(1), which provides

that a "party may not seek discovery from any source before the parties have conferred as

required by Rule 26(f)," unless authorized by the rules, stipulation, or by order of the Court.  See

Fed. R. Civ. P. 26(d)(1); Fed. R. Civ. P. 26(f) (mandating that the parties confer and develop a

discovery plan for presentation at the Rule 26(f) conference).  Plaintiff and Navistar have not yet

conferred pursuant to Rule 26(f), and Plaintiff made no attempt to do so before serving discovery

on Navistar.  Plaintiff further failed to request leave from the Court to serve discovery prior to

the Rule 26(f) conference, and as such, Plaintiff's discovery is per se improper.  See Platinum

Mfg. Intern., Inc. v. Uninet Imaging, Inc., No. 8:08-cv-310-T-27MAP, 2008 WL 927558, at *1

(M.D. Fla. Apr. 4, 2008); Borom v. Town Of Merrillville, No. 2:07 CV 98, 2007 WL 1797639,

at *5-6 (N.D. Ind. June 19, 2007) (denying discovery for failure to show good cause to seek

---

[3]     To preserve confidentiality, individuals are identified by the last five digits of their social
security number.

5

discovery prior to Rule 26(f) conference); <u>Templin v. Hous. Auth. of City of Milwaukee</u>, No. 06-
C-548, 2007 WL 1575361, at *1 (E.D. Wis. May 29, 2007) (denying discovery for failure to seek
leave to serve discovery prior to Rule 26(f) conference).

### B.    Plaintiff's Request For Discovery Is Improper Because It Is Not Narrowly Tailored To The Jurisdictional Question

Even if it were requested properly, jurisdictional discovery in any event must be
"precisely focused" and "aimed at addressing matters relevant to … jurisdiction." <u>See</u>, <u>e.g.</u>, <u>GTE</u>
<u>New Media Servs., Inc. v. BellSouth Corp.</u>, 199 F.3d 1343, 1352 (D.C. Cir. 2000).  The
discovery requested by Plaintiff is wide-reaching, broad, and far removed from the specific
question of how many individuals had stock options expire during the "blackout."  <u>See</u>
Document Requests, Ex. 6 hereto at Nos. 1-7; <u>see</u> <u>also</u> disc. <u>supra</u> at 4-5.  Indeed, it is
incomprehensible why it would be necessary for Plaintiff to review every communication
regarding every stock option issued by Navistar in order to determine the number of individuals
in the putative class.  <u>See</u> <u>id.</u>  Even Plaintiff's own authority concedes that "[d]iscovery which
goes to the merits of the case will not be allowed."  <u>See</u> <u>Parkside Med. Servs. Corp. v. Lincoln</u>
<u>W. Hosp. Inc.</u>, No. 89 C 2233, 1989 WL 75430, at *2 (N.D. Ill. June 20, 1989).

### C.    Ms. Stark's Declarations Are More Than Sufficient Evidence To Allow This Court To Grant Navistar's Motion To Dismiss

Even if Plaintiff had complied with Rule 26(d)(1) and served discovery narrowly tailored
to jurisdiction, he would not be entitled to such discovery in **this** case.  <u>See</u>, <u>e.g.</u>, <u>Caribbean</u>
<u>Broad. Sys., Ltd. v. Cable & Wireless PLC</u>, 148 F.3d 1080, 1090 (D.C. Cir. 1998) ("in order to
get jurisdictional discovery a plaintiff must have at least a good faith belief that such discovery
will enable it to show that the court has" jurisdiction).  Plaintiff has not challenged the
sufficiency of Monica Stark's declarations (nor could he credibly do so), and even the cases
Plaintiff cites recognize that affidavits are appropriate and sufficient to challenge the existence of

subject matter jurisdiction.  See, e.g., Parkside Med. Servs. Corp., 1989 WL 75430, at *1 ("The defendant's motion to dismiss becomes a factual attack upon the jurisdictional allegations of the complaint.  In deciding this motion the court may receive evidence *such as affidavits* and deposition testimony in order to resolve this factual dispute.") (emphasis supplied).

Navistar has proffered a sworn declaration from Monica Stark, Navistar's Director of Corporate Compensation and Human Resources Policy, who works on stock options and who reviewed Navistar's business records in attesting to the fact that the number of persons in the proposed class is 56.  See Stark Suppl. Decl., Ex. B to Navistar's Mem. in Supp., at ¶ 9; Jenkins v. Heintz, 124 F.3d 824, 831 (7th Cir. 1997) (finding competency to attest to the contents of a firm's business records based on the declarant's position in the firm); Dow v. Abercrombie & Kent Int'l, Inc., No. 99 C 6923 (SBC), 2000 WL 688949, at *8 n.4 (N.D. Ill. May 24, 2000) (rejecting argument that affidavit lacked foundation where corporate officer reviewed the company's business records in preparing the affidavit); In re Kaypro, 218 F.3d 1070, 1075 (9th Cir. 2000) ("Personal knowledge may be inferred from a declarant's position" in a corporation.).

At the jurisdictional stage, the standard is "preponderance of the evidence," and the declarations and spreadsheet submitted by Navistar more than meet that standard.  See, e.g., Kitson v. Bank of Edwardsville,  No. 06-528-GPM, 2006 WL 3392752, at *7 (S.D. Ill. Nov. 22, 2006) ("The Court recognizes that the evidence before it regarding the citizenship of the class is not perfect, but the record is not required to be perfect. All that Kitson must show is that it is more likely than not that over two-thirds of the members of the class are Illinois citizens, and the Court believes he has met this burden."); Washington v. Shell Oil Prods. US, No. C07-2352 MJJ, 2007 WL 2221078, at *4 (N.D. Cal. Aug. 2, 2007) (denying jurisdictional discovery of

defendant's principal place of business when defendant company submitted a declaration attesting to same).

### D.    Denying Jurisdictional Discovery Would Not Constitute Error In This Case, Plaintiff's Suggestions Not Withstanding

Plaintiff both misconstrues the law and misapplies the facts in arguing that a denial of jurisdictional discovery would be grounds for reversal.  See Pl.'s Opp. at 3-4.  A Plaintiff may not obtain discovery in response to a defendant's motion to dismiss where "the requested discovery is unlikely to produce facts necessary to defeat the motion."  See, e.g., Sprague v. Brook, 149 F.R.D. 575, 577 (N.D. Ill. 1993).  At best, the cases cited by Plaintiff stand for the proposition that jurisdictional discovery should be permitted where **no** evidence has been submitted by the moving party and the opposing party has made a showing that the requested discovery is likely to produce facts necessary to defeat the motion.  See, e.g., Majd-Pour v. Georgianna Comm. Hosp., Inc., 724 F.2d 901, 902 (11th Cir. 1984) (discovery permitted where "testimony failed to establish the defendants' principal places of business"); El-Fadl v. Cent. Bank of Jordan, 75 F.3d 668, 675-76 (D.C. Cir. 1996) (court granted jurisdictional discovery only **after** Plaintiff made a showing of **specific facts** that indicated that further discovery could yield information to supplement Plaintiff's jurisdictional allegations); Parkside Med. Servs. Corp., 1989 WL 75430, at *1 (discovery granted where no evidence had been submitted by moving party on diversity of citizenship); Crane v. Carr, 814 F.2d 758, 760 (D.C. Cir. 1987) ("In addition, [Plaintiff] has pointed to links [Defendant company] has with the District … sufficient at least to permit further inquiry regarding personal jurisdiction ….").

Plaintiff, however, has made no showing that additional discovery would be fruitful here but, instead, served overly broad, unduly burdensome and improper discovery requests, all in an apparent effort to impose burden on Navistar and to needlessly prolong these proceedings.  See,

e.g., Poe v. Babcock Int'l, plc, 662 F. Supp. 4, 7 (M.D. Pa. 1985) (holding that because "plaintiff has met defendants' affidavit evidence with mere speculation, plaintiff's request for ... [jurisdictional] discovery ... must be denied").  Indeed, what is conspicuously **absent** from Plaintiff's opposition are any facts suggesting that Plaintiff had any basis, let alone a good faith basis, to allege more than 100 persons in the putative class in the first place.  See id.; Fed. R. Civ. P. 11.  Plaintiff chose to file in federal court.  Plaintiff alleged that there were "thousands" of persons in the putative class.  See Rawat I Compl. at ¶ 37.  Where are the facts that Plaintiff had in hand to support those allegations?

Plaintiff cites no facts, instead implying that Navistar's choice to remove Rawat II to federal court creates some sort of ambiguity about jurisdiction in Rawat I.  See Pl's Opp. at 5.  In reality, the record is perfectly clear as to why Navistar removed Rawat II.  See disc. supra at 2-3.  What **is** revealing is that Plaintiff blithely characterizes his **own** choice to expand the proposed class as "a slight alteration in verbiage."  See Pl.'s Opp. at 2.  In this instance, the effect of the "slight alteration" was to change the proposed class from less than 100 persons to more than 100 persons.  Compare Rawat II Compl., Ex. 1 hereto, at ¶ 46, with Rawat I Compl. at ¶ 36; see also disc. supra at 2-3 (comparing Plaintiff's class definitions).  That "alteration," in turn, had the practical consequence of changing a lawsuit without federal jurisdiction (Rawat I) into a new lawsuit with federal jurisdiction (Rawat II).[4]  See id.  Navistar challenged subject matter jurisdiction in Rawat I because it would have been irresponsible **not** to do so.  See, e.g., Belleville Catering Co. v. Champaign Market Place, L.L.C., 350 F.3d 691, 693-94 (7th Cir.

---

[4]    Indeed, for this reason, Plaintiff's discovery requests are largely moot.  By filing Rawat II, Plaintiff already has another action pending that asserts the same claims on behalf of a broader proposed class.  Allowing Plaintiff to simultaneously pursue two lawsuits on behalf of overlapping classes in the same court would only constitute further abuse of the class device.

2003) (vacating a jury verdict and dismissing complaint for lack of subject matter jurisdiction on appeal, while criticizing both parties for not addressing subject matter jurisdiction earlier). However, because Navistar prefers federal court and the proposed class in <u>Rawat II</u> meets the "more than 100 putative class members" prerequisite for CAFA jurisdiction, Navistar removed <u>Rawat II</u> to the Northern District of Illinois on July 29, 2008, Case No. 08-cv-4305, and it is pending before Judge Moran.

###    E.    Plaintiff Seeks Discovery Only to Disguise His Inadequate Pre-Filing Inquiry

Plaintiff's own cases warn that jurisdictional discovery is no substitute for an adequate pre-filing inquiry, as mandated by Rule 11.  For example, in <u>Majd-Pour</u> (cited by Plaintiff), the Court held as follows:

> If plaintiff's counsel elects to proceed with the case, <u>he</u> <u>should</u> <u>be</u> <u>aware</u> <u>of</u> <u>Fed.R.Civ.P. 11</u> which states that the signature of an attorney constitutes a certificate that the attorney has read the pleading, that to the best of his or her knowledge, information and belief there is good ground to support it, and that it is not interposed for delay.  In noting this rule, we do not express any opinion as to the merits of this case.  We observe, however, that plaintiff's counsel appeared at a hearing, convened at his request, not prepared to produce anything approaching a significant showing of jurisdiction.

<u>Majd-Pour</u>, 724 F.2d at 903 (emphasis supplied).

As discussed in Navistar's opening memorandum, Plaintiff plainly made the allegations concerning the number of class members without regard to Rule 11.  <u>See</u> Navistar's Mem. in Supp. at 5-6; <u>see</u> <u>also</u> <u>Rawat I</u> Compl. at ¶ 37 (alleging the putative class numbers "in the thousands").  Plaintiff is not seriously questioning whether the number of individuals whose stock options expired during the blackout period is fifty-six.  Rather, he is undertaking a belated fishing expedition for information from Navistar under the guise of jurisdictional discovery. Plaintiff cannot avoid dismissal by shouting "discovery" on an issue as straightforward as counting from one to fifty-six.

## IV.    <u>CONCLUSION</u>

There is "no advantage to anyone in deferring a ruling . . . until further discovery in this case inevitably" demonstrates that the number of individuals in the proposed class is less than 100.  <u>See</u> <u>Kitson</u>, 2006 WL 3392752, at *7.  At the jurisdictional stage, the standard is "preponderance of the evidence," and the sworn declarations submitted by Navistar, based on its business person's personal knowledge and review of Navistar's business records, more than meet that standard.  Accordingly, Navistar's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction should be granted.  Navistar further requests whatever other relief the Court deems appropriate, including Navistar's fees and costs.

Dated:  August 15, 2008                              Respectfully submitted,


                                                     /s/Robert C. Levels
                                                     One of the Attorneys for Defendant
                                                     Navistar International Corporation

Laurence H. Levine                    Cary R. Perlman
Maaike S. Almeida                     Mark S. Mester
LAURENCE H. LEVINE LAW OFFICES        Robin M. Hulshizer
190 South LaSalle Street, Suite 3120  Robert C. Levels
Chicago, Illinois 60603               LATHAM & WATKINS LLP
Phone: (312) 291-7000                 233 South Wacker Drive
Fax: (312) 291-7015                   Sears Tower, Suite 5800
                                      Chicago, Illinois 60606
                                      Phone: (312) 876-7700
                                      Fax: (312) 993-9767

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **RAVI P. RAWAT, on behalf of himself and others similarly situated,** | ) ) | |
| | ) | **Case No. 1:08-cv-03038** |
| Plaintiff, | ) | |
| **v.** | ) | |
| | ) | **Judge John W. Darrah** |
| **NAVISTAR INTERNATIONAL CORPORATION,** | ) ) | **Magistrate Judge Nan R. Nolan** |
| | ) | |
| Defendant. | ) | |

**EXHIBITS TO REPLY MEMORANDUM IN FURTHER SUPPORT OF NAVISTAR'S
MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

**Exhibit    Description**

1.  <u>Rawat II</u> Complaint, filed July 18, 2008

2.  <u>Rawat II</u> Order, dated August 1, 2008

3.  Plaintiff's <u>Rawat II</u> Motion for a Preliminary Injunction, filed July 30, 2008

4.  Plaintiff's <u>Rawat II</u> Emergency Motion for a Temporary Restraining Order, filed July 30, 2008

5.  Navistar's <u>Rawat II</u> Opposition to Plaintiff's Motion for a Preliminary Injunction and Plaintiff's Emergency Motion for a Temporary Restraining Order, filed July 30, 2008

6.  Plaintiff's First Set of Requests for the Production of Documents, dated July 3, 2008

7.  Navistar's Objections and Responses to Plaintiff's First Set of Requests for Production of Documents, dated August 4, 2008

8.  Correspondence from R. Levels to C. Krislov and J. Salas, dated August 12, 2008

9.  Stock Option Database Printout (NAV000001-28)

# EXHIBIT 1

IN THE CIRCUIT COURT OF COOK COUNTY
COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| RAVI P. RAWAT, on behalf of himself and others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>NAVISTAR INTERNATIONAL CORPORATION,<br><br>    Defendant. | No.   **08CH26042** |

## CLASS ACTION COMPLAINT

Plaintiff Ravi P. Rawat, on behalf of himself and those similarly situated, for his class action complaint based upon the investigation of his counsel, alleges as follows on information and belief:

### NATURE OF THE ACTION

1. This action is a refiling of a case filed on May 23, 2008 in the Northern District of Illinois, captioned *Rawat v. Navistar Int'l Corp.*, 08-3038 (N.D. Ill.) for which Defendant has moved to dismiss for lack of subject matter jurisdiction on the sole grounds that there are fewer than 100 class members.   Plaintiff does not concede that federal subject matter jurisdiction does not exist, but for efficiency purposes brings the action in this Court.

2. Specifically, this action is brought on behalf of employees and former employees of Navistar International Corporation who owned contractually vested stock options but were prevented from exercising their options with respect to which the Company refused to permit exercise prior to expiration, ascribed to a "blackout" period

caused by Navistar's failure to have current financial reporting as required by federal law. Navistar's "blackout" period, as the result of management malfeasance, led to Navistar having to restate its financials. By allowing options to expire and prohibiting employees and former employees from exercising their vested options pursuant to the option contract, Navistar breached the option contract and its implied covenant of good faith and fair dealing. Failing to compensate individuals for their contractually vested rights also violated the Illinois Wage Payment and Collection Act. Further, Plaintiff asks this Court to nullify any releases received by Defendant in connection with an inadequate and coercive settlement offer sent to putative class members after, and as a deceitful response to, the original filing of this lawsuit.

## JURISDICTION AND VENUE

3.    <u>Jurisdiction</u>:  This Court has general jurisdiction over Defendant.  This Court has jurisdiction over the subject matter of this controversy and the parties pursuant to 735 ILCS 5/2-209 (a)(1)(transacting business in this state), (a)(3)(ownership, use and possession of real estate situated in this state, (a)(7)(the making and performance of a contract or promise substantially connected with this state), and (b)(4) (corporation doing business in Cook County, Illinois).

4.    <u>Venue</u>: is therefore also proper in this county under 735 ILCS 5/2-101 because Navistar is a foreign corporation authorized to transact business in this state, and under 735 ILCS 5/2-101 any foreign corporation authorized to transact business in this state is a resident of any county in which it has its registered office or other office or is doing business.  Navistar's Illinois registered agent, CT Corporation System, is located at 208 South LaSalle Street, Chicago, IL 60604.  Navistar also does business in Cook

County.  Specifically, Navistar has an engine plant located at 10400 W North Ave Melrose Park, IL 60160, which is in Cook County.

## PARTIES

5.      Plaintiff Ravi P. Rawat is a citizen of Illinois and is a former Assistant General Manager of the heavy truck group of Navistar International Corporation.

6.      Defendant Navistar International Corporation is a Delaware Corporation with its principal place of business located at  4201 Winfield Road, Warrenville, Illinois 60555, and has its registered Illinois office in Cook County as well as an office doing business in Cook County.

## BACKGROUND OF THE WRONGDOING

7.      Plaintiff began working for Defendant Navistar in January 1989. Throughout his tenure at Navistar, Plaintiff was granted stock options on seven occasions.

8.      On April 6, 2006, Navistar announced that as a result of its failure to file its Annual Report with the Securities and Exchange Commission (the "SEC") for the fiscal year ended October 31, 2005, the shares of the Company's common stock that were acquired pursuant to the employee benefit plans set forth below would not be available for use until the Annual Report is filed with the SEC.

9.      The Company also announced that it intended to file its Annual Report with the SEC as soon as possible, but could not estimate the date such report would be filed.

10.      Because of the Company's prior conduct and the fact that the Company had to restate its financials, it suspended purchases of its shares by participants

and beneficiaries in the United States in the following plans: (1) International Truck and Engine Corporation 401(k) Retirement Savings Plan; (2) International Truck and Engine Corporation Retirement Accumulation Plan; (3) International Truck and Engine Corporation 401(k) Plan for Represented Employees; and (4) the IC Corporation 401(k) Plan (collectively, the 401(k) Plans).

11.    According to the Company, the blackout period prevented participants and beneficiaries from making additional investments in the company's common stock through the 401(k) Plans.

12.    Further, the Company sent a notice to its directors and executive officers informing them that a blackout period would begin on April 6, 2006 and would end at 4:00 pm Central Time on the day on which the Annual Report was filed with the SEC.

13.    As described by the Company, Navistar's directors and executive officers would generally be prohibited from directly or indirectly acquiring, disposing of, or transferring any equity securities of the company acquired by them in connection with their service and/or employment with the company in such capacities. The notice was allegedly sent to ensure compliance with Section 306(a) of the Sarbanes Oxley Act of 2002.

14.    As of the date this suit was originally filed in the Northern District of Illinois, Navistar had not filed its updated financials with the SEC.

### NAVISTAR'S STOCK OPTION PLANS

15.    Navistar is a holding company whose wholly owned subsidiaries produce International ® brand commercial trucks, MaxxForce brand diesel engines, IC brand school buses, and Workhorse brand chassis for motor homes and step vans. It also is a

private-label designer and manufacturer of diesel engines for the pickup truck, van and SUV markets. The company also provides truck and diesel engine parts and services.

16.    According to the 2004 Performance Incentive Plan (the "Plan" or "Stock Option Plan"):

> "The purpose of the Plan is to enable the Corporation and its subsidiaries to attract and retain highly qualified Employees, Consultants, and Non-Employee Directors, and additionally to provide key Employees who hold positions of major responsibility the opportunity to earn incentive awards commensurate with the quality of individual performance, the achievement of performance goals and ultimately the increase in shareowner value."

(Ex. A).

17.    An option gives the holder a contractual right to purchase one share of stock (per option) at a set price, called the "strike" or "exercise" price. The strike price is determined on the day of the option grant.

18.    If the stock's market price rises above the strike price, the employee can exercise the option, buying stock at the strike price. The employee can then sell the stock back at the market price and benefit from the difference.

19.    Under the Plan, the stock options expire ten years after their grant and must be exercised within 90 day after leave Navistar's employ. Specifically, stating that either a Incentive or Nonqualified Stock Option is:

> "a right, as evidence by an agreement  between the Participant and the Company . . . to purchase a certain number of shares of Common Stock at Fair Market Value for a period of ten (10) years and one day form the date of grant."

Ex. A.

20.   According to Navistar's Stock Option Plan, when employees leave Navistar, they have 90 days to exercise his or her option at the strike price.

21.   Plaintiff and the Class received options pursuant to Navistar's Stock Option Plan.

22.   Navistar's Stock Option Plan provides:

> "The *Committee will document the terms of the Stock Option in an Award Agreement to include the Grant Date and Exercise Price, as well as any other terms that it may desire.* The Exercise Price under a Stock Option shall not be less than one hundred percent (100%) of the Fair Market Value of a share of Common Stock on the Grant Date. Subject to adjustment pursuant to Section XII, the Exercise Price of outstanding Options fixed by the Committee shall not be modified."

> \*\*\*

> "Unless otherwise determined by the Committee, a Stock Option granted under the Plan *will become exercisable in whole or in part after the commencement of the second year of the term of the Stock Option* to the extent of one third of the shares, to the extent of one third of the shares after commencement of the third year, and to the extent of one third of the shares after commencement of the fourth year."

### SUBSTANTIVE ALLEGATIONS

23.   Plaintiff Rawat was the Assistant General Manager of the heavy truck group at Navistar's Cantera facility in Naperville, Illinois.

24.   Throughout the time he was employed by Navistar, he was granted options pursuant to the Stock Option Plan on a yearly basis, starting in 1998.

25.   Mr. Rawat separated from Navistar, effective January 5, 2007, while the blackout period was in effect.

26.    Navistar's 1994 Performance Incentive Plan (as amended December 11, 2001) provides that the Company can grant two types of options. Incentive Stock Options, defined as:

> "*a right, as evidenced by an agreement between the participant and the Company* in a form approved by the Committee, to purchase a certain number of shares of Common Stock at Fair Market Value for a period of ten (10) years from the date of grant which options are designed to meet the requirements set out under Section 422 of the Internal Revenue Code."

The Plan also provides for Nonqualified Stock Options, defined as:

> "*a right, as evidenced by an agreement between the participant and the Company* in a form approved by the Committee, to purchase a certain number of shares of Common Stock at Fair Market Value for a period of ten (10) years from the date of grant on which options are stated not to be qualified as incentive stock options under Section 422 of the Internal Revenue Code."

27.    The difference between these options is merely the tax treatment between the options, and for purposes of this action, the options – as in the stock option plan[1] – should be treated identically.

28.    At the time of his resignation Mr. Rawat had vested options that, according to the Stock Option Plan, were a contractual right and exercisable within 90 days from the date of his effective resignation.

29.    Mr. Rawat made several attempts to exercise within the 90 day period after his separation. Navistar refused to allow him to exercise his rights under the guise of the Company's unilateral self-imposed blackout period, which continued from the time of Mr. Rawat's resignation until the 90 day period ended on April 5, 2007.

---

[1] The 1994 Stock Option Plan also provides that the term "Stock Option" mean either an Incentive Stock Option or a Nonqualified Stock Option.

7

30.    During the 90 days between January 5, 2007 and April 5, 2007, Mr. Rawat had numerous discussions with Navistar and Merrill Lynch (Navistar's stock option administrator) in an attempt for Mr. Rawat to rightfully exercise his vested options.

31.    Ultimately, the Company refused to allow Mr. Rawat to exercise his options and breached the option contract.

32.    On January 15, 2008, Navistar sent a letter to "Holders of Navistar International Corporation Stock Options." (Ex. B)

33.    The letter stated that "the Company is not current with its financial filing with the Securities and Exchange Commission.  As a result, there are certain limits on your ability to exercise your stock options."

34.    The letter further stated that ". . . some of your stock options may have expired or will expire in the near future.  We plan to address this issue but we are unable to do so now. . . [o]ur plan is to discuss this issue with our Board of Directors.  We cannot predict what, if any, action our directors will take, but we will communicate with you, no matter what the outcome. . ."

## NAVISTAR'S NOTICE TO CLASS MEMBERS THAT THEIR STOCK OPTIONS WERE TERMINATED/EXPIRED

35.    Further, in a Notice of Cancellation post dated January 29, 2008, Navistar's stock option administrator,  Merrill Lynch, , sent out a Notice of Cancellation and Termination of Stock Options. Ex. C.

36.    The Notice of Cancellation advised option holders whose stock options had expired that they would receive *nothing* in consideration for their contractually vested rights to stock options.

37.     Navistar directed Merrill Lynch to send the Notice of Cancellation and Expiration. In light of this Notice of Cancellation, the January 29, 2008 letter shows itself as an effort to show option holders expectations downward. In that light, Navistar's inadequate and coercive offer (as described below) is even more abhorrent because class members who were told they would receive *nothing*, now have an opportunity to receive *something*, albeit inadequate.

### NAVISTAR'S DECEITFUL STRATEGY AND INADEQUATE, COERCIVE OFFER

38.     On May 23, 2008 Mr. Rawat filed a class action in the Northern District of Illinois, titled *Rawat v. Navistar Int'l Corp.*, 08-3038 (N.D. Ill.) and effected service on Navistar May 29, 2008. The Complaint was to be answered by June 18, 2008. On June 11, 2008, Defendant's counsel Robin Hulshizer called to introduce her firm and requested Plaintiff counsel's agreement to extend Navistar's time to respond to Plaintiff's complaint, representing that the extension was for "convenience of counsel," ascribed to weddings and vacations. Plaintiff's counsel Krislov readily agreed to the extension.

39.     Less than two weeks later, on June 24, 2008, the hearing date for Defendant's Motion to Extend time to respond, undersigned counsel Clinton A. Krislov received an anonymous call inquiring about the case from a person claiming to be a putative class member who had received a communication from Navistar that asked the recipients to release their claims against the Company and covenant not to sue. The same day, at 10:14 a.m. Krislov e-mailed Hulshizer with his concerns. An hour later, Hulshizer returned the call professing not to have seen the e-mail and confirmed that the letter was sent to all option holders not currently in litigation with the Company.

9

40.    The June 20, 2008 Letter[2]. Review shows that the letter is indeed misleading and coerces class members into precipitously signing releases. Rather than encouraging class members to seek their own counsel and tax advice, they are promised that employees who send releases received before July 3 will receive a check by July 31. All other releases received by August 1, will receive a check by August 31, explicitly precluding them from participating in this action, and directing any questions to the Company. Indeed, the extension was not for convenience of counsel, but a subterfuge to allow the Defendant a sufficient opportunity to contact putative class members in an effort to thwart this litigation and prevent class members from timely and thoughtful evaluation of their rights and make intelligent, informed decisions involving tens if not hundreds of thousands of dollars prematurely and without reasonable time for reflection, counsel and tax advice.

41.    Indeed, the offer is unfairly low considering that it treats each person as having exercised and sold his or her shares immediately on the expiration date. Pegging the consideration to the expiration date is unfair. Because of Navistar's wrongdoing, the financials during this period were not current and the market prices were not a reliable indicia of the value of the stock.  Notably, on May 29, 2008, the end of the blackout period, the relisted Navistar shares had a market price of $75.90.

42.    Moreover, other companies faced with similar blackout period expiration have afforded option holders much more generous terms, *e.g.*, either extending the exercise period for the duration of the blackout period or pricing exchange offers at the top of blackout period pricing, or the day it ended for all options holders.

---

[2] Attached hereto as Exhibit D.

43.    On June 25, 2008, Plaintiff filed an emergency motion to correct the notice sent to the putative class. United States District Judge Darrah ordered that no releases be accepted until at least August 1, 2008 and further ordered Navistar to send corrective notice to putative class members in the form attached as Exhibit E.

44.    In the meantime, Navistar has asserted that there is no federal subject matter jurisdiction because there are fewer than 100 class members. Accordingly, Plaintiff has filed this action in Illinois State Court where jurisdiction is uncontestable.

45.    Even though putative class members received the "corrective notice," the disinformation conveyed to option holders that their rights are worthless coupled with the severely truncated time to respond and the neutral tone of the corrective notice has still caused many class members to be harmed by signing releases of their legal rights to this action without full information of their rights and the appropriate value, thus making their releases voidable. Invalidating the releases to class members is an appropriate remedy.

## CLASS ALLEGATIONS

46.    **The Proposed Class**. Plaintiff brings this case for himself and for the following class:

> all Navistar employees and former employees whose stock options either expired or who were prevented from exercising their options during the Navistar's "blackout" period. (April 6, 2006 – May 29, 2008).

The Class satisfies all the prerequisites for certification under 735 ILCS 5/2-801.

47.    **Numerosity**. The Class consists of dozens of individuals and therefore is so numerous that joinder is impracticable.

48.    **Typicality**. Plaintiff's claims are typical of the claims of the Class because he and the Class sustained damages as a result of Navistar's prohibition of

11

allowing employees and former employees to exercise their stock options during the Company's blackout period.

49.    **Commonality and Predominance**. There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including whether:

      (a)     Navistar was obligated to institute a blackout period;

      (b)     the blackout period option exercise denial was appropriately imposed on all option holders;

      (c)     Navistar breached its contractual obligations under the Stock Option contracts;

      (d)     Navistar breached its duty of good faith and fair dealing in connection with the Stock Option contracts;

      (e)     Navistar's communication to putative class members was coercive and misleading; and

      (f)     Navistar is liable to the Plaintiff and the Class in this action, as alleged in the Complaint.

All common questions are able to be resolved through the same factual occurrences as specifically and/or generally alleged herein.

50.    **Adequacy**. Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff has no claims antagonistic to those of the Class. Plaintiff has retained competent and experienced counsel in complex class actions, securities, and corporate litigation. Counsel is committed to the vigorous prosecution of this action.

51.    <u>Appropriateness as a Class Action</u>. The prosecution of separate actions by the Plaintiff and individual members of the Class against Defendant would create a risk of inconsistent or varying adjudications on the common issues of law and fact related to this action. A Class Action is superior to all other available methods for the fair and efficient adjudication of this controversy. The expense and burden of litigation would substantially impair the ability of the Class members to pursue individual cases in order to initiate their rights. In the absence of a class action, Defendant will retain the benefits of their wrongdoing.

**JURY DEMAND**

52.    Plaintiff and the Class demand a jury trial on all issues so triable.

**<u>COUNT I</u>**
**Breach of Contract**

53.    Plaintiff hereby incorporates all of the foregoing paragraphs.

54.    Plaintiff and the Class and Defendant were parties to Stock Option Agreements pursuant to which Defendant agreed to permit Plaintiff and the Class to purchase Navistar shares of stock before the stock options expired, including a 90 day period after termination of employment.

55.    Plaintiff and the Class performed all conditions, covenants and promises to be performed on their part in accordance with the contracts.

56.    Defendant breached the Stock Option Agreements with Plaintiff and the Class by failing to permit them to exercise their options and purchase shares during the term of the option.

57.    As a result of Defendant's breach of the Stock Option Agreements, Plaintiff and the Class have suffered economic losses and other general, consequential

13

and specific damages, including the amounts they would have received from exercising their stock options.

WHEREFORE, Plaintiff on behalf of himself and the Class, prays for judgment as follows:

A.    Declaring this action to be a proper class action pursuant to 735 ILCS 5/2-801 on behalf of the Class defined herein, and declaring the Plaintiff to be a proper Class representative, and Plaintiff's counsel as counsel for the Class;

B.    Declaring that the Stock Option Plan's 90 day expiration period for former employees is tolled by the blackout period;

C.    Declaring that the offer made to putative class members is inadequate, coercive and invalid;

D.    Finding that Navistar breached its obligations under the Company's Stock Option Plan and Stock Option contracts;

E.    Finding that Navistar breached its obligation of good faith and fair dealing to Plaintiff and the Class;

F.    Awarding Plaintiff and Class members compensatory damages and exemplary damages in an amount to be proven at trial;

G.    Awarding Plaintiff and the Class pre-judgment interest, as well as reasonable fees and costs; and

H.    Awarding such other relief as this Court may deem just and proper.

## COUNT II
### Breach of the Covenant of Good Faith and Fair Dealing

58.    Plaintiff hereby incorporates all of the foregoing paragraphs.

59.    The Stock Option Agreements entered into between Plaintiff and the Class and Defendant are contracts that contain an implied covenant of good faith and fair dealing, which obligated Defendant to perform the terms and conditions of the contracts fairly and in good faith and to refrain from doing any act that would prevent or impede Plaintiff and the Class from performing any or all conditions of the contracts that they agreed to perform, or any acts that would deprive Plaintiff and the Class of their benefits.

60.    Plaintiff and the Class performed all conditions, covenants and promises to be performed on their part in accordance with the contracts.

61.    Defendant knew Plaintiff and the Class fulfilled all their duties and conditions under the contracts.

62.    Defendant breached the implied covenant of good faith and fair dealing under the contracts by engaging in the conduct complained of herein and by engaging in the conduct that led to the Company's blackout period and thereafter.  While the blackout was no fault of the Plaintiff, the Company refused to extend the exercise period beyond the blackout so that Plaintiff could have a meaningful opportunity to exercise their contractual rights conferred upon them by option grants, thereby preventing Plaintiff from exercising their stock options.

63.    As a result of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiff and the Class have suffered economic losses and other general, consequential and specific damages, including the amounts they would have received from exercising their options.

WHEREFORE, Plaintiff on behalf of himself and the Class, prays for judgment as follows:

A.    Declaring this action to be a proper class action pursuant to 735

ILCS 5/2-801 on behalf of the Class defined herein, and declaring the Plaintiff to

be a proper Class representative, and Plaintiff's counsel as counsel for the Class;

B.    Declaring that the Stock Option Plan's 90 day expiration period for

former employees is tolled by the blackout period;

C.    Declaring that the offer made to putative class members is

inadequate, coercive and invalid;

D.    Finding that Navistar breached its obligations under the

Company's Stock Option Plan and Stock Option contracts;

E.    Finding that Navistar breached its obligation of good faith and fair

dealing to Plaintiff and the Class;

F.    Awarding Plaintiff and Class members compensatory damages and

exemplary damages in an amount to be proven at trial;

G.    Awarding Plaintiff and the Class pre-judgment interest, as well as

reasonable fees and costs; and

H.    Awarding such other relief as this Court may deem just and proper.

## <u>COUNT III</u>
### Violation of the Illinois Wage Payment and Collection Act

64.    Plaintiff hereby incorporates all of the foregoing paragraphs.

65.    At all relevant times, the Illinois Wage Payment and Collection Act, 820

ILCS 115/1, *et seq.*, is and was in full force and effect.[3]

---

[3] Also, on July 9, 2008, more than three days before this action was filed, Plaintiff made a demand pursuant
to the Illinois Attorneys Fees and Wage Actions Act, 705 ILCS 225/1. Ex. F.

66.    820 ILCS 115/1 states that: The Act applies to all employers and employees in this State, including employees of units of local government and school districts, but excepting employees of the State or Federal governments.

67.    820 ILCS 115/4 states that: All wages earned by any employee during a semi-monthly or bi-weekly pay period shall be paid to such employee not later than 13 days after the end of the pay period in which such wages were earned. All wages earned by any employee during a weekly pay period shall be paid not later than 7 days after the end of the weekly pay period in which the wages were earned. All wages paid on a daily basis shall be paid insofar as possible on the same day as the wages were earned, or not later in any event than 24 hours after the day on which the wages were earned. Wages of executive, administrative and professional employees, as defined in the Federal Fair Labor Standards Act of 1938, may be paid on or before 21 calendar days after the period during which they are earned.

68.    Under the Act, every employer shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee.

69.    820 ILCS 115/14 of the Act states that: Any employer or any agent of an employer, who, being able to pay wages, final compensation, or wage supplements and being under a duty to pay, wilfully refuses to pay as provided in this Act, or falsely denies the amount or validity thereof or that the same is due, with intent to secure for himself or other person any underpayment of such indebtedness or with intent to annoy, harass, oppress, hinder, delay or defraud the person to whom such indebtedness is due, upon conviction, is guilty of a Class C misdemeanor. Each day during which any

17

violation of this Act continues shall constitute a separate and distinct offense.

70.    Defendant is an employer in this state as defined under the Illinois Wage Payment and Collection Act.

71.    Defendant violated the Act by refusing to pay owed compensation to current and former employees.

WHEREFORE, Plaintiff on behalf of himself and the Class, prays for judgment as follows:

A.    Declaring this action to be a proper class action pursuant to 735 ILCS 5/2-801 on behalf of the Class defined herein, and declaring the Plaintiff to be a proper Class representative, and Plaintiff's counsel as counsel for the Class;

B.    Declaring that the Stock Option Plan's 90 day expiration period for former employees is tolled by the blackout period;

C.    Declaring that the offer made to putative class members is inadequate, coercive and invalid;

D.    Finding that Navistar breached its obligations under the Company's Stock Option Plan and Stock Option contracts;

E.    Finding that Navistar breached its obligation of good faith and fair dealing to Plaintiff and the Class;

F.    Enjoining Navistar from allowing putative class members to release their claims;

G.    Awarding Plaintiff and Class members compensatory damages and exemplary damages in an amount to be proven at trial;

H.    Awarding Plaintiff and the Class pre-judgment interest, as well as reasonable fees and costs; and

I.    Awarding such other relief as this Court may deem just and proper.

**COUNT IV**
**For Declaratory Relief Finding Releases Invalid**

72.    Plaintiff hereby incorporates all of the foregoing paragraphs.

73.    Defendant has attempted to induce option holders to release their claims through an inadequate, coercive and oppressive offer which omits the information necessary for option holders to make a knowing and informed decision, with assistance of appropriate expert advice.

74.    There is an actual controversy regarding whether the releases are invalid.

75.    Putative class members were influenced by duress to accept the offer in exchange for the releases.

76.    Further, it is outside Illinois public policy to uphold releases that waive claims under the Illinois Wage Payment and Collection Act.

WHEREFORE, Plaintiff on behalf of himself and the Class, prays for judgment as follows:

A.    Declaring this action to be a proper class action pursuant to 735 ILCS 5/2-801 on behalf of the Class defined herein, and declaring the Plaintiff to be a proper Class representative, and Plaintiff's counsel as counsel for the Class;

B.    Preliminarily enjoining Navistar from accepting releases until this matter has been adjudicated;

C.    Declaring that the Stock Option Plan's 90 day expiration period for former employees is tolled by the blackout period;

19

D.    Declaring that the offer made to putative class members is inadequate, coercive and invalid;

E.    Finding that Navistar breached its obligations under the Company's Stock Option Plan and Stock Option contracts;

F.    Finding that Navistar breached its obligation of good faith and fair dealing to Plaintiff and the Class;

G.    Enjoining Navistar from allowing putative class members to release their claims;

H.    Awarding Plaintiff and Class members compensatory damages and exemplary damages in an amount to be proven at trial;

I.    Awarding Plaintiff and the Class pre-judgment interest, as well as reasonable fees and costs; and

J.    Awarding such other relief as this Court may deem just and proper.


**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff on behalf of himself and the Class, prays for judgment as follows:

A.    Declaring this action to be a proper class action pursuant to 735 ILCS 5/2-801 on behalf of the Class defined herein, and declaring the Plaintiff to be a proper Class representative, and Plaintiff's counsel as counsel for the Class;

B.    Declaring that the Stock Option Plan's 90 day expiration period for former employees is tolled by the blackout period;

C.     Declaring that the offer made to putative class members is inadequate, coercive and invalid;

D.     Preliminarily enjoining Navistar from accepting releases until this matter has been adjudicated;

E.     Finding that Navistar breached its obligations under the Company's Stock Option Plan and Stock Option contracts;

F.     Finding that Navistar breached its obligation of good faith and fair dealing to Plaintiff and the Class;

G.     Enjoining Navistar from allowing putative class members to release their claims;

H.     Awarding Plaintiff and Class members compensatory damages and exemplary damages in an amount to be proven at trial;

I.     Awarding Plaintiff and the Class pre-judgment interest, as well as reasonable fees and costs; and

J.     Awarding such other relief as this Court may deem just and proper.

Dated:  July 18, 2008

                                        Respectfully submitted,

                                        _____
                                        Attorney for the Plaintiff

Clinton A. Krislov
Jeffrey M. Salas
KRISLOV & ASSOCIATES, LTD.
20 North Wacker Dr., Ste. 1350
Chicago, IL 60606
Tel: (312) 606-0500
Fax: (312) 606-0207
Firm ID: 91198

Law Offices of Mark Baiocchi
184 Shuman Blvd.
Suite 250
Naperville, IL 60563
Tel: (630) 983-4200
Fax: (630) 983-4223
Firm ID:  54040

# EXHIBIT 2

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | Samuel Der-Yeghiayan |
|---|---|---|---|
| **CASE NUMBER** | 08 C 4305 | **DATE** | 7/31/2008 |
| **CASE TITLE** | Ravi P. Rawat vs. Navistar International Corporation | | |

**DOCKET ENTRY TEXT**

Emergency motion hearing held.  Plaintiff's emergency motion for temporary restraining order [9] is denied based upon the representation of the parties.  Plaintiff will raise the issue before Judge Darrah, who has the lower case number when he returns and that Defendant agrees not to issue any further checks until after 08/15/08.

Docketing to mail notices.

00:45

| | Courtroom Deputy Initials: | maw |
|---|---|---|

# EXHIBIT 3

# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| RAVI P. RAWAT, on behalf of himself and others similarly situated,<br><br>　　　　　Plaintiff,<br>v.<br><br>NAVISTAR INTERNATIONAL CORPORATION,<br><br>　　　　　Defendant. | No. 08-4305<br><br>Judge Elaine E. Bucklo |

## MOTION FOR A PRELIMINARY INJUNCTION TO PREVENT DEFENDANT FROM ACCEPTING RELEASES OR TO INVALIDATE RELEASES EXECUTED BY PUTATIVE CLASS MEMBERS

NOW COMES Plaintiff Ravi P. Rawat on behalf of himself and those similarly situated, for his Motion for a Preliminary Injunction to Prevent Defendant from Accepting Releases or to Invalidate Releases Executed by Putative class members.

1.　　Plaintiff asks this Court to preliminarily enjoin Defendant Navistar from accepting releases from putative class members or to invalidate any releases accepted.

2.　　The reasons for this Motion are set forth in the attached Memorandum in Support.

WHEREFORE, Plaintiff asks this Court to grant the Motion for Preliminary Injunction and to Invalidate any Releases Accepted by Defendant Navistar.

Respectfully submitted,

Dated:　July 30, 2008

　　　　　　　　　　　　　　　 s/Clinton A. Krislov＿＿＿＿＿＿＿＿
　　　　　　　　　　　　　　　Clinton A. Krislov

Clinton A. Krislov
Jeffrey M. Salas

KRISLOV & ASSOCIATES, LTD.
20 North Wacker Drive, Suite 1350
Chicago, Illinois  60606
Tel.:  (312) 606-0500
Fax:  (312) 606-0207

Law Offices of Mark Baiocchi
184 Shuman Blvd.
Suite 250
Naperville, IL 60563
Tel: (630) 983-4200
Fax: (630) 983-4223

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| RAVI P. RAWAT, on behalf of himself and others similarly situated, | |
| Plaintiff, | No. 08-4305 |
| v. | |
| NAVISTAR INTERNATIONAL CORPORATION, | Judge Elaine E. Bucklo |
| Defendant. | |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION TO PREVENT DEFENDANT FROM ACCEPTING RELEASES OR TO INVALIDATE RELEASES EXECUTED BY PUTATIVE CLASS MEMBERS

Plaintiff Ravi P. Rawat asks this Court to preliminarily, pending this litigation: 1) enjoin the Defendant from accepting releases sent by putative class members; or 2) hold or invalidate all releases received by Defendant Navistar International Corporation in connection with its June 20, 2008 offer of settlement.

## PRELIMINARY STATEMENT

Navistar, after breaching their stock options contracts by rendering employee stock options unexercisable for over two years, was sued by employees whose options expired during Navistar's self-imposed blackout period.  Navistar sought and obtained an extension of time to respond to the complaint, then used the period instead to solicit putative class members by a deceptive and coercive communication to coerce class members to release their claims and thwart the litigation.  The releases are misleading, coercive and unsupported by valid consideration.  Plaintiff asks this Court to enjoin Navistar's acceptance of and/or invalidate any executed releases.

# BACKGROUND

This case is a refiling of a case filed in the Northern District of Illinois and is brought on behalf of current and former employees of Navistar whose stock options expired during the Navistar's "blackout period[1]." (in this context, a period during which employee stock options could not be exercised)  Defendants moved to dismiss the original federal case for lack of subject matter jurisdiction and then removed this case to federal court.

Navistar's blackout period began on April 6, 2006 when the Company disclosed that its financials were materially misstated and the Company would have to go through a process to restate those financials.  That process and the black out period continued for over two years until May 29, 2008 when Navistar finally filed its financial statements and brought its filings current.

During the blackout period, Navistar refused to permit employees and former employees to exercise their options, during which a large number of such options expired.   Ex. A.  By refusing to permit putative class members to exercise and enforce their option rights, Navistar breached its obligations under those option contracts.

Although the Company did nothing, prior to being sued, to remedy its resulting breach of the employees' right to exercise stock options, once the federal court action was filed the Company set upon a dishonest scheme to thwart the litigation and coercively obtain releases from the putative class members.

There are two, independent bases for this Court to invalidate the releases.  First, the releases were solicited and signed under economic duress, by deceptive disclosures at

---

[1] A blackout period is a period where trading is restricted because Navistar was not up to date with its SEC filings.

an unfair price, supported by inadequate consideration. Second, under Illinois law, putative class members cannot release claims under the Illinois Wage Payment and Collection Act or any other action that seeks to recover owed compensation.

### 1.    *Defendant's Scheme to Undermine the Litigation.*

Plaintiff filed a lawsuit in the Northern District of Illinois on May 23, 2008; the federal class action complaint was served on May 29, 2008. On June 11, 2008, Defendant's counsel Robin Hulshizer called merely purporting to introduce her firm and requested Plaintiff counsel's agreement to extend Navistar's time to respond to Plaintiff's complaint, representing that the extension was for "convenience of counsel," ascribed to weddings and vacations. Based on Hulshizer's representations, and in the usual civility afforded opposing counsel, Plaintiff's counsel Krislov readily agreed to the extension.

Less than two weeks later, on June 24, 2008, the hearing date for Defendant's Motion to Extend time to respond, undersigned counsel Clinton A. Krislov learned that Defendant's purpose for extending time to respond to the complaint was far more sinister.

Krislov received an anonymous call inquiring about the case from a person claiming to be a putative class member who had received a communication from Navistar that asked the recipients to release their claims against the Company and covenant not to sue. The same day, at 10:14 a.m. Krislov e-mailed Hulshizer with his concerns. An hour later, Hulshizer returned the call professing not to have seen the e-mail and confirmed that the letter was sent to all option holders not currently in litigation with the Company.

Indeed, the extension was not for convenience of counsel, but a subterfuge to allow the Defendant a sufficient opportunity to contact putative class members in an effort to thwart this litigation.

<u>The June 20, 2008 Letter</u>[2].  Review shows that the letter is indeed misleading and coerces class members into precipitously signing releases without the full information for class members to make an informed decision.  Rather than encouraging class members to seek their own counsel and tax advice, they were promised that if their signed releases are received before July 3, they will receive a payment by July 31.  Releases received by August 1, to be paid by August 31.  The releases explicitly preclude putative class members from participating in the federal or any other class action and direct any questions to the Company.

### 2.    *Navistar's Inadequate and Coercive Offer*

During the blackout period Navistar caused communications to be issued to option holders advising them that their stock options had expired and were not worthless. Employees/Former employees who inquired were told that the Company was considering doing "something" but could make no promises.  Thus, Navistar's June 20, 2008, letter -- apparently sent to all employees and former employees whose options expired during the blackout period[3] (other than Rawat) improperly asks putative class members to release not only their current claims against the Company, but also asks putative class members to sign a covenant not to sue and explicitly references this case.  Importantly, the letter incentivizes class members to act before July 3, 2008 (but not after August 1, 2008) and channels any questions solely to Defendant Navistar.

<u>The offered consideration</u>.  As consideration, Navistar offers the putative class members merely the difference between the: "closing price on the date your option

---

[2] Attached hereto as Exhibit B.

[3] Importantly, the recipients of the letter were all members of the putative class described in Plaintiff's Class Action Complaint.

expired and the exercise price for all of your options on the expiration date." *Id.* In
return, Navistar asks putative class members to release all claims to the expired options
and "the claims described **in the putative class action complaint filed against the
Company by attorney Clinton A. Krislov on behalf of Mr. Ravi P. Rawat**. . ." *Id.*
(emphasis added)  Navistar mandated that the putative class members must respond by
August 1, 2008, and if class members respond as soon as July 3, 2008, the Company will
accelerate the cash payment.

The deadlines to respond and secure rapid payment of the offer are rapidly
approaching, making a protective order necessary.  The putative class has an extremely
limited amount of time to return the releases to the Company and the Company has added
an incentive to class members to send those releases immediately.

### 3.    *Judge Darrah's Determination That the Offer Was Coercive and Misleading*

On June 26, 2008, Plaintiff Rawat brought an emergency motion in the federal
court to enjoin Defendants from contacting putative class members.  (Ex. C, June 26,
2008, Transcript of Proceedings, Before Honorable John W. Darrah).  Navistar opposed
the motion solely based on the argument that the federal court lacked subject matter
jurisdiction because the class was less than 100 class members as required by the Class
Action Fairness Act.

Nonetheless, United States District Judge Darrah found that the letter was
coercive and misleading and, prior to leaving the bench for the summer, enjoined
Navistar from accepting releases until at least August 1, 2008, ordered a neutral
corrective notice to the class, and allowed putative class members until August 1, 2008 to
reconsider Navistar's offer. Ex. D. For the time being, Plaintiff, without the benefit of

discovery, has no evidentiary basis to dispute Defendant's claim that there are less than 100 class members. Accordingly, he has filed this action in this Court to obtain relief where jurisdiction is uncontestable.

This Court should continue the injunction entered by Judge Darrah or invalidate the releases executed by putative class members.

In more than 33 years of practice, 25 years of class action practice, undersigned counsel Krislov has never previously experienced deceitful conduct of this sort. Irrefutably, the request to extend time to answer was a ruse to facilitate Defendant's scheme. Defendant's letter was an improper attempt to undermine the litigation by offering putative class members inadequate consideration for their claims against the Company.

### 4.    *The Unfairness of the Offered Value*.

The offer omits many disclosures, such as the adverse tax treatment of the payments. But it also omits information on the "market" for such offers made by other companies. Thus, although Navistar's offer to pay expiration date prices for the expired options (generally in the $20-$50 range with some getting more whose options expired during the shore timeframe where there was a spike to $70), the price being offered is based on market prices when the current financials were unavailable and with no time value improvement for as 2 years delay in payment.

Other companies who have had similar problems have agreed to either: 1) extend the exercise period for the length of the blackout period, essentially moving the exercise period for 90 days after public financials are current, (thus giving an efficient market price)(See, Ex. E); 2) paying expired option holders the amount representing the highest

price during the blackout period (See, Ex. F); and 3) paying option holders based on the price when the blackout ended.  Here it would be $75.90 for all class members.

Accordingly, Plaintiff asks this Court to preliminarily enjoin Navistar from accepting any release and invalidating any releases sent to Defendant in consideration of Defendant's coercive offer.

## NATURE OF THE ACTION

Navistar's employees and former employees who received stock options pursuant to the Company's Stock Option Plan were denied the right to exercise their vested options from April 6, 2006 until May 29, 2008 (the "blackout period") because of the Company's malfeasance.  Specifically, Navistar needed to restate its financials that were previously materially misstated.

By causing the blackout period and refusing to allow Navistar employee stock option holders to exercise their options – which are contracts[4] -- during this blackout period, Navistar breached the option contracts and its duty of good faith and fair dealing to the option holders.

All of the options were granted pursuant to and are governed by a single document: 2004 Performance Incentive Plan (the "Plan" or "Stock Option Plan"). The class consists of current and former Navistar employees who received -- but could not exercise -- their stock options. Class members were harmed because their options either expired or became less valuable during the blackout period, which was in effect from

---

[4] It is well settled that stock options are contracts.  *Lamb v. Emhart Corp.*, 47 F.3d 551, 560 (2d Cir. 1995)("The issuance of stock options constitutes a contract between the employer and employee, supported by the consideration of the employee's subsequent continued employment."); *Scully v. U.S. Wats, Inc.*, 238 F.3d 497, 507 (3d Cir. 2001)(stating "an executive stock option is a contract"), *In re Allen*, 226 B.R. 857, 862 (N.D. Ill. 1998)(stating "A stock option is a contract for transfer of shares of stock, subject to the same rules of construction as any other contract")(citations omitted), *Owen v. Merts*, 405 S.W.2d 273, 277 (Ark. 1966), *Klusener v. Commissioner of Internal Revenue*, Nos. 5383-87, 6237-87, 1989 WL 14814 (Feb. 27, 1989 U.S. Tx. Ct.).

April 6, 2006 until May 29, 2008.

## PROCEDURAL BACKGROUND

On May 23, 2008, Plaintiff filed a class action complaint in the Northern District of Illinois on behalf of all employees and former employees whose options expired during the Company's blackout period. Plaintiff properly served the Company on May 29, 2008. Navistar was scheduled to respond by June 18, 2008.

On June 11, 2008, Navistar's counsel contacted Plaintiff's counsel to secure an extension, for convenience of counsel, to respond to Plaintiff's Class Action Complaint. Plaintiff's counsel agreed to the extension based on Defendant's representations that it could not respond by June 18, 2008, because of scheduling conflict.

On July 3, 2008, Defendant filed its Motion to Dismiss on the basis of subject matter jurisdiction.

Plaintiff, without conceding that the federal court lacked subject matter jurisdiction, filed this action in the Circuit Court of Cook County on July 18, 2008.

## LEGAL STANDARD

The purpose of a preliminary injunction is to preserve the status quo pending the outcome of the full litigation of the issues involved in the underlying dispute. *New Light Cemetery Ass'n v. Baumhardt*, 373 Ill. App. 3d 1013, 1017 (1st Dist. 2007)(citing, *Illinois Housing Development Authority v. Arbor Trails Development*, 84 Ill. App. 3d 97, 102-03 (3d Dist. 1980).

As a threshold matter, a party seeking a preliminary injunction must demonstrate (1) some likelihood of succeeding on the merits, and (2) that it has "no adequate remedy at law" and will suffer "irreparable harm" if preliminary relief is denied. *Abbott*

*Laboratories v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir.1992), citing, *Lawson Prods.*, 782 F.2d at 1433; *Roland Mach.*, 749 F.2d at 386-87.  If, however, the moving party clears both thresholds, the court must then consider: (3) the irreparable harm the non-moving party will suffer if preliminary relief is granted, balancing that harm against the irreparable harm to the moving party if relief is denied; and (4) the public interest, meaning the consequences of granting or denying the injunction to non-parties. *Id.*, citing, *Lawson Prods.*, 782 F.2d at 1433; *Roland Mach.*, 749 F.2d at 387-88.

## ARGUMENT

Defendant contacted putative class members in order to persuade the class members to release their claims against the Company in exchange for a cash payment reflecting the difference between their options' exercise price and the Company's closing price on the day their options expired.

Plaintiff asks that this Court enjoin the Company from accepting any executed releases until this Court can adjudicate this case on the merits. If this injunction is not granted, putative class members will: 1) not have an adequate remedy at law because they will have released their claims; 2) be denied relief in a matter where they have substantial likelihood of success; 3) suffer harm that is immediate, certain and great, while Navistar will not be harmed at all; and 4) the interest to non-parties favors an injunction.

There are two independent bases that void any releases sent to Defendant by class members: 1) Navistar's misleading and coercive solicitation wrongly coerced class members into signing away their legal rights under economic duress in return for inadequate compensation; and 2) those rights could not be released under the Illinois Wage Payment and Collection Act.

I.   **A PRELIMINARY INJUNCTION IS NEEDED BECAUSE CLASS MEMBERS WILL SUFFER IRREPARABLE HARM FOR INADEQUATE CONSIDERATION IF THEY RELEASE THEIR CLAIMS BEFORE A HEARING ON THE MERITS.**

Plaintiff asks this Court to enjoin Navistar from accepting releases sent to putative class members that deceitfully and coercively asked class members to release any claims against Navistar in consideration for an inadequate offer, that did specify any tax implications or any rights or claims that the putative class members may have.

A.   **Class Members Will Not have an Adequate Remedy at Law for Meritorious Claims.**

This Court will effectively decide whether class members may pursue meritorious claims against their employer or former employer. Preserving the status quo until the case can be decided on the merits is imperative. As of now, class members are deciding whether to release their claims or continue to be members of the class that seeks to pursue those claims for more favorable consideration.

B.   **Harm to Class Members is Certain and Great, Navistar Will Suffer No Harm.**

Currently, Navistar is barred by a federal court order from accepting releases until August 1, 2008. Plaintiff maintains that the solicitations for releases sent to putative class were executed under economic duress and are void as a matter of law. Preliminarily enjoining acceptance of the releases will preserve the status quo until the Court can make determination as to whether the releases are valid or void based on economic duress and the Illinois Wage law.

The harm to class members is that they will waive their rights on an uninformed basis at a price (mostly $20-$50 per share) determined at a time when the market information was incorrect, obsolete, and well below the $65-$75 per share range the sock

has been trading at since public disclosures were brought current.

The harm to Navistar is nonexistent; it simply continues to have employees and former employees with claims against them, as they had prior to sending the releases. Further, any harm to Navistar is of its own making, because it engaged in deceitful conduct to attempt to obtain a quick release of claims after this litigation commenced. This Court can strike an even accord between the parties by preliminarily enjoining Navistar from accepting any releases from putative class members, and allowing more time or

C.      **Plaintiff and the Class has a Substantial Likelihood of Success Because Navistar Breached its Stock Option Contract Obligations and Violated the Illinois Wage Payment and Collection Act.**

Exacerbating the problem of releases is that Navistar clearly breached its option contract obligations is offering a one-time only price that is not a fully informed market price and violated Illinois' Wage Payment and Collection law.  In response to that misconduct, Navistar engaged in a deceitful and coercive plan to attempt to gain an advantage in this litigation.   Further, the class claims are substantial and meritorious.

1.      **Plaintiff is Likely to Succeed on His Breach of Contract/Breach of Good Faith and Fair Dealing Claims**

The class' claims are fairly simple.  Navistar's stock option plans formed a contract whereby Navistar would, in lieu of cash compensation, grant stock options to employees in consideration for their continued employment.  From time to time, an employee would receive a stock option grant.  An option grant is the right to purchase an option at a future date at the option's strike price, which is the price of Navistar's common stock on the date of the grant.

It is well settled that a stock option is a contract.  *Lamb v. Emhart Corp.*, 47 F.3d

551, 560 (2d Cir. 1995)("The issuance of stock options constitutes a contract between the employer and employee, supported by the consideration of the employee's subsequent continued employment."); *Scully v. U.S. Wats, Inc.*, 238 F.3d 497, 507 (3d Cir. 2001)(stating "an executive stock option is a contract"), *In re Allen*, 226 B.R. 857, 862 (N.D.Ill. 1998)(stating "A stock option is a contract for transfer of shares of stock, subject to the same rules of construction as any other contract")(citations omitted), *Owen v. Merts*, 405 S.W.2d 273, 277 (Ark. 1966), *Klusener v. Commissioner of Internal Revenue*, Nos. 5383-87, 6237-87, 1989 WL 14814 *1 (Feb. 27, 1989 U.S. Tx. Ct.).

Under Delaware law, by which this particular contract is governed, "[t]o prevail on a breach of contract claim, 'the plaintiff must demonstrate: first, the existence of a contract, whether express or implied; second, the breach of an obligation imposed by that contract; and third, the resultant damage to the plaintiff.'" *Segovia v. Equities First Holdings, LLC*, No. 06-C-09-149-JRS, 2008 WL 2251218 *7 (Del Super. Ct. May 30, 2008).

Navistar's stock option plan, attached hereto as Ex. F, is an express contract. Navistar breached its obligation to the Plaintiff and the putative class, whereby Plaintiff and the class suffered damages.

### a.   Navistar's Stock Option Plan is a Contract

As stated earlier, a stock option is a contract that is supported by the consideration of an employee's continued employment. *Beard v. Elster*, 160 A.2d 731, 739-41 (Del. 1960)(holding that the provision in a Stock Option Agreement that the option could be exercised only while the optionee remained an employee of the Corporation was held to furnish the Corporation adequate assurance of receiving the contemplated consideration,

i.e., the optionee's continued employment.)

    **b.**  **Navistar Breached its Obligations Under that Contract**

   Under the contract, Navistar was obligated to allow employees and former employees to purchase stock in Navistar at a specific price. Even though the employee and former employees fully performed under this contract, *i.e.*, they continued their employment until the time the stock options became exercisable, Navistar has refused, in bad faith, to honor their obligation.

    **c.**  **Plaintiff and the Class Suffered Damages and the "One-Time Only" Offer Coerced Waiver is at an Unfairly Low Price Because it Was Offered, *Inter alia*, When Navistar's Financials Were Not Current.**

   Navistar's breach caused Plaintiff and the Class to suffer immense damages. By not allowing employees to exercise their options, Defendant denied the class members their owed and due compensation. As explained earlier, the Defendant's attempt to settle the claims of class members significantly undervalues and misrepresents their claims, shortchanging Plaintiff and Class members by thousands if not hundreds of thousands of dollars.

   In short, the offer for each person is unfairly low because: 1) the class is not given the benefit of the intended equity award; and 2) the offer is a blackout period effected price (when current financials were unavailable and the Company's shares were unlisted the stock was generally traded between $20-$50 per share), much lower that the class member would realize if their exercise period were extended (See, Ex. E), or the Company offered the highest blackout period price or the price the date the blackout was lifted. ($75.90 per share).

### 2. Navistar Violated the Illinois Wage Payment and Collection Act.

The Illinois Wage Payment and Collection Act applies to these claims. Under the Illinois Wage Payment and Collection Act, wages are defined "as any compensation owed an employee by an employer pursuant to an employment contract or contract between the 2 parties, whether the amount is determined on a time, task, piece, or any other basis of calculation." *Shields v. Associated Volume Buyers, Inc.*, No. 93 C 7620, 1994 WL 110397 at *1 (N.D. Ill. March 31, 1994)(citing, 820 ILCS 115/2). Payment to separated employees is termed "final compensation" and is defined under the Act as "wages, salaries, earned commissions, earned bonuses, and the monetary equivalent of earned vacation and earned holidays, and any other compensation owed the employee by the employer pursuant to an employment contract or contract between the 2 parties." *Id.*, citing, 820 ILCS 115/2.

The legislative intent of the Act was to include a broad class of compensation due employees. The Act's predecessor statute was interpreted by the Illinois Supreme Court to exclude vacation pay from the ambit of the statute. *Id.* The Act was amended, not only to expressly include vacation pay, but to define wages even more broadly to include any compensation due and owing an employee by an employer pursuant to an employment contract. *Id.* citing, *Metropolitan Distributors, Inc. v. Illinois Dept. of Labor*, 114 Ill. App. 3d 1090, 449 N.E.2d 1000 (1st Dist.1983). Based on this legislative intent, the Appellate Court for the First District in *Metropolitan Distributors*, 114 Ill. App. 3d 1090, 1094, found that severance pay provided in a collective bargaining contract constituted either wages or final compensation under the Act. *Id.*

Accordingly**,** stock options are covered by the Illinois Wage Payment and

Collection Act. Specifically, the act covers:

> For all employees, other than separated employees, "wages" shall be defined as *any compensation* owed an employee by an employer pursuant to an employment contract or agreement between the 2 parties, whether the amount is determined on a time, task, piece, or any other basis of calculation.
>
> Payments to separated employees shall be termed "final compensation" and shall be defined as wages, salaries, earned commissions, earned bonuses, and the monetary equivalent of earned vacation and earned holidays, and *any other compensation owed the employee* by the employer pursuant to an employment contract or agreement between the 2 parties.
>
> Where an employer is legally committed through a collective bargaining agreement or otherwise to make contributions to an employee benefit, trust or fund on the basis of a certain amount per hour, day, week or other period of time, the amount due from the employer to such employee benefit, trust, or fund shall be defined as "wage supplements", subject to the wage collection provisions of this Act.

820 ILCS 115/2 (emphasis added)

Thus, under the Illinois Wage Payment and Collection Act, *any compensation* is deemed to be wages and, therefore, covered by the act. Further for purposes of several wage acts (similar to the Illinois Wage Act), stock options are generally viewed as covered compensation. For instance, in *Scully v. US WATS Inc.*, 238 F.3d 497, 516 (3d Cir. 2001), the Third Circuit interpreted stock options to be covered under the Pennsylvania Wage Payment and Collection Law stating:

> "we are confident that the Pennsylvania Supreme Court would conclude that the stock option granted to Scully, essentially a call option, constitutes "wages or compensation" within the meaning of the WPCL."[5]

---

[5] The Pennsylvania law covers: "all earnings of an employe[e], regardless of whether determined on

15

*Id.* at 517.

And, the Third Circuit held that "the 'call' option extended to Scully falls within the definition of fringe benefits or wage supplements because it represents an "amount to be paid pursuant to an agreement to the employee." *Id.* citing, *See Regier v. Rhone-Poulenc Rorer, Inc.,* No. Civ. A. 93-4821, 1995 WL 395948, at *4-7 (E.D.Pa. June 30, 1995) (WPCL covers call options); *Bowers v. NETI Technologies, Inc.,* 690 F.Supp. 349, 353 (E.D.Pa.1988) (employer's agreement to repurchase stock from employee subject to the WPCL).[6]

The same is true here. The Illinois Wage Payment and Collection Act covers all compensation, as defined above, as well as compensation "pursuant to an employment contract or agreement between the 2 parties." 820 ILCS 115/2. Plaintiff and the putative class' stock options were agreements for compensation in consideration for their service and continued service.[7]

---

time, task, piece, commission or other method of calculation. The term "wages" *also includes fringe benefits or wage supplements* whether payable by the employer from his funds or from amounts withheld from the employe[e]s' pay by the employer. 43 Pa. Stat. Ann. § 260.2a (1992) (emphasis added)" *Id.*

[6] Wage supplements, a term that is also included in the Illinois Act, was defined in the Pennsylvania law as "all monetary employer payments to provide benefits under any employe[e] benefit plan, as defined in section 3(l) of [ERISA], as well as separation, vacation, holiday, or guaranteed pay; reimbursement for expenses; union dues withheld from the employe[e]s' pay by the employer; *and any other amount to be paid pursuant to an agreement to the employe[e],* a third party or fund for the benefit of employe[e]s. *Id.* (emphasis added) (citation and footnote omitted)" *Id.*

[7] *Scully* also states that: "concerning the more central issue, a stock option may qualify as earned compensation under the WPCL if the employer specifically agreed to deliver the option as employment compensation. *Id.*, citing *Keck v. Trifoods Intern., Inc.,* No. Civ. A. 96-3016, 1996 WL 665536, *4-5 (E.D.Pa. Nov. 12, 1996); *Harding,* 882 F.Supp. at 427-29. Scully presents exactly this situation. Stock options provide an incentive to an employee to work to increase the stock's value and thereby benefit the company. *See Safeway Stores,* 210 F.3d at 1243. The company benefits because the stock option lowers the amount of up-front compensation costs that must be paid directly to the employee, but the employee bears a considerable risk since his compensation will not increase unless the stock value increases. *See Id.* Thus, stock options are often termed "contingent compensation." *Id.* (internal quotations and citation omitted).

Similarly, in *Montemayor v. Jacor Communications, Inc.*, 64 P.3d 916, 924 (Colo. App. 2002), the Colorado Appellate Court found that stock options were covered by the Colorado Wage Collection Act. The court stated that the fact that the Colorado statute, like the Illinois statute, covered vacation pay and bonuses, the fact militated in favor of finding that employee stock options wages. *Id.* Further, the court held that Incentive Stock Options, as most of the options are here, are by nature "an option granted to an individual for any reason connected with his employment by a corporation. . ." *Id.*

Stock options are covered by a number of provisions of the Illinois Wage Payment and Collection Act, because the Act covers *any compensation pursuant to any agreement*. Navistar's stock option plan and stock options in general are an agreement for compensation.

Navistar's failure to honor its obligations and subsequent deceitful plan to shortchange its employees and former employees shows that the Act was clearly violated.

### D.    The Potential Harm to Third Parties Supports an Injunction

The nonparties, here, class members, are on the verge of signing away their legal rights for inadequate consideration based on Navistar's deceptive scheme to obtain releases from these putative class members.

### III.    THE RELEASES EXECUTED BY PUTATIVE CLASS MEMBERS ARE INVALID BECAUSE THE COMMUNICATION WAS MISLEADING, COERCIVE, AND UNSUPPORTED BY CONSIDERATION.

"[A] release is valid and binding where the minds of the parties have met; where the release is supported by consideration; and where there has been no fraud, misrepresentation, mistake, duress or undue influence." *Delaware Lumber and Millwork, Inc. v. Anecon Const. Co., Inc.*, C.A. No. 96L-06-011, 1993 WL 562206 at *2

17

(Del. Super. Ct. Dec. 13, 1993).  Releases should not be used as instruments of fraud or

oppression. *Carlile v. Snap-on Tools*, 271 Ill. App. 3d 833, 838 (4th Dist. 1995) citing,

*Antal v. Taylor*, 146 Ill. App. 3d 863, 866-67, (1986).  Here, the releases were

misleading, coercive and unsupported by adequate consideration.  Navistar's coercive

letter to putative class members -- some of whom are currently employees that rely on

Navistar for continued employment -- clearly puts the putative class members in a no-

win situation.

Specifically, the letter coerces putative class members into accepting less

consideration than the litigation seeks.  In fact, the letter's content is a thinly veiled

"take it or leave it" offer[8], with consecutive sentences stating:

> ". . . The Company does not believe that it has an obligation to compensate
> individuals for the Expired Options or that the claims set forth in the Complaint
> are valid, and **we intend to vigorously contest all of the relief Mr. Rawat
> seeks**." Ex. B (emphasis added)

Followed by:

> "This **one-time opportunity** will be available until **August 1, 2008**. . ." *Id.*
> (emphasis added)

Even more coercively, Defendant guarantees an extra incentive for quick action:

> "If we receive the executed Payment and Release **on or before July 3, 2008**,
> unless you direct otherwise we will mail a check in the amount of your payment .
> . . on or before July 31, 2008." *Id.* (emphasis added)

This communication was the subject of an Emergency Motion in the federal court

action.  Even though the federal court ordered a "neutral" corrective notice, class

members, by the size of the offer and tone of the letter have been coerced into releasing

---

[8] The offer was sent to option holders that were both employees and non-employees.  Courts have
consistently held that "if the class and the class opponent are in an ongoing business relationship,
communications from the class opponent to the class may be coercive." *Ralph Oldsmobile Inc. v. General
Motors Corp.*, No. 99civ4567 (AGS), 2001 WL 1035132, at *3 (S.D.N.Y. Sept. 7, 2001)(citing *Jenifer v.
Delaware Solid Waste Auth.*, 1999 WL 117762 (D. Del. Feb. 25, 1999).

their claims against Navistar.

As United States District Judge Darrah has already correctly noted, the letter implies that if class members do not release their rights in exchange for a cash payment – in some cases thousands of dollars -- they will be left with nothing.  Although the letter and the follow up corrective notice disclose a little more information, class members still are presented with an offer that undervalues their rights and puts them under a strict timeline to comply.  Transcript 18:6-22.

Navistar's offer to class members is inadequate for three reasons. First, the consideration for release given to class members is currently due and owed under the contract; releasing claims for money already owed is not adequate consideration. Second, the cash payment reflects the spread between his or her options' exercise price and Navistar's common stock's trading price the day that the option expired.  The offer, however, fails to disclose that class members may be entitled to a higher cash payment. Third, if the putative class members exercised and held the options instead of immediately selling the options, they would receive a two-fold benefit: 1) Navistar's stock appreciated significantly, making holding the stock more valuable than immediately selling the stock; and 2) holding the stock creates more favorable tax treatment than an immediate sale.

> **a.** **The offer does not give sufficient notice to claims putative class members are releasing nor does it show the tax implications of the offer**

Also, the offer letter asks class members to release their claims against Navistar without disclosing material information.  The communication makes two misrepresentations and omits two material facts.  First, it claims that the cash offer was

only a "one time opportunity" and that "Navistar had no obligation to pay that amount." Second, it does not disclose the adverse consequences of a cash offer, or that companies in similar situations have offered much more generous packages.

Under Delaware law, fraud or misrepresentation is sufficient to invalidate a release. *Greenhouse v. BP Inc*., C.A. 86-OC-159, 1989 WL 135704, at *2 (Del. Super. Ct. Oct. 26, 1989)(finding that release agreement was void based of fraud), citing, *Hicks v. Soroka*, Del. Super., 188 A.2d 133 (1963).

Although Plaintiff believes that these releases intentionally omitted or misrepresented material information, as a general rule ***even an innocent misrepresentation*** by the releasee or his or her agent of a material fact, intended to be acted on by the releasor, and relied on by him or her, is effective to avoid a release induced thereby. 76 C.J.S. Release § 27, citing, *Bass v. Seaboard Air Line R. Co*., 205 Ga. 458, 53 S.E.2d 895 (1949).;and *Kennedy v. Texas Emp. Ins. Ass'n*, 121 S.W.2d 434 (Tex. Civ. App. Dallas 1938), *judgment aff'd*, 135 Tex. 486, 143 S.W.2d 583 (Comm'n App. 1940).

Navistar's solicitation misrepresents that the offer is a "one-time opportunity," that Navistar is "not obligated to pay anything" and it omits that the cash payment, rather than allowing putative class members to exercise their options, would result in adverse tax consequences.  All three of these misrepresentations are material and would have induced potential class members to sign away their legal rights without full information.

In fact, Navistar admitted in open court that the "one-time opportunity" statement was a misrepresentation.  Transcript: 17:18-23. (The Court:  "The question is, have your clients absolutely precluded any settlement of this matter at a later time after August

20

1st?";  Mr. Perlman [Navistar's counsel]: "*Absolutely not*, your Honor.  We've had no

discussions of that with our client, no such decision has been made.")(emphasis added)

      **b.**      **A release that is signed under economic duress is invalid**

In Delaware, duress can render a contract voidable where there is a (1) a wrongful

act which (2) overcomes the free will of the person (3) who has no adequate legal remedy

to protect his interests.  *Edge of the Woods v. Wilmington Savings Fund Society*, *FSB*, N.

C.A. 97C-09-281-JEB, 2001 WL 946521 (Del. Super.Ct. Aug. 16, 2001)  Economic

duress is directed against a person's business interests, and is often referred to as

"business compulsion." *Id.*, citing *Hanna Sys. Inc. v. Capano Group, L.P.*, C.A. No.

7408, 1985 WL 21128, at *3 (Del. Ch. Nov. 29, 1985).  The test for determining whether

the duress produced the asset is a subjective one that focuses on the state of mind of the

"victim" of the duress. *Id.*, *Restatement (Second) of Contracts* § 175, comment c (1981).

Loss of "free will" does not mean that no choice exists, rather, that the threatened person

is compelled to choose between regretable [sic] alternatives. *Id.*, *Williston on Contracts* §

1602, at 651 (3d ed. 1967). The threatened party must be compelled to make a

disproportionate exchange of value to protect his business with no adequate alternative

legal remedy. *Id.* § 1617.

Indeed, the Restatement, which Delaware law relies on, clearly shows that the

letter was a wrongful act, in this case a threat, because it gave class members no

reasonable alternative because the payment was a "one time opportunity."  Although the

letter and the resulting corrective notice mentioned the litigation against the Company,

Navistar cannot overcome the fact that it misrepresented the fact that it was a "one time

opportunity," when it admitted as much at the June 26, 2008 hearing.

Putative class members were coerced into signing releases by the promise that this was the **only time** that they could be compensated for their **earned wages**.  To make matters worse, the deadline for signing the releases was only about five weeks.

Class members have been forced to either give up their rights, or receive nothing.

### c.   The offer to putative class members is supported by inadequate consideration

Delaware law recognizes that a release that is unsupported by consideration is void.  *Sylvia CHAPMAN v. DUNN-Assoc., Ltd.*, C.A. No. 1988-04-120, 1988 WL 765407, at *1 (Del. Com. Pl. Sept. 22, 1988)(holding "the seller has done no more than insist upon the rights it contracted for with the purchaser. If an employee of the seller made such a promise, it was unsupported by any valid consideration. Accordingly, such a promise is unenforceable."); *See also*, 66 Am. Jur. 2d Release § 11, stating ("Generally speaking, in order to be effective, a release must be supported by consideration. In other words, the releasor must have received something of value to which he or she had no previous right.  Stated another way where one party is under a pre-existing duty to do or pay to another party that duty will not constitute sufficient consideration so as to uphold a release.")(citations omitted) and *U.S. Fidelity and Guar. Co. v. Klein Corp.*, 190 Ill. App. 3d 250, 257 (1st Dist.,1990) ("A release requires an abandonment of a claim to the person against whom the claim existed, and must be backed by consideration.")(citation omitted)

No consideration exists here because Navistar **already owed** an amount higher than the payment made in exchange for the release.

The Illinois Appellate Court, in *Carlile*, also noted that "Professors White and Summers describe an individual who refuses to perform his contract duties unless he receives a concession as an extortionist. In non-Code cases the consideration doctrine

could be used to police against extortion: 'You gave no new consideration for the concession and ***you had a preexisting duty to do everything you are to do under the modified arrangement, hence the concession is unenforceable.***'" *Carlile v. Snap-on Tools*, 271 Ill. App. 3d 833, 841 (4th Dist. 1995), citing, J. White & R. Summers, Uniform Commercial Code § 1-5, at 47 (2d ed. 1980)(emphasis added). *See also*, *Salvaggio v. Schafroth*, 133 Ill. App. 2d 811 (1971) (stating "[w]here there was no dispute that defendant owed plaintiffs at least the sum which defendant paid to them . . . release . . . against defendant arising out of plaintiffs' employment by defendant was unsupported by valid consideration and was unenforceable against plaintiffs who endorsed check.")

Even though Navistar was contractually obligated to allow Plaintiff and the Class to exercise their options, the releases sent to putative class members are invalid because they present a "take it or leave it" offer that is only a "one time opportunity." The letter, as it is currently described, forces putative class members to choose between: 1) an inadequate cash payment (for which they will realize ordinary income tax); or 2) nothing.

Indeed, Navistar's offer fails to acknowledge or disclose that fact in its offer, which radically undervalues the owed compensation, that Defendant's lawyers admitted is not in fact "take it or leave it" offer, as it is presented.. Ex. A; Transcript 17:18-23.

## III.   RELEASES SENT TO PUTATIVE CLASS MEMBERS ARE VOID AS A MATTER OF LAW

As noted above**,** Stock Options are covered under the Illinois Wage Payment and Collection Act, ("IWPCA or Wage Act"), which mandates that employees and former employees recover owed compensation. Under the Wage Act, any release signed by an employee or former employee in connection with the owed compensation is void as a

matter of law.

**A.    Putative Class Members Cannot Release Claims Under the Illinois Wage Payment and Collection Act or any other Action seeking Return of Compensation**

Releases signed by putative class members are void as a matter of law. *O'Brien v. Encotech Construction Services, Inc.*, 183 F.Supp.2d 1047, 1052 (N.D. Ill. 2002) and *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, No. 00 C 5755, 2004 WL 1403007 *7 (N.D. Ill.). As described in *Ladegaard*, public policy favors the peaceful and voluntary resolution of claims and when there has been such resolution, a presumption of its validity is created. *Ladegaard* 2004 WL 1403007, at * 3. citing *Blaylock v. Toledo, Peoria & Western R.R. Co.*, 43 Ill. App. 3d 35 (3d Dist. 1976). However, while recognizing the freedom to contract, it is also the rule in Illinois that agreements that are contrary to public policy as reflected in the laws of the state have a tendency to injure the public welfare are unenforceable. *Id.* citing *Holstein v. Grossman*, 246 Ill. App. 3d 719 (1st Dist. 1993). Because Illinois public policy precludes employees from contracting away their rights under the Illinois wages laws, (including the Illinois Wage Payment and Collection Act) any releases signed by employees are voidable.

Both *Ladegaard* and *O'Brien* are directly on point. In *Ladegaard*, employees brought a class action suit against their employer for violations of the Fair Labor Standards Act, the Illinois Minimum Wage Law, and, like here, the Illinois Wage Payment and Collection Act. *Id.* at *1. The *Ladegaard* defendants, like here, sent releases to the company's employees in offering them cash consideration for the release. *Id.* The court granted the plaintiff's motion to strike the releases and held that ***releases under the Illinois Wage Payment and Collection Act are invalid as a matter of law***. *Id.*

at *7.

Identically, in *O'Brien*, after the court originally rejected the argument that releases were void under the Illinois Wage Payment and Collection Act, Judge Gottschall, on reconsideration, adopted the analysis in *Ladegaard* in holding that the releases sent to plaintiffs were void as a matter of law. *Id.* at 1052. (agreeing with *Ladegaard* that under the Wage Act "the releases executed by . . . employees are void as a matter of law.")

## CONCLUSION

Accordingly, Plaintiff asks this Court to preliminarily, pending this litigation: 1) enjoin the Defendant from accepting releases sent by putative class members; or 2) hold or invalidate all releases received by Defendant Navistar International Corporation in connection with its June 20, 2008 offer of settlement.

Dated: July 30, 2008

Respectfully submitted,


 s/Clinton A. Krislov
Clinton A. Krislov

Clinton A. Krislov
Jeffrey M. Salas
KRISLOV & ASSOCIATES, LTD.
20 North Wacker Drive, Suite 1350
Chicago, Illinois 60606
Tel.: (312) 606-0500
Fax: (312) 606-0207

Law Offices of Mark Baiocchi
184 Shuman Blvd.
Suite 250
Naperville, IL 60563
Tel: (630) 983-4200
Fax: (630) 983-4223

# EXHIBIT 4

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| RAVI P. RAWAT, on behalf of himself and others similarly situated,<br><br>        Plaintiff,<br>v.<br><br>NAVISTAR INTERNATIONAL CORPORATION,<br><br>        Defendant. | No. 08-4305<br><br>Judge Elaine E. Bucklo |

**EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER TO TEMPORARILY PREVENT DEFENDANT FROM ACCEPTING RELEASES OR TO INVALIDATE RELEASES EXECUTED BY PUTATIVE CLASS MEMBERS UNTIL THE COURT CAN ADJUDICATE PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

NOW COMES Ravi P. Rawat, by and through his attorneys and on behalf of those similarly situated to file a brief in excess of the page limit and states:

1.      Plaintiff Ravi P. Rawat filed his Motion for a Preliminary Injunction and his Motion for Class Certification on July 24, 2008 in the Circuit Court of Cook County.

2.      Also on July 24, 2008, Plaintiff served copies of those motions, as well as a copy of the complaint in this action on Defendant's counsel in Plaintiff's federal court case against Navistar.

3.      Defendant's counsel, on the eve of the Motion's hearing, removed the case to this Court.

4.      The current federal court injunction freezing the releases expires on August 1, 2008.

6.      The purpose of this Motion is to preserve the status quo until this Court

rules on Plaintiff's Motion for a Preliminary Injunction and Plaintiff's Motion for Class

Certification.

       7.     Plaintiff's Memorandum of Support of His Motion for a Temporary

Restraining Order is attached hereto.

      WHEREFORE, Plaintiff asks for a Temporary Restraining Order preventing

Defendant from accepting releases until this Court has decided Plaintiff's Motion for a

Preliminary Injunction and Motion for Class Certification.

Dated: July 29, 2008

                           Respectfully submitted,


                         __s/Clinton A. Krislov_____
                         Clinton A. Krislov

Clinton A. Krislov
Jeffrey M. Salas
KRISLOV & ASSOCIATES, LTD.
20 North Wacker Drive, Suite 1350
Chicago, Illinois  60606
Tel.:  (312) 606-0500
Fax:  (312) 606-0207

Law Offices of Mark Baiocchi
184 Shuman Blvd.
Suite 250
Naperville, IL 60563
Tel: (630) 983-4200
Fax: (630) 983-4223

# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| RAVI P. RAWAT, on behalf of himself and others similarly situated, | |
| Plaintiff, | No. 08-4305 |
| v. | |
| NAVISTAR INTERNATIONAL CORPORATION, | Judge Elaine E. Bucklo |
| Defendant. | |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER TO TEMPORARILY PREVENT DEFENDANT FROM ACCEPTING RELEASES OR TO INVALIDATE RELEASES EXECUTED BY PUTATIVE CLASS MEMBERS UNTIL THE COURT CAN ADJUDICATE PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

Plaintiff Ravi P. Rawat asks this Court to temporarily: 1) enjoin the Defendant from accepting releases sent by putative class members; or 2) hold or invalidate all releases received by Defendant Navistar International Corporation in connection with its June 20, 2008 offer of settlement, until this Court has the opportunity to rule on the validity of the coercive waivers and releases being sought by Navistar.

## PRELIMINARY STATEMENT

This case is a refiling of a case originally filed in the Northern District of Illinois, titled *Rawat v. Navistar Int'l Corp.*, 08-3038 (N.D. Ill.). Defendant moved to dismiss that case as lacking subject matter jurisdiction, that there are fewer than 100 class members, although not responding to discovery to show this. Plaintiff refiled in the Circuit Court of Cook County, where jurisdiction is uncontestable. Defendant refused to accept service but removed the action to this Court on the eve of this Motion's hearing in State Court. Plaintiff asks this Court to temporarily prevent Defendant from accepting releases from putative class members until Plaintiff's preliminary injunction motion and motion for class certification are decided.

Navistar, after breaching their stock options contracts by rendering employee stock options unexercisable for over two years, was sued by employees whose options lapsed during Navistar's self-caused blackout period.[1] Different from other companies who have either: a) extended current and former employees' rights to exercise for the duration of the blackout period; or b) offered settlements at market prices when financial information is brought current, Navistar did nothing for the entire blackout period, until

---

[1] At least two other cases are pending in this district over Navistar's misstated financials *Norfolk County Retirement System et al v. Ustian et al*, 07-7014 (N.D. Ill.) (assigned to Judge Gettleman is a PSLRA securities class action), and *Garza v. Belton et al*, 08-1387 (N.D. Ill.) is a derivative action, assigned to Judge Gottschall based on the same set of facts. It may well prove most efficient to have all three cases sets be transferred or coordinated for handling by one Judge.

sued and then made lowball offers.

After Plaintiff filed an action in the Northern District of Illinois, Navistar's lawyers contacted undersigned counsel, sought and obtained an extension of time to respond to the complaint. Then, Navistar instead used the period to solicit putative class members to waive their claims by a deceptive and coercive communication to coerce class members to release their claims on incomplete and misleading information and at less than fair value and to thwart the litigation. The releases are misleading, coercive and unsupported by valid consideration. Plaintiff asks this Court to temporarily enjoin Navistar's acceptance of and/or invalidate any executed releases, until this court can ascertain the rights of class members. Indeed, the stakes are large and based on information obtained from class members, the shortfall in consideration totals hundreds of thousands of dollars for some class members who have been conditioned by Navistar to view their claims as worthless.

## BACKGROUND

The background of Defendant's scheme to thwart this litigation and United States District Judge Darrah's findings can be found on pp. 2-6 of Plaintiff's Memorandum of Support his Motion for a Preliminary Injunction.

## NATURE OF THE ACTION

Navistar's employees and former employees who received stock options pursuant to the Company's Stock Option Plan were denied the right to exercise their vested options from April 6, 2006 until May 29, 2008 (the "blackout period") because of the Company's malfeasance. Specifically, Navistar needed to restate its financials that were previously materially misstated.

By causing the blackout period and refusing to allow Navistar employee stock option holders to exercise their options – which are contracts[2] -- during this blackout period, Navistar breached the option contracts and its duty of good faith and fair dealing to the option holders, especially with respect to options that Navistar treated as lapsed and worthless during the blackout period.

Moreover, by refusing to accept service, Defendant seeks to avoid addressing these issues honestly and directly.

## LEGAL STANDARD

A TRO is an emergency remedy issued to maintain the status quo until the case is disposed of on the merits. *Bradford v. Wynstone Property Owners' Ass'n*, 823 N.E.2d 1166 (2d Dist. 2005), citing, *Wilson v. Hinsdale Elementary School District 181*, 810 N.E.2d 637 (2004). A party seeking a temporary restraining order must demonstrate as a threshold matter that (1) its case has some likelihood of succeeding on the merits; (2) no adequate remedy at law exists; and (3) it will suffer irreparable harm if preliminary relief is denied. *Abbott Laboratories v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir.1992).

## ARGUMENT

On the eve of this same Motion's hearing in the Circuit Court of Cook County, and ostensibly to avoid that hearing, Defendant removed this case to this Court. Plaintiff asks this Court for a Temporary Restraining Order to prevent Defendant from accepting releases from putative class members until Plaintiff's Motion for a Preliminary Injunction

---

[2] It is well settled that stock options are contracts. *Lamb v. Emhart Corp.*, 47 F.3d 551, 560 (2d Cir. 1995)("The issuance of stock options constitutes a contract between the employer and employee, supported by the consideration of the employee's subsequent continued employment."); *Scully v. U.S. Wats, Inc.*, 238 F.3d 497, 507 (3d Cir. 2001)(stating "an executive stock option is a contract"), *In re Allen*, 226 B.R. 857, 862 (N.D. Ill. 1998)(stating "A stock option is a contract for transfer of shares of stock, subject to the same rules of construction as any other contract")(citations omitted), *Owen v. Merts*, 405 S.W.2d 273, 277 (Ark. 1966), *Klusener v. Commissioner of Internal Revenue*, Nos. 5383-87, 6237-87, 1989 WL 14814 (Feb. 27, 1989 U.S. Tx. Ct.).

releases until this Court can adjudicate the Motion for a Preliminary Injunction and Motion for Class Certification. If this injunction is not granted, putative class members: 1) possess an ascertainable right; 2) do not have an adequate remedy at law because they will have released their claims; 3) will suffer harm irreparable harm; and 4) be denied relief in a matter where they have substantial likelihood of success.

Defendant contacted putative class members in order to persuade the class members to release their claims against the Company in exchange for a cash payment reflecting the difference between their options' exercise price and the Company's closing price on the day their options expired.

Indeed, there are two independent bases that void any releases sent to Defendant by class members: 1) Navistar's misleading and coercive solicitation wrongly coerced class members into signing away their legal rights under economic duress in return for inadequate compensation; and 2) those rights could not be released under the Illinois Wage Payment and Collection Act.

I.      **A TEMPORARY RESTRAINING ORDER IS NECESSARY BECAUSE NAVISTAR HAS ASKED CLASS MEMBERS TO RELEASE THEIR CLAIMS, FOR INADEQUATE CONSIDERATION, THAT WAS INADEQUATELY DESCRIBED; PLACED UNREASONABLY SHORT RESPONSE TIME, AND HEAVY HANDEDLY MISLABELED AS "ONE TIME ONLY" OFFER.**

Plaintiff asks this Court to enjoin Navistar from accepting releases sent to putative class members that deceitfully and coercively asked class members to release any claims against Navistar in consideration for an inadequate offer, that did specify any tax implications or any rights or claims that the putative class members may have.

A.      **Plaintiff and the Class has a Substantial Likelihood of Success Because Navistar Breached its Stock Option Contract Obligations and Violated the Illinois Wage Payment and Collection Act.**

Plaintiff's agreement with Navistar for vested stock options created a legal right to that compensation. Navistar's refusal to honor its stock option obligations to Plaintiff and the Class was a breach of contract and in violation of the Illinois Wage Payment and Collection Act. Plaintiff's discussion of this likelihood of success on the underlying merits is on pp. 11-17 of Plaintiff's Memorandum of Law In Support of his Motion for a Preliminary Injunction.

**B.      Class Members Will Not have an Adequate Remedy at Law for Meritorious Claims.**

This Court will effectively decide whether class members may pursue meritorious claims against their employer or former employer. Preserving the status quo until the case can be decided on the merits is imperative. As of now, class members are deciding whether to release their claims or continue to be members of the class that seeks to pursue those claims for more favorable consideration.

**C.      Harm to Class Members is Substantial and Irreparable because Many Will Have Unknowingly Released Meritorious Claims for Substantial Sums of Money.**

Currently, Navistar is barred by a federal court order from accepting releases until August 1, 2008. Plaintiff maintains that the solicitations for releases sent to putative class were executed under economic duress and are void as a matter of law. Preliminarily enjoining acceptance of the releases will preserve the status quo until the Court can make determination as to whether the releases are valid or void based on economic duress and the Illinois Wage law.

The harm to class members is that they will waive their rights on an uninformed basis at prices (mostly $20-$50 per share) during times when the market information was incorrect, obsolete, and well below the $65-$75 per share range the stock has been

trading at since Navistar's public financial disclosures were brought current.

The harm to Navistar is nonexistent; it simply continues to have employees and former employees with claims against them, as they had prior to sending the releases. Further, any harm to Navistar is of its own making because it ignored these claims for over two years and then engaged in deceitful conduct attempting to obtain a quick release of claims after this litigation commenced.  This Court can strike an even accord between the parties by preliminarily enjoining Navistar from accepting any releases from putative class members, and allowing more time or just invalidating the releases.

### D.    The Potential Harm to Third Parties Supports an Injunction

The nonparties, here, class members, are on the verge of signing away their legal rights for inadequate consideration based on Navistar's deceptive scheme to obtain releases from these putative class members.

## II.   THE RELEASES EXECUTED BY PUTATIVE CLASS MEMBERS ARE INVALID BECAUSE THE COMMUNICATION WAS MISLEADING, COERCIVE, AND UNSUPPORTED BY CONSIDERATION.

Also, the subject of the Preliminary Injunction motion, the releases sent by putative class members, is also likely to succeed because: "[A] release is valid and binding where the minds of the parties have met; where the release is supported by consideration; and where there has been no fraud, misrepresentation, mistake, duress or undue influence." *Delaware Lumber and Millwork, Inc. v. Anecon Const. Co., Inc.*, C.A. No. 96L-06-011, 1993 WL 562010 at *2 (Del. Super. Ct. Dec. 13, 1993).  Releases should not be used as instruments of fraud or oppression. *Carlile v. Snap-on Tools*, 271 Ill. App. 3d 833, 838 (4th Dist. 1995) citing, *Antal v. Taylor*, 146 Ill. App. 3d 863, 866-67, (1986).  Here, the releases were misleading, coercive and unsupported by adequate

consideration.  Navistar's coercive letter to putative class members -- some of whom are currently employees that rely on Navistar for continued employment -- clearly puts the putative class members in a no-win situation.   Rather than providing honest and complete information, Navistar previously sent out letters conditioning class members to view their claims as worthless and now sends out "one-time" offers at lowball prices, without disclosing the adverse tax treatment nor that other companies in the same situation have either agreed to extend the exercise period past the end of the blackout period or priced the options much higher, at least prices that reflect the common stock when public financials became current.

Specifically, the letter coerces putative class members into accepting less consideration than the litigation seeks.  In fact, the letter's content is a thinly veiled "take it or leave it" offer[3], with consecutive sentences stating:

> ". . . The Company does not believe that it has an obligation to compensate individuals for the Expired Options or that the claims set forth in the Complaint are valid, and **we intend to vigorously contest all of the relief Mr. Rawat seeks**."  Ex. A (emphasis added)

Followed by:

> "This **one-time opportunity** will be available until **August 1, 2008**. . ." *Id.* (emphasis added)

Even more coercively, Defendant guarantees an extra incentive for quick action:

> "If we receive the executed Payment and Release **on or before July 3, 2008**, unless you direct otherwise we will mail a check in the amount of your payment . . . on or before July 31, 2008." *Id.* (emphasis added)

This communication was the subject of an Emergency Motion in the federal court

---

[3] The offer was sent to option holders that were both employees and non-employees.  Courts have consistently held that "if the class and the class opponent are in an ongoing business relationship, communications from the class opponent to the class may be coercive." *Ralph Oldsmobile Inc. v. General Motors Corp.*, No. 99civ4567 (AGS), 2001 WL 1035132, at *3 (S.D.N.Y. Sept. 7, 2001)(citing *Jenifer v. Delaware Solid Waste Auth.*, 1999 WL 117762 (D. Del. Feb. 25, 1999).

action.  Even though the federal court ordered a "neutral" corrective notice, class

members, by the size of the offer and tone of the letter have been coerced into releasing

their claims against Navistar.

As United States District Judge Darrah has already correctly noted, the letter

implies that if class members do not release their rights in exchange for a cash payment –

in some cases thousands of dollars -- they will be left with nothing.  Although the letter

and the follow up corrective notice disclose a little more information, class members still

are presented with an offer that undervalues their rights and puts them under a strict

timeline to comply. Transcript 18:6-22, attached as Ex. B.

Navistar's offer to class members is inadequate for three reasons. First, the

consideration for release given to class members is currently due and owed under the

contract, releasing claims for money already owed is not adequate consideration.

Second, the cash payment reflects the spread between his or her options' exercise price

and Navistar's common stock's trading price the day that the option expired.  The offer,

however, fails to disclose that class members may be entitled to a higher cash payment.

Third, if the putative class members exercised and held the options instead of

immediately selling the options, they would receive a two-fold benefit: 1) Navistar's

stock appreciated significantly, making holding the stock more valuable than

immediately selling the stock; and 2) holding the stock creates more favorable tax

treatment than an immediate sale.

> **a.    The offer does not give sufficient notice to claims putative class members are releasing nor does it show the tax implications of the offer**

Also, the offer letter asks class members to release their claims against Navistar

without disclosing material information. The communication makes two misrepresentations and omits two material facts. First, it claims that the cash offer was only a "one time opportunity" and that "Navistar had no obligation to pay that amount." Second, it does not disclose the adverse consequences of a cash offer, or, that companies in similar situations have offered much more generous packages.

Under Delaware law, fraud or misrepresentation is sufficient to invalidate a release. *Greenhouse v. BP Inc.*, C.A. 86-OC-159, 1989 WL 135704, at *2 (Del. Super. Ct. Oct. 26, 1989)(finding that release agreement was void based of fraud), citing, *Hicks v. Soroka*, Del. Super., 188 A.2d 133 (1963).

Although Plaintiff believes that these releases intentionally omitted or misrepresented material information, as a general rule ***even an innocent misrepresentation*** by the releasee or his or her agent of a material fact, intended to be acted on by the releasor, and relied on by him or her, is effective to avoid a release induced thereby. 76 C.J.S. Release § 27, citing, *Bass v. Seaboard Air Line R. Co.*, 205 Ga. 458, 53 S.E.2d 895 (1949).;and *Kennedy v. Texas Emp. Ins. Ass'n*, 121 S.W.2d 434 (Tex. Civ. App. Dallas 1938), *judgment aff'd*, 135 Tex. 486, 143 S.W.2d 583 (Comm'n App. 1940).

Navistar's solicitation misrepresents that the offer is a "one-time opportunity", that Navistar is "not obligated to pay anything" and it omits that the cash payment, rather than allowing putative class members to exercise their options, would result in adverse tax consequences. All three of these misrepresentations are material and would have induced potential class members to sign away their legal rights without full information.

In fact, Navistar admitted in open court that the "one-time opportunity" statement

was a misrepresentation.  Transcript: 17:18-23. (The Court:  "The question is, have your clients absolutely precluded any settlement of this matter at a later time after August 1st?";  Mr. Perlman [Navistar's counsel]: "*Absolutely not*, your Honor.  We've had no discussions of that with our client, no such decision has been made.")(emphasis added)

### b.      A release that is signed under economic duress is invalid

In Delaware, duress can render a contract voidable where there is a (1) a wrongful act which (2) overcomes the free will of the person (3) who has no adequate legal remedy to protect his interests. *Edge of the Woods v. Wilmington Savings Fund Society, FSB*, N.C.A. 97C-09-281-JEB, 2001 WL 946521 (Del. Super.Ct. Aug. 16, 2001)  When economic duress is directed against a person's business interests, and is often referred to as "business compulsion." *Id.*, citing *Hanna Sys. Inc. v. Capano Group, L.P.*, C.A. No. 7408, 1985 WL 21128, at *3 (Del. Ch. Nov. 29, 1985)*.  The test for determining whether the duress produced the asset is a subjective one that focuses on the state of mind of the "victim" of the duress. *Id.*, *Restatement (Second) of Contracts* § 175, comment c (1981). Loss of "free will" does not mean that no choice exists, rather, that the threatened person is compelled to choose between regretable [sic] alternatives. *Id.*, *Williston on Contracts* § 1602, at 651 (3d ed. 1967). The threatened party must be compelled to make a disproportionate exchange of value to protect his business with no adequate alternative legal remedy. *Id.* § 1617.

Indeed, the Restatement, which Delaware law relies on, shows that the letter was a wrongful act, in this case a threat, because it gave class members no reasonable alternative because the payment was a "one time opportunity."  Although the letter and the resulting corrective notice mentioned the litigation against the Company, Navistar

11

cannot overcome the fact that it misrepresented the fact that it was a "one time

opportunity," when it admitted as much at the June 26, 2008 hearing.

Putative class members were coerced into signing releases by the promise that this

was the **only time** that they could be compensated for their **earned wages**.  To make

matters worse, the deadline for signing the releases was only about five weeks.

Class members have been forced to either give up their rights, or receive nothing.

### c.     The offer to putative class members is supported by inadequate consideration.

Delaware law recognizes that a release that is unsupported by consideration is

void.  *Sylvia CHAPMAN v. DUNN-Assoc., Ltd.*, C.A. No. 1988-04-120, 1988 WL

765407, at *1 (Del. Com. Pl. Sept. 22, 1988)(holding "the seller has done no more than

insist upon the rights it contracted for with the purchaser. If an employee of the seller

made such a promise, it was unsupported by any valid consideration. Accordingly, such a

promise is unenforceable."); *See also*, 66 Am. Jur. 2d Release § 11, stating ("Generally

speaking, in order to be effective a release must be supported by consideration. In other

words, the releasor must have received something of value to which he or she had no

previous right.  Stated another way where one party is under a pre-existing duty to do or

pay to another party that duty will not constitute sufficient consideration so as to uphold a

release.")(citations omitted) and *U.S. Fidelity and Guar. Co. v. Klein Corp.*, 190 Ill. App.

3d 250, 257 (1st Dist.,1990) ("A release requires an abandonment of a claim to the person

against whom the claim existed, and must be backed by consideration.")(citation omitted)

No consideration exists here because Navistar **already owed** an amount higher

than the payment made in exchange for the release.

The Illinois Appellate Court, in *Carlile*, also noted that "Professors White and

Summers describe an individual who refuses to perform his contract duties unless he receives a concession as an extortionist. In non-Code cases the consideration doctrine could be used to police against extortion: 'You gave no new consideration for the concession and *you had a preexisting duty to do everything you are to do under the modified arrangement, hence the concession is unenforceable.*'" *Carlile v. Snap-on Tools*, 271 Ill. App. 3d 833, 841 (4th Dist. 1995), citing, J. White & R. Summers, Uniform Commercial Code § 1-5, at 47 (2d ed. 1980)(emphasis added). *See also*, *Salvaggio v. Schafroth*, 133 Ill. App. 2d 811 (1971) (stating "[w]here there was no dispute that defendant owed plaintiffs at least the sum which defendant paid to them . . . release . . . against defendant arising out of plaintiffs' employment by defendant was unsupported by valid consideration and was unenforceable against plaintiffs who endorsed check.")

Even though Navistar was contractually obligated to allow Plaintiff and the Class to exercise their options, the releases sent to putative class members are invalid because they present a "take it or leave it" offer that is only a "one time opportunity." The letter, as it is currently described, forces putative class members to choose between: 1) an inadequate cash payment (for which they will realize ordinary income tax); or 2) nothing.

Indeed, Navistar's offer fails to acknowledge or disclose that fact in its offer, which radically undervalues the owed compensation, which Defendant's lawyers admitted is not in fact "take it or leave it" offer, as it is presented. Transcript 17:18-23.[4]

## CONCLUSION

---

[4] In addition, releases accepted by Navistar are void on the basis that Plaintiffs cannot release claims under the Illinois Wage Payment and Collection Act. See, Memorandum of Law in Support of Preliminary Injunction pp. 23-24 , citing *O'Brien v. Encotech Construction Services, Inc.*, 183 F.Supp.2d 1047, 1052 (N.D. Ill. 2002)(holding releases invalid under Illinois Wage Payment and Collection Act) and *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, No. 00 C 5755, 2004 WL 1403007 *7 (N.D. Ill.)(same).

Accordingly, Plaintiff asks this Court to preliminarily, pending this litigation: 1) enjoin the Defendant from accepting releases sent by putative class members; or 2) hold or invalidate all releases received by Defendant Navistar International Corporation in connection with its June 20, 2008 offer of settlement.

Dated:  July 29, 2008

Respectfully submitted,

  s/Clinton A. Krislov
Clinton A. Krislov

Clinton A. Krislov
Jeffrey M. Salas
KRISLOV & ASSOCIATES, LTD.
20 North Wacker Drive, Suite 1350
Chicago, Illinois  60606
Tel.:  (312) 606-0500
Fax:  (312) 606-0207

Law Offices of Mark Baiocchi
184 Shuman Blvd.
Suite 250
Naperville, IL 60563
Tel: (630) 983-4200
Fax: (630) 983-4223

# EXHIBIT 5

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **RAVI P. RAWAT, on behalf of himself and others similarly situated,** | ) | |
| | ) | |
| | ) | **Case No. 08-cv-4305** |
| Plaintiff, | ) | |
| v. | ) | **Judge Elaine E. Bucklo** |
| | ) | |
| **NAVISTAR INTERNATIONAL CORPORATION,** | ) | **Magistrate Judge Martin C. Ashman** |
| | ) | |
| | ) | |
| Defendant. | ) | |

**NAVISTAR INTERNATIONAL CORPORATION'S OPPOSITION TO PLAINTIFF'S
MOTION FOR A PRELIMINARY INJUNCTION *AND* PLAINTIFF'S
EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER**

Dated: July 30, 2008

Laurence H. Levine
Maaike S. Almeida
LAURENCE H. LEVINE LAW OFFICES
190 South LaSalle Street, Suite 3120
Chicago, Illinois 60603
Phone: (312) 291-7000
Fax: (312) 291-7015

Cary R. Perlman
Mark S. Mester
Robin M. Hulshizer
Robert C. Levels
LATHAM & WATKINS LLP
Sears Tower, Suite 5800
233 South Wacker Drive
Chicago, Illinois 60606
Phone: (312) 876-7700
Fax: (312) 993-9767

## <u>TABLE OF CONTENTS</u>

Page

I. INTRODUCTION ................................................................................................1

II. FACTUAL BACKGROUND ...............................................................................4

    A. Trading Restrictions Imposed While Navistar Became Current With Its
Financial Reporting Obligations ...............................................................4

    B. Navistar's Offer To Provide Cash Payments To Holders Of Expired
Options .......................................................................................................5

    C. Plaintiff's Original Federal Complaint And Navistar's Extension Of Time ..........6

    D. Judge Darrah Orders Supplemental Notice To The Putative Class And
Finalizes August 1, 2008 Effective Date For Acceptance Of Navistar's
Offer ...........................................................................................................7

    E. Plaintiff Files Duplicative State Litigation And Seeks Relitigation Of
Judge Darrah's Order ................................................................................8

    F. The False And Misleading Statements In Plaintiff's Motion For
Preliminary Injunction ..............................................................................9

III. ARGUMENT .....................................................................................................11

    A. Plaintiff's Proposed Class Has An Adequate Remedy At Law And Will
Suffer No Irreparable Harm ....................................................................11

    B. Plaintiff Is Not Likely To Succeed On The Merits.................................13

        1. Judge Darrah's Decision Proves There Is No Likelihood of
Success on the Merits................................................................13

        2. Navistar's June 20 Offer Was Proper ......................................14

        3. Navistar's Offer Does Not Constitute Economic Duress ..........16

        4. Navistar Provided Valid And Adequate Consideration For Its Offer........17

    C. The Underlying Merits Of Plaintiff's Case Do Not Withstand Scrutiny...............17

        1. There Was No Breach Of Contract And/Or There Were No
Damages....................................................................................18

2.    The Illinois Wage Act Does Not Apply To Plaintiff's Stock
Options ......................................................................................................18

D.    Plaintiff Has Failed To Provide Notice To Putative Class Members Whose
Rights Would Be Affected By The Preliminary Injunction...................................20

IV.    CONCLUSION...............................................................................................................21

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

## CASES

*Abdulhafedh v. Secretary of State,*
    161 Ill. App. 3d 413 (1987) ...........................................................................................19

*Affiliated Enterprises, Inc. v. Waller,*
    5 A.2d 257 (Del. Super. Ct. 1939) ................................................................................17

*Bakerman v. Sidney Frank Importing Co., Inc.,*
    No. Civ.A. 1844-N, 2006 WL 3927242, at *15 (Del. Ch. Oct. 10, 2006) ................16

*Bernina of Am., Inc. v. Fashion Fabrics Int'l, Inc.,*
    No. 01 C 585, 2001 WL 128164, at *1 (N.D. Ill. Feb. 9, 2001) ...............................11

*Birbalas v. Cuneo Printing Industries, Inc.,*
    140 F.2d 826 (7th Cir. 1944) .......................................................................................14

*Blue v. Chubb Group,*
    No. 03 C 6692, 2005 WL 1667794, at *17 (N.D. Ill. July 13, 2005).........................20

*Carlile v. Snap-on Tools,*
    648 N.E.2d 317 (Ill. App. Ct. 1995) ............................................................................17

*Christensen v. Kiewit-Murdock Inv. Corp.,*
    815 F.2d 206 (2d Cir. 1987) .......................................................................................5, 6

*Coca-Cola Bottling Co. of Shreveport, Inc. v. Coca-Cola Co.,*
    769 F. Supp. 671, 739 (D. Del. 1991) .........................................................................16

*Edge of the Woods v. Wilmington Savings Fund Society, FSB,*
    No. CIV.A.97C-09-281-JEB, 2001 WL 946521, at *4 (Del. Super. Ct. Aug. 16, 2001)...........16

*Eshelman v. OrthoClear Holdings, Inc.,*
    No. C 07-01429 JSW, 2007 WL 2572349, at *2-3 (N.D. Cal. Sept. 4, 2007) ..............2, 5, 6, 14

*Fox Valley Harvestore, Inc. v. A.O. Smith Harvestore Prods. Inc.,*
    545 F.2d 1096 (7th Cir. 1976) .....................................................................................11

*Fuentes v. Shevin,*
    407 U.S. 67 (1972) .......................................................................................................20

*Gulf Oil Co. v. Bernard,*
    452 U.S. 89 (1981) ...............................................................................................5, 9, 14

*IBM v. Bajorek*,
    191 F.3d 1033 (9th Cir. 1999) .................................................................................................19

*In re Cendant Corp. Securities Litigation*,
    No. 04-3352, 2006 WL 1342808, at * 3 (3rd Cir. 2006) ..........................................................18

*In re Comdisco, Inc.*,
    No. 02 C 7030, 02 C 7031, 2003 WL 685645, *2 (N.D. Ill. 2003 Feb. 27, 2003) ....................20

*In re Gen. Motors Corp. Engine Interchange Litig.*,
    594 F.2d 1106 (7th Cir. 1979) ...................................................................................................5

*Jankousky v. Jewel Companies, Inc.*,
    182 Ill. App. 3d 763 (1st Dist. 1989) ....................................................................................6, 14

*Jones v. Jeld-Wen, Inc.*,
    No. 07-22328-CIV-DIMITROULEAS/ ROSENBAUM, 2008 WL 2058517, at *9
    (S.D. Fla. May 9, 2008) ......................................................................................................10, 15

*McDole v. Kingsley*,
    163 Ill. 433 (1896) ...................................................................................................................14

*Metropolitan Distributors Inc. v. Illinois Dept. of Labor*,
    114 Ill. App. 3d 1090 (1983) ...................................................................................................19

*Palmer v. Great Dane Trailers*,
    No. 05 C 1410, 2005 WL 1528255, at *3 n.2 (N.D. Ill. June 28, 2005) ...................................19

*Rakos v. Skytel Corp.*,
    954 F. Supp. 1234 (N.D. Ill. 1996) ..........................................................................................20

*Roland Machinery v. Dresser Indus.*,
    749 F.2d 380 (7th Cir. 1984) ........................................................................................11, 12, 13

*Schwalm Electronics, Inc. v. Electrical Products Corp.*,
    14 Ill. App. 3d 348 (1973) .......................................................................................................19

*Shields v. Associated Volume Buyers*,
    No. 93 C 7620, 1994 U.S. Dist. LEXIS 3944, *3-4 (N.D. Ill. Mar. 30, 1994) .........................19

*Singh v. Batta Environmental Associates, Inc.*,
    No. Civ.A. 19627, 2003 WL 21309115, at *5 (Del. Ch. May 21, 2003) ...................................17

*The Little Tykes Co. v. Kid Station Toys, Ltd.*,
    No. 08 C 1935, 2008 WL 1805379, at *3 (N.D. Ill. Apr. 18, 2008) .........................................11

*Ty, Inc. v. Jones Group, Inc.*,
    237 F.3d 891 (7th Cir. 2001) ...................................................................................................11

*Underbrink v. Warrior Energy Servs. Corp.*,
  No. 2982-VCP, 2008 Del. Ch. LEXIS 65, at *37 (Del. Ch. May 30, 2008) ............................17

*Weight Watchers of Philadelphia, Inc. v. Weight Watchers Int'l, Inc.*,
  455 F.2d 770 (2d Cir. 1972) .........................................................................................................6

*Williams v. McKeithen*,
  939 F.2d 1100 (5th Cir. 1991) ....................................................................................................20

## OTHER AUTHORITIES

Advisory Committee Note to 2007 Amendment of Fed. R. Civ. P. 65 .........................................20

Fed. R. Civ. P. 65(d)(2)................................................................................................................20

Defendant Navistar International Corporation ("Navistar" or the "Company") submits the following memorandum of law in opposition to Plaintiff's Motion for a Preliminary Injunction to Prevent Defendant from Accepting Releases or to Invalidate Releases Executed by Putative Class Members ("Motion for Preliminary Injunction"), as well as Plaintiff's Emergency Motion for a Temporary Restraining Order ("Emergency Motion II"). The asserted bases for the two motions are essentially the same.

## I. <u>INTRODUCTION</u>

Plaintiff – or more precisely, Plaintiff's counsel – is fighting a lonely and wasteful battle against Navistar, the Honorable Judge John W. Darrah, and the putative class whose interests Plaintiff's counsel eventually hopes to represent. To that end, Plaintiff has filed two lawsuits, two "emergency" motions, and a motion for a preliminary injunction, all for the purpose of enjoining current and former members of Navistar's senior management from accepting cash offers aggregating millions of dollars in connection with certain expired stock options. In order for Plaintiff to succeed on his second round of "emergency" motions, he must demonstrate that there really is an emergency not of his own making, that there will be irreparable harm in the absence of an injunction, and that there is a likelihood of success on the merits. Plaintiff meets **none** of these requirements.

<u>First</u>, "success on the merits" is decidedly **<u>un</u>**likely here, in no small part because the merits of the injunction Plaintiff seeks already were adjudicated by Judge Darrah on June 26, 2008. On June 25, 2008, in response to the **exact same** June 20, 2008 letter offer that Plaintiff complains of in the two pending motions, Plaintiff filed an Emergency Motion for Protective Order ("Emergency Motion I") seeking the **exact same** relief – namely an order "barring Defendant from soliciting or obtaining further releases from class members" and "voiding all releases Defendant obtained from class members." *See* Emergency Motion I, Ex. 1 hereto, at 1.

In Emergency Motion I, Plaintiff asserted essentially the same claims presented in the pending

Motion for Preliminary Injunction and Emergency Motion II, including claims that Navistar's

offer was the coercive and misleading result of Navistar's "deceitful strategy."  *See id.* at *passim*.

Judge Darrah conducted a lengthy hearing the very next morning, and Judge Darrah **rejected** the

exact claims for relief presented in the pending motions.  *See* June 30, 2008 Order, Ex. 2 hereto;

June 26, 2008 Hrg. Tr., Ex. 3 hereto, at 33.

In so ruling, the Court recognized the right of Navistar to communicate with its current

and former employees prior to class certification, *see*, *e.g.*, *Eshelman v. OrthoClear Holdings*,

*Inc.*, No. C 07-01429 JSW, 2007 WL 2572349, at *2-3 (N.D. Cal. Sept. 4, 2007), and the Court

specifically held as follows:

> I want to give all the putative class members an opportunity to consider the offer
> made by the defendant in light of an understanding of the nature of the suit that's
> been filed and the parties that are representing the putative class.  Those people
> that want to persist in their acceptance of [Navistar's] offer, after having that
> opportunity, ***can do so*** as long as they communicate that to [Navistar] before
> August 1st.

*See* June 26, 2008 Hrg. Tr., Ex. 3 hereto, at 33 (emphasis supplied).  Given that Judge Darrah

already rejected Plaintiff's request for the exact same relief based on the exact same June 20

offer, the pending motions have **no** likelihood of success.

Second, there is no "emergency," and Plaintiff's conduct proves that.  No later than the

June 26 hearing before Judge Darrah, Plaintiff knew the precise content of the June 20 letter, the

precise language of the June 27, 2008, "corrective" letter that Judge Darrah ordered, and the

precise date when all of the releases returned by the offerees would be effective, *i.e.* August 1.

*See id.*  Emergency Motion II was filed over a **month** later.  If there really were an emergency –

and clearly there is not – Plaintiff's remedy was to ask Judge Darrah to reconsider his order, or to

file an appropriate motion 2-3 days later.  In choosing not to follow this course, Plaintiff waived

the right to cry "emergency."  In fact, the most reasonable assumption is that Plaintiff deliberately sat on his hands to manufacture an emergency in the hope that Navistar would not have an opportunity to respond and that Plaintiff's mischaracterizations would pass unnoticed by a new Judge unfamiliar with the record and the law.

Third, Plaintiff can demonstrate no **irreparable** harm because the only remedy Plaintiff seeks is money.  In the absence of an injunction preventing the putative class members from settling their claims, there are only two possible outcomes.  The first outcome is that the Court eventually will rule the releases are valid and enforceable, in which case denying the pending motions obviously will result in no harm whatsoever.  The second outcome is that the Court eventually will rule that the releases are void in which case these individuals will be free to take their chances in court.  If the money paid to individuals with subsequently voided releases enter proves to be too much or too little, the Court need only award money damages accordingly.  Again, denial of the pending motions will result in no irreparable harm whatsoever.

Because Plaintiff meets none of the three requirements for securing a preliminary injunction or a temporary restraining order, the Court could and should summarily deny both motions.  Those three reasons, however, do not exhaust what is improper about the pending motions.  Mr. Rawat, the only plaintiff actually in front of the Court at this time and nominally the movant, has no use for the relief requested by the Motion for Preliminary Injunction or Emergency Motion II.  He has not signed a release, and presumably he has no intention of doing so before August 1.  Mr. Rawat has every right to choose the risks of litigation over the certainty of a substantial cash offer, but the over 90% of offerees who accepted Navistar's June 20 offer also have the right to make the opposite choice.  The preliminary injunction Plaintiff seeks, however, will enjoin the 90% who want to settle every bit as much as Navistar.

As such, and as noted above, Plaintiff's counsel is waging war not just against Navistar but against the class he hopes to represent. Those individuals want their money, and they want no part of the uncertainty and contingency fees that Plaintiff's counsel offers instead. Plaintiff's counsel seemingly cannot take "no" for an answer – not from Judge Darrah, and not from the putative class. Navistar respectfully asks this Court to "just say no" a third time, and in terms that will relieve Navistar and the Court from the undue burden of further vexatious litigation and frivolous motions.

## II.    FACTUAL BACKGROUND

Very few "facts" are relevant to the pending motions. The underlying dispute over the value Plaintiff places on expired stock options is not before the Court, only the question of whether Judge Darrah's previous order regarding the June 20 offer letter should be reversed. Nevertheless, Navistar summarizes the key facts below in order to provide the Court with an **accurate** picture of what has transpired to date.

### A.    Trading Restrictions Imposed While Navistar Became Current With Its Financial Reporting Obligations

Plaintiff's state court Complaint, now removed, alleges that on April 6, 2006, Navistar informed holders of stock options that the Company was unable to file its Form 10-K Annual Report on time. As a result, the Company was prevented from filing the SEC registration statements necessary to register shares of the Company's common stock that are acquired when employees exercise stock options. *See* Compl. at ¶¶ 8-13. To the extent appropriate, stock options were typically granted to a select group of executives and senior members of management. *See* Stark Supp. Decl., Ex. A to Navistar's Mem. in Supp. of Its Mot. to Dismiss, Ex. 5 hereto, at ¶ 7.

4

### B.     Navistar's Offer To Provide Cash Payments To Holders Of Expired Options

As Plaintiff also has acknowledged, on January 15, 2008 – months before any lawsuit was filed – Navistar sent a letter to the affected former option holders informing them that Navistar would address with the Board of Directors the issue of stock options that expired while trading restrictions were in effect.  *See* Compl. at ¶ 33-35; Jan. 15, 2008 Letter, Ex. B to Compl. Significantly, the January 2008 letter also specifically told the recipients that "[w]e cannot predict what action, if any, our directors will take, ***but we will communicate with you, no matter what the outcome, once that process is completed***."  *Id.* (emphasis supplied).  Although Plaintiff himself received this letter, instead of waiting for the promised communication, he filed his first complaint in federal court (the "Original, Federal Complaint") and served it on Navistar the very day that Navistar filed its 2007 Form 10-K.  *See* Original, Federal Complaint, Ex. 4 hereto.

As promised in its January letter, Navistar did address the issue of expired options with its Board of Directors.  *See* June 20, 2008 Letter and Payment & Release, Ex. 6 hereto.  The Board approved a cash payment offer to employees and former employees, and the Company communicated that offer and a release of claims relating to vested stock options on June 20. From the very beginning, the June 20 letter made clear that recipients had until August 1, 2008, to choose whether or not to accept the offer.  *See id.*

Importantly, as Judge Darrah correctly found after reviewing the decisional law identified for him by Navistar at the June 26 hearing, a defendant has a right to communicate with putative class members prior to class certification for the purpose of settling claims.  *See Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101-02 (1981) ; *Eshelman*, 2007 WL 2572349, at *2-3; *In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1138 (7th Cir. 1979) ("[Defendant Company's] offer to settle, if accepted by individual class members, would not amount to a settlement of the class action itself."); *Christensen v. Kiewit-Murdock Inv. Corp.* , 815 F.2d 206, 213 (2d Cir.

1987) ("[A]t least prior to class certification, defendants do not violate Rule 23(e) by negotiating settlements with potential members of a class.").  This is true under Illinois law, as well as federal law.  *Compare Eshelman*, 2007 WL 2572349, at *2-3, *with Jankousky v. Jewel Cos., Inc.*, 182 Ill. App. 3d 763, 767, 538 N.E.2d 689, 691 (Ill. App. Ct. 1989) ("There is no prohibition against communications, negotiations, or settlements with persons who fall within the proposed class prior to class certification.").

> In an often cited opinion on this topic, Judge Friendly explained as follows:

> [E]ven if defendant should succeed in settling with so many [members of the putative class] that the court will be forced to deny class action status, plaintiff's complaint will remain untouched.  As we have, in essence, already noted, plaintiff has no legally protected right to sue on behalf of other[s] who prefer to settle; F.R.Civ.P. 23(e), requiring court approval of the dismissal or compromise of a class action, does not bar non-approved settlements with individual members which have no effect upon the rights of others.

*Christensen*, 815 F.2d at 213, *citing Weight Watchers of Philadelphia, Inc. v. Weight Watchers Int'l, Inc.*, 455 F.2d 770, 775 (2d Cir. 1972).

### C.    Plaintiff's Original Federal Complaint And Navistar's Extension Of Time

Plaintiff's Original, Federal Complaint defined the proposed class as "[a]ll individuals whose vested options expired during Navistar's 'blackout period.'"  Original, Federal Complaint, Ex. 4 hereto, at ¶ 36.  Presumably foregoing any pre-filing investigation, Plaintiff alleged that "thousands" were affected.  *Id.* at ¶ 37.  As it turns out, however, there are only 56 individuals whose stock options expired during the "blackout period."  *See* Stark Supp. Decl., Ex. A to Navistar's Mem. in Supp. of Its Mot. to Dismiss, Ex. 5 hereto, at ¶ 9.  Consequently, though content to be in federal court if possible, Navistar was forced to recognize that no subject matter jurisdiction existed in federal court, because the Class Action Fairness Act requires 100 persons.  Navistar began to draft a motion to dismiss and requested an extension of time from Plaintiff's counsel to do so.  *See generally* Navistar's Mot. to Dismiss and Mem. in Supp., Ex. 5 hereto.

6

Although Plaintiff's counsel claims the requested extension of time was for the "sinister" purpose of facilitating the June 20 offer, *see* Mot. for Prelim. Inj. at 3, it is doubtful that Plaintiff really believes the request was "sinister" because Plaintiff's premise is so ridiculous. As noted above, long **before** the Original, Federal Complaint was filed, Navistar promised the affected employees and former employees that it would communicate the Board's decision with respect to expired stock options, regardless of the outcome. *See* Jan. 15, 2008 Letter, Ex. B to Compl. Navistar's ability to make good on that promise was completely unaffected by the date the answer to the Original, Federal Complaint was due. The June 20 letter could have and would have been sent on June 20 whether Plaintiff's counsel agreed to a two-week extension, a two-year extension, or no extension at all. The only thing "sinister" here is making up allegations when Plaintiff's counsel knows better.

### D. Judge Darrah Orders Supplemental Notice To The Putative Class And Finalizes August 1, 2008 Effective Date For Acceptance Of Navistar's Offer

On June 25, 2008, Plaintiff filed Emergency Motion I seeking the exact relief it seeks in the two pending motions, including an order barring Navistar from obtaining releases from putative class members and invaliding releases accepted. *See* Emergency Motion I, Ex. 1 hereto, at 12. Relying on precedent cited by Navistar, Judge Darrah confirmed that it was proper for Navistar to communicate with proposed class members and refused to bar or invalidate the releases. *See* June 26, 2008 Hrg. Tr., Ex. 3 hereto, at 13, 21; June 30, 2008 Order, Ex. 2 hereto. Rather, Judge Darrah directed the parties to jointly draft a supplementary notice to those individuals that had received the June 20 letter (1) advising them of Ms. Krislov's contact information; (2) stating they may contact Mr. Krislov or a lawyer of their choosing in evaluating Navistar's offer; (3) providing that acceptances would be become effective August 1, 2008 (the same due date Navistar selected in the June 20 letter); and (4) stating that acceptances could be

withdrawn before that date.  *See* June 27, 2008 Letter, Ex. A to July 30, 2008 Order, Ex. 2

hereto.

Although Navistar respectfully disagrees that any corrective notice was required,

Navistar, of course, complied with the Order and sent the letter to all of the persons who received

the June 20 offer.  *See id.*  The significance of this second letter, in the context of the pending

motions, is that long before August 1, 2008, all of the persons who chose to accept Navistar's

offer not only knew the terms of the offer, they also had been sent a letter informing them that

the offer "MAY AFFECT YOUR LEGAL RIGHTS," that a class action suit was pending, the

nature of that class action suit, the lawyer representing the named plaintiff, the phone number

and email address of Plaintiff's counsel, and that the recipients were free "to contact legal

counsel of your choice."  *Id.*

**E.     Plaintiff Files Duplicative State Litigation And Seeks Relitigation Of Judge
        Darrah's Order**

On June 26, 2008, Navistar filed its motion to dismiss Plaintiff's Original, Federal

Complaint for lack of subject matter jurisdiction, which is still pending.  *See* Mot. to Dismiss,

Ex. 5 hereto.  Plaintiff did not – and still has not – voluntarily dismissed that case.  Instead,

Plaintiff filed a new Complaint in Illinois state court on July 18, 2008.  *See* Compl. at *passim*.  In

the state Complaint, Plaintiff defines his proposed class as "all Navistar employees and former

employees whose stock options either expired or who were prevented from exercising their

options during the [*sic*.] Navistar's 'blackout' period," a broader class than the one proposed in

Plaintiff's Original, Federal Complaint.  *See* Compl. at ¶ 46.  Because Navistar's stock was

trading at its highest level in years in the days after the "blackout" was lifted, the expanded

proposed class consists of people who had the ability to exercise their options at the highest

possible price.  *See* http://finance.yahoo.com/q/hp?s=NAV (reflecting Navistar's historical stock

8

prices, showing Navistar's stock closed at $78.99 on June 5, 2008, higher than any price achieved during the "blackout.").

On July 24, 2008, almost a month after he knew that the releases would be effective on August 1, Plaintiff filed his Motion for Preliminary Injunction asking the state court to do what Judge Darrah would not and enjoin Navistar and the putative class from settling. *See* Ex. 5 to Navistar's Not. of Removal. On July 29, 2008, Plaintiff filed Emergency Motion II, essentially duplicating the Motion for Preliminary Injunction. *See id.* On July 30, 2008, Plaintiff re-filed these motions in this Court.

### F.    The False And Misleading Statements In Plaintiff's Motion For Preliminary Injunction

Although Plaintiff's counsel may be forgiven for colorful adjectives that are wildly inconsistent with the events they purport to describe, there are a number of factual misstatements in the Motion for Preliminary Injunction that need to be exposed. <u>First</u>, contrary to Plaintiff's characterization, it is not true that "United States Judge Darrah *found* that the [June 20] letter was coercive and misleading." Mot. for Prelim. Inj. at 5-6. Judge Darrah actually held that "it's clear that precertification correspondence … is appropriate." *See* June 26, 2008 Hrg. Tr., Ex. 3 hereto, at 13. Judge Darrah did not enter a *Gulf Oil* protective order invalidating the offers, but instead ordered a corrective letter be sent. *See* June 26, 2008 Hrg. Tr., Ex. 3 hereto, at 29-31. Indeed, Judge Darrah held that "people that want to persist in their acceptance of [Navistar's] offer … ***can do so*** as long as they communicate that to [Navistar] before August 1st." *See* June 26, 2008 Hrg. Tr., Ex. 3 hereto, at 33 (emphasis supplied). It is difficult to believe – indeed, Plaintiff does not believe – that Judge Darrah would green light acceptances of a "coercive and misleading" offer.

Second, it is not true that the putative class had "an extremely limited amount of time to return releases to the Company." *See* Mot. for Prelim. Inj. at 5. Putting aside that this very argument has already been rejected by Judge Darrah, it begs credulity to suggest that **six weeks** is an "extremely limited amount of time." *See id.*; June 26, 2008 Hrg. Tr., Ex. 3 hereto, at 18; *c.f. Jones v. Jeld-Wen, Inc.,* No. 07-22328-CIV-DIMITROULEAS/ ROSENBAUM, 2008 WL 2058517, at *9 (S.D. Fla. May 9, 2008) (case **cited by Plaintiff** in Emergency Motion I (at 6 n.1), wherein the court agreed that **10 days** was sufficient for putative class members to respond to the settlement offer). This is particularly so when the recipients of the offer knew no later than January 2008 that a communication would be coming regarding their expired stock options. *See* Jan. 15, 2008 Letter, Ex. B to Compl.

Third, it is transparently untrue that that Navistar opposed Plaintiff's Emergency Motion I "solely based on the argument that the federal court lacked subject matter jurisdiction." *See* Mot. for Prelim. Inj. at 5. As the transcript readily reveals, Navistar opposed Plaintiff's Emergency Motion I on its merits, handed up a draft opposition memo, and cited a number of cases in opposition. *See* June 26, 2008 Hrg. Tr., Ex. 3 hereto, at 3-4. Indeed, Judge Darrah based his ruling on the cases **Navistar** cited, finding Navistar's authority "remarkably close to the facts of this case and extremely instructive." *See id.* at 11-12.

Finally, Plaintiff deliberately and repeatedly misrepresents the Court's inquiry and the response of Navistar's counsel concerning the "one time offer." *See* Mot. for Prelim. Inj. at 20-21; Emergency Motion II at 10-11. Plaintiff egregiously distorts the record by arguing that Navistar purportedly admitted in open court that the "one-time opportunity" was a "misrepresentation." *See id.* In reality, Judge Darrah did not ask Navistar's counsel whether the June 20 offer was a one-time offer or not. Judge Darrah asked, "Could this [June 20] offer

10

preclude settlement of *this case* later on?" June 26, 2008 Hrg. Tr., Ex. 3 hereto, at 17.

Navistar's counsel truthfully responded that the releases did not preclude settlement of the class

action case later on, and that the topic had not been discussed with his client. *See id.* That is not

an "admission" that the June 20 offer contained a "misrepresentation." That is an example of

counsel providing a straight answer to a direct question from the Court.

## III. ARGUMENT

Granting a preliminary injunction is an "extremely far reaching power not to be indulged

in except in a case clearly warranting it." *See Fox Valley Harvestore, Inc. v. A.O. Smith*

*Harvestore Prods. Inc.*, 545 F.2d 1096, 1097 (7th Cir. 1976). A party seeking to obtain a

preliminary injunction must demonstrate: (1) a likelihood of success on the merits; (2) no

adequate remedy at law exists; and (3) that irreparable harm will result if the injunction is not

granted.[1] *See Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001). Finally, the court

must consider the interests of non-parties in denying or granting the injunction. *See id.*

### A. Plaintiff's Proposed Class Has An Adequate Remedy At Law And Will Suffer No Irreparable Harm

"In every case in which the plaintiff wants a preliminary injunction he must show that he

has no adequate remedy at law, and … that he will suffer irreparable harm if the preliminary

injunction is not granted." *Roland Machinery v. Dresser Indus.*, 749 F.2d 380, 386 (7th Cir.

1984). "Where the only remedy sought at trial is damages, the two requirements – irreparable

harm, and no adequate remedy at law – merge. The question is then whether the plaintiff will be

made whole if he prevails on the merits and is awarded damages." *Id.*

---

[1] The standards for a temporary restraining order are the same as those for a preliminary injunction. *See, e.g.*, *The Little Tykes Co. v. Kid Station Toys, Ltd.*, No. 08 C 1935, 2008 WL 1805379, at *3 (N.D. Ill. Apr. 18, 2008); *Bernina of Am., Inc. v. Fashion Fabrics Int'l, Inc.*, No. 01 C 585, 2001 WL 128164, at *1 (N.D. Ill. Feb. 9, 2001).

As Plaintiff is seeking money damages in his lawsuit against Navistar, an irreparable harm and inadequate legal remedy would only exist if the Plaintiff could not be "made whole if he prevails on the merits" absent the preliminary injunction. *See Roland Machinery*, 749 F.2d at 386. However, Plaintiff has not even attempted to make any showing why there would be "irreparable" injury. [2] Instead, Plaintiff argues the harm to the class members is that "they will waive their rights on an uninformed basis" but Plaintiff fails to explain, even if true, why this purported harm is **irreparable**. *See* Mot. for Prelim. Inj. at 10-11; Emergency Motion II at 6-7. If Plaintiff believes that he can convince a court to "invalidate" the releases of people who prefer to settle, then the Court could grant that same remedy a month from now or a year from now. If Plaintiff is correct that the releases are invalid and "prevails on the merits," he can obtain whatever money is needed to make the putative class" whole" at that time. There is no need for such an extraordinary remedy such as a preliminary injunction. *See Roland Machinery*, 749 F.2d at 386.

Although the Court causes no harm to the putative class in refusing to enter the preliminary injunction, the putative class will suffer great harm if a preliminary injunction is entered. If Plaintiff obtains an injunction, Plaintiff's counsel will be acting against the manifested intent of the very parties he presumes to represent, unreasonably preventing the putative class members who desire to settle this matter from receiving literally millions of dollars. *See* Stark Decl., Ex. 2 to Notice of Removal, at ¶ 10. Moreover, granting the preliminary injunction would require countermanding the express orders of Judge Darrah. *See*

---

[2]     Damages awards are only insufficient to make a plaintiff whole in four limited circumstances: (1) where the award comes too late to save the plaintiff's business; (2) where the plaintiff would not be able to finance his lawsuit without business revenues threatened by defendant's acts; (3) where defendant may become insolvent before judgment; and (4) where the

June 26, 2008 Hrg. Tr., Ex. 3 hereto, at 33.  Although not a "harm" in the traditional sense, an end run around the prior order would be a disservice to the Judge who accommodated Plaintiff's first "emergency."

### B.    Plaintiff Is Not Likely To Succeed On The Merits

Plaintiff claims that he is likely to succeed on the underlying merits related to the value of the expired stock options.  *See* Mot. for Prelim. Inj. at 11-24; *but see* June 26, 2008 Hrg. Tr., Ex. 3 hereto, at 33.  These arguments are not only wrong (*see infra*), however, they entirely miss the point.  Plaintiff is not seeking a Preliminary Injunction on the merits of his claims.  He is seeking a preliminary injunction on the issue of whether sophisticated senior members of management, with six weeks to decide **and** with notice of Plaintiff's lawsuit **and** after being provided with Mr. Krislov's phone number, should be barred from executing a release in exchange for large sums of money.  That issue already has been decided.

### 1.    Judge Darrah's Decision Proves There Is No Likelihood of Success on the Merits

This Court does not need to pause over Plaintiff's claim that the releases should be invalidated.  Judge Darrah already has decided that question, ruling that, following corrective notice, the releases **would** be effective on August 1.  *See* June 26, 2008 Hrg. Tr., Ex. 3 hereto, at 33; June 30, 2008 Order, Ex. 2 hereto.  Specifically, Judge Darrah ruled as follows:

> I want to give all the putative class members an opportunity to consider the offer made by the defendant in light of an understanding of the nature of the suit that's been filed and the parties that are representing the putative class.  Those people that want to persist in their acceptance of [Navistar's] offer, after having that opportunity, ***can do so*** as long as they communicate that to you before August 1st.

*See* June 26, 2008 Hrg. Tr., Ex. 3 hereto, at 33 (emphasis supplied).

---

nature of the lawsuit makes damages difficult to calculate.  *See Roland Machinery Co.*, 749 F.2d at 386.  None of these exceptions apply here.

Judge Darrah had the authority under *Gulf Oil* to prohibit Navistar from proposing

settlement with proposed class members if he found Navistar's offer was coercive and

misleading.  *See Gulf Oil*, 452 U.S. at 101-02; *Eshelman*, 2007 WL 2572349, at *2-3.  After

reviewing Plaintiff's brief on that issue and affording him a hearing, Judge Darrah determined

that it was proper for Navistar to make settlement offers to the proposed class.  *See* June 26, 2008

Hrg. Tr., Ex. 3 hereto, at 33.  Indeed, the court found that individuals were free to settle.  *See id.*

### 2. Navistar's June 20 Offer Was Proper

In Illinois, public policy favors settlements, including settlements between putative class

members and defendants.  *Jankousky*, 182 Ill. App. 3d at 767-68, 538 N.E.2d 689, 691-92 (Ill.

App. Ct. 1989) (citing *Birbalas v. Cuneo Printing Indus., Inc.*, 140 F.2d 826, 828 (7th Cir.

1944)).  Settlements have long been recognized and enforced by the Illinois courts.  *Jankousky*,

182 Ill. App. 3d at 768, 538 N.E.2d at 692 (citing *McDole v. Kingsley*, 163 Ill. 433, 436-37, 45

N.E. 281, 282-83 (1896)).  Accordingly, putative class members have the right to settle their

disputes with Navistar without unreasonable interference from Plaintiff.  *See id.*; *Eshelman*, 2007

WL 2572349, at *3.

Plaintiff alleges that Navistar's offer was a misrepresentation because it stated that the

June 20, 2008 offer was a "one time opportunity" and that "Navistar has no obligation to pay that

amount."  *See* Mot. for Prelim. Inj. at 19-20; Emergency Mot. II at 10.  Judge Darrah already

determined that these statements were not misleading, since he did not order that they be

corrected in the supplementary notice to the class.  *See* June 27, 2008 Letter, Ex. A to July 30,

2008 Order, Ex. 2 hereto.  Plaintiff's main "proof" to the contrary consists of his deliberate

misrepresentation of the Court's question to Navistar's counsel concerning the "one time offer."

*See* Mot. for Prelim. Inj. at 20-21; Emergency Mot. II at 10-11.  As discussed above at page 10-

11, nothing in the June 20 offer was misleading or a misrepresentation. Navistar's counsel did not "admit" otherwise. *See* disc. *supra* at 10-11.

Plaintiff also complains that Navistar's offer does not proffer tax advice to the putative class. *See* Mot. for Prelim. Inj. at 19-20; Emergency Mot. II at 10. For starters, this is misleading. The June 20 letter does state explicitly that the payment will be "subject to applicable withholding taxes." *See* June 20, 2008 Offer Letter & Payment & Release, Ex. 6 hereto. (Of course, the same is true of any judgment Plaintiff might secure.) The current and former executives and senior members of management who received the June 20 letter understand income taxes, and if they had any doubt or questions concerning the relative tax impacts of the June 20 offer versus the litigation option they had six weeks to consult with someone – even Mr. Krislov, if they chose. *See* June 30, 2008 Order, Ex. 2 hereto.

Given the foregoing, it is not surprising that Judge Darrah specifically **declined** to include tax "disclosure" information when Plaintiff's counsel explicitly requested information about tax advice be included in the corrective letter:

> MR. KRISLOV: I mean, is it feasible to put in – and I don't want to overreach, but we do think that the offer is inadequate and certainly doesn't spell out the tax ramifications to these people.
>
> THE COURT: I'll ask you not to do that.

June 26, 2008 Hrg. Tr., Ex. 3 hereto, at 29.

Plaintiff also notes that the "deadline for signing the releases was only about five weeks." *See* Mot. for Prelim. Inj. at 22; Emergency Mot. II at 12. As Plaintiff is aware, courts have found as little as 10 days sufficient time for a putative class member to weigh a settlement offer. *See* *Jones*, 2008 WL 2058517, at *11 (providing 10 days for putative class members to accept defendant's offer, in a case cited by Plaintiff in Emergency Motion I before Judge Darrah). Moreover, Judge Darrah ordered that the offers be kept open until August 1st to provide putative

class members "an opportunity to consider the offer made by the defendant."  June 26, 2008 Hrg.

Tr., Ex. 3 hereto, at 33.  Thus, there can be no question that putative class members had ample

time to consider Navistar's offer.  *See id.*

### 3.      Navistar's Offer Does Not Constitute Economic Duress

Plaintiff's allegations that Navistar's "one time" offer constitutes economic duress are a

flagrant distortion of the law.  The very idea that presenting the executives and senior

management who qualified for stock options with six weeks to decide whether or not to accept a

cash offer or take their chances in court constitutes "duress" as a matter of law is laughable.

Navistar's offer was not take it or get nothing.  The offer was to take the money or litigate.  Over

90% of the recipients chose to take the money, but everyone was free to follow Mr. Rawat's

path.

Although Plaintiff properly states the elements of economic duress, he ignores their

meaning as defined in case law.  *See Edge of the Woods v. Wilmington Sav. Fund Soc'y, FSB*,

No. CIV.A.97C-09-281-JEB, 2001 WL 946521, at *4 (Del. Super. Ct. Aug. 16, 2001) (duress

renders a contract voidable where there is (1) a wrongful act which; (2) overcomes the free will

of the person; (3) who has no adequate legal remedy to protect his interests).  Under Delaware

law of economic duress, "the 'wrongful act' is often the use of or threat to inflict immediate

physical harm."  *Bakerman v. Sidney Frank Importing Co., Inc.*, No. Civ.A. 1844-N, 2006 WL

3927242, at *15 (Del. Ch. Oct. 10, 2006).  Plaintiff's own cases recognize that even "hard-

bargaining business tactics" do not constitute economic duress, and Navistar's offer does not

even come close to that.  *See Edge of the Woods*, 2001 WL 946521, at *6 (finding no economic

duress as a matter of law); *see also Coca-Cola Bottling Co. of Shreveport, Inc. v. Coca-Cola Co.*,

769 F. Supp. 671, 739 (D. Del. 1991) (same).  Duress exists only if a wrongful act "overcame the

16

will of the aggrieved party who was without adequate means to protect himself." *Singh v. Batta Envtl. Assocs., Inc.*, No. Civ.A. 19627, 2003 WL 21309115, at *5 (Del. Ch. May 21, 2003).

### 4.     Navistar Provided Valid And Adequate Consideration For Its Offer

Although Plaintiff implies otherwise by arguing the payments Navistar offered are "inadequate", Mot. for Prelim. Inj. at 19; Emergency Mot. II at 9, there is more than adequate consideration for the releases.  First, the releases are supported by sufficient consideration because the plaintiffs are not "owed" anything by Navistar.  The situation here is not one in which Navistar "had a preexisting duty to do everything [it was] to do under the modified arrangement …." *Carlile v. Snap-on Tools*, 271 Ill. App. 3d 833, 841, 648 N.E.2d 317, 323 (Ill. App. Ct. 1995) (citations omitted).  Navistar did not have a preexisting duty to pay the holders of expired options, and to the extent that it had a duty to the putative class members the precise contours of that duty is a disputed and triable issue.  *See* disc. *infra* at 18.  Thus, Navistar's offered amount constituted sufficient consideration.

Second, courts have long held that the adequacy of consideration is not a proper subject for judicial scrutiny.  *Underbrink v. Warrior Energy Servs. Corp.*, No. 2982-VCP, 2008 WL 2262316, at *10 (Del. Ch. May 30, 2008); *see also Affiliated Enters., Inc. v. Waller*, 5 A.2d 257, 260 (Del. 1939) ("[T]he adequacy of a consideration is not a question for judicial determination at all.  That is a thing for the parties to settle.  Upon this point of legal theory the law has never wavered.") (citations omitted).

### C.     The Underlying Merits Of Plaintiff's Case Do Not Withstand Scrutiny

Plaintiff makes several arguments concerning the underlying merits of his claims.  As discussed above, Plaintiff is not seeking a Preliminary Injunction on the merits of his claims.  He is seeking a preliminary injunction on the issue of whether sophisticated executives and senior members of management, with six weeks to decide **and** with notice of Plaintiff's lawsuit **and**

after being provided with Mr. Krislov's phone number, should be barred from executing a release in exchange for large sums of money.  For all the reasons stated above, Plaintiff has plainly failed to meet the standard for obtaining a preliminary injunction.  The underlying merits of Plaintiff's claims, however, are as deficient as Plaintiff's request for preliminary injunction.

### 1.  There Was No Breach Of Contract And/Or There Were No Damages

Plaintiff argues that his case is "simple" and that he is likely to win the underlying case.  As noted above, that would be irrelevant to his request for preliminary injunction even if it were true.  In America, people are free to settle strong claims as well as weak ones if they choose.  In reality, however, Plaintiff cannot show a likelihood that Navistar breached any obligation under an option contract.  *See In re Cendant Corp. Sec. Litig.*, No. 04-3352, 2006 WL 1342808, at * 3 (3d Cir. 2006).

In *Cendant*, the plaintiff acquired stock options while working for Cendant.  *See id.* at *1.  According to the stock option agreement, plaintiff was required to exercise the options within four months of her resignation.  *See id.*  During that time, "Cendant learned of problems with its accounting practices and retracted its financial statements from the SEC.  The company further determined that federal law did not allow it to issue additional stock until it had filed new financials."  *See id.*  Plaintiff sued for breach of contract and breach of good faith and fair dealing.  *Id.*  The court determined that Cendant's refusal to allow plaintiff to exercise her options during the blackout was not a breach of contract.  *See id.* at *2.  The court supported this conclusion by noting that Cendant would be required to "violate federal law in order to comply with the terms of the plan" and permit plaintiff to exercise during the blackout period.  *See id.*

### 2.  The Illinois Wage Act Does Not Apply To Plaintiff's Stock Options

For the reasons stated above, it is irrelevant whether Plaintiff might ultimately prevail on his Wage Act claim, but in point of fact that is not likely.  Plaintiff cannot prove that he has a

"certain and clearly ascertainable" right under the Illinois Wage Payment and Collection Act

("IWPCA") to the stock option at issue, nor is he able to prove that he is likely to succeed on his

claims. *See Abdulhafedh v. Sec'y of State*, 161 Ill. App. 3d 413, 417, 514 N.E.2d 563, 565 (Ill.

App. Ct. 1987) (holding that plaintiff did not raise a fair question as to the likelihood of recovery,

and denying the request for a temporary restraining order); *Schwalm Elecs., Inc. v. Elec. Prods.*

*Corp.*, 14 Ill. App. 3d 348, 354, 302 N.E.2d 394, 399 (Ill. App. Ct. 1973) (upholding lower

court's denial of preliminary relief and stating that "[i]n order that an injunction be granted, it

should be clear that the plaintiff has a lawful right for which he seeks protection; his right must

be certain and clearly ascertained.").

No Illinois court has held that stock options such as Navistar's constitute "compensation"

or "wages" under the IWPCA – in fact, Illinois courts have yet to determine this issue. Plaintiff

cites no Illinois case law to support his contention that stock options are considered either

compensation or wages. *See* Mot. for Prelim. Inj. at 14-17 (citing only two Illinois cases, *Metro.*

*Distribs. Inc. v. Illinois Dep't of Labor*, 114 Ill. App. 3d 1090, 1091, 449 N.E.2d 1000, 1001 (Ill.

App. Ct. 1983) and *Shields v. Associated Volume Buyers*, No. 93 C 7620, 1994 WL 110397, at

*1-2 (N.D. Ill. Mar. 30, 1994), construing whether **severance pay** and a **contract salary**,

respectively, were considered compensation). Although Plaintiff cites case law from the Third

Circuit, interpreting Pennsylvania law, and the Colorado Court of Appeals to support his

argument, Plaintiff neglects to mention the countervailing law from other jurisdictions. *See*, *e.g.*,

*with IBM v. Bajorek*, 191 F.3d 1033, 1039 (9th Cir. 1999) (holding that stock options are not

wages under the state wage act).

Moreover, when evaluating whether the IWPCA applies, the focus is on the employer's

contractual obligations. *Palmer v. Great Dane Trailers*, No. 05 C 1410, 2005 WL 1528255, at

*3 n.2 (N.D. Ill. June 28, 2005). "The plain meaning of the IWPCA indicates that pay is only recoverable under the statute when the employer has breached contractual obligations." *Blue v. Chubb Group*, No. 03 C 6692, 2005 WL 1667794, at *17 (N.D. Ill. July 13, 2005) (*quoting Palmer*, 2005 WL 1528255, at *3). Thus, if there is no breach of contract, no recovery is available under the IWPCA. *See Rakos v. Skytel Corp.*, 954 F. Supp. 1234, 1239-40 (N.D. Ill. 1996) (finding that where there was no breach of contract regarding an incentive compensation plan, no recovery was available under the IWPCA); *In re Comdisco, Inc.*, No. 02 C 7030, 02 C 7031, 2003 WL 685645, *2 (N.D. Ill. 2003 Feb. 27, 2003) (finding no violation of the IWPCA where there was no contractual right to recover bonuses). In this case, for the reasons stated above in Part C.1., there was no breach of conduct regarding the exercise of stock options, and thus the IWPCA does not apply. *See id.*

**D.    Plaintiff Has Failed To Provide Notice To Putative Class Members Whose Rights Would Be Affected By The Preliminary Injunction**

In both state and federal courts, a preliminary injunction only may be issued on notice to the adverse party, or the party whose rights will be affected by such an order. The rules governing preliminary injunctions in the federal system were recently amended to clarify that a party must have actual notice of an injunction in order to be bound by it. *See* Fed. R. Civ. P. 65(d)(2); *see also* Advisory Committee Note to 2007 Amendment of Fed. R. Civ. P. 65. The requirements of procedural due process in this regard are "clear: 'Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified.'" *Williams v. McKeithen*, 939 F.2d 1100, 1105 (5th Cir. 1991) (quoting *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972)). This notice "'must be granted at a meaningful time and in a meaningful manner.'" *Id.*

20

Here, the holders of expired stock options, although not parties to the action, have rights that would be affected by the preliminary injunction.  These savvy, sophisticated senior managers and executives, whom Plaintiff's counsel seeks to represent as a class, would be enjoined every bit as much as Navistar by any order invalidating their release and payment agreements with Navistar.  They contracted with Navistar for payment on a certain date, and Plaintiff's preliminary injunction would interfere with their rights to settle claims with Navistar.  As such, under both Illinois and federal law, these senior managers and executives have a right to notice, and to avail themselves of the "fair opportunity" to oppose the preliminary injunction if they wish.  *See id.*

## IV.    CONCLUSION

For the reasons stated above, Navistar respectfully requests that the Court deny Plaintiff's Motion for Preliminary Injunction and Plaintiff's Emergency Motion II.  Navistar further requests whatever other relief the Court deems appropriate.

Dated:  July 30, 2008                              Respectfully submitted,


                                                   /s/Robert C. Levels
                                                   One of the Attorneys for Defendant
                                                   Navistar International Corporation


Laurence H. Levine                    Cary R. Perlman
Maaike S. Almeida                     Mark S. Mester
LAURENCE H. LEVINE LAW OFFICES        Robin M. Hulshizer
190 South LaSalle Street, Suite 3120  Robert C. Levels
Chicago, Illinois 60603               LATHAM & WATKINS LLP
Phone: (312) 291-7000                 Sears Tower, Suite 5800
Fax: (312) 291-7015                   233 South Wacker Drive
                                      Chicago, Illinois 60606
                                      Phone: (312) 876-7700
                                      Fax: (312) 993-9767


CH\1043039.8

# EXHIBIT 6

IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN
DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| RAVI P. RAWAT, on behalf of himself and others similarly situated,<br><br>    Plaintiff,<br>v.<br><br>NAVISTAR INTERNATIONAL CORPORATION,<br><br>    Defendant. | No. 08-3038<br><br>Honorable John W. Darrah |

## PLAINTIFF'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiffs hereby request that defendants produce the documents described below for inspection and copying by Plaintiffs' counsel at the law offices of Krislov & Associates, Ltd., 20 North Wacker Drive, Suite 1350, Chicago, Illinois, 60606, within the time period provided by the Rules.

## I. DEFINITIONS

1. The term "blackout period" refers to the indefinite period of time, beginning April 6, 2006, where exercising Navistar Stock Options was restricted and/or prohibited.

2. The term "communications" refers to any exchange of information by any means of transmission, including, but not limited to, face-to-face conversations, mail, electronic mail, telegram, overnight delivery, telephone, facsimile or telex.

3. The term "documents" is defined to be synonymous with the use of this term in the Fed. R. Civ. P. 34(a) and means documents whether fixed in tangible medium or electronically stored on disk or tape. The word "documents" shall include, by way of example and not by way of limitation, all of the following: papers, correspondence, trade

letters, envelopes, memoranda, telegrams, cables, notes, messages, reports, studies, press releases, comparisons, books, accounts, checks, audio and video recordings, pleadings, testimony, articles, bulletins, pamphlets, brochures, magazines, questionnaires, surveys, charts, newspapers, calendars, desk calendars, pocket calendars, lists, logs, publications, notices, diagrams, instructions, diaries, minutes of meetings, corporate minutes, orders, resolutions, agendas, memorials or notes or oral communications, whether by telephone or face-to-face, contracts, agreements, drafts of or proposed contracts or agreements, memoranda of understanding, letters of intent, transcriptions of audio or video recordings, computer tapes, computer diskettes or disks, or any other tangible thing on which any handwriting, typing, printing, photostatic, electronic or other form of communication or information is recorded or reproduced, together with all notations on any of the foregoing, all originals, file copies or other unique copies of the foregoing and all versions or drafts thereof, whether used or not.

      4.    The term "Navistar" or "Defendant" means Navistar International Corporation, its predecessors, successors, parents, subsidiaries, divisions, affiliates, or anyone acting or purporting to act on their behalf, including any of their respective directors, officers, managing agents, agents, employees, attorneys, accountants, or other representatives.

      5.    "Data" is equivalent to the term "electronic data" as defined herein.

      6.    "Electronic Data" means the original (or identical duplicate when the original is not available) and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings of every kind and description whether inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means. Electronic data includes, by way of example only, computer programs (whether private, commercial or work-in-progress), programming notes or instructions, activity listings of electronic mail receipts or transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs and outlines,

electronic mail, instant messaging, operating systems, source code of all types, peripheral drivers, batch tiles, ASCII files, and any and all miscellaneous files or file fragments, regardless of the media on which they reside and regardless of whether such electronic data consists in an active file, deleted file, or file fragment. Electronic data includes any and all items stored on computer memories, hard disks, floppy disks, CD-ROMs, DVDs, removable media such as Zip disks, Snap servers, Jaz cartridges, and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, on or in any other vehicle for digital data storage or transmittal. The term electronic data also includes the file, folder tabs or containers and labels appended to, or associated with, any physical storage device associated with each original or copy thereof.

7.    "Electronic Media" means any magnetic or other storage media device used to record electronic data. Electronic media devices may include, but are not limited to, computer memories, hard disks, floppy disks, Snap servers, DVDs, CD-ROM, and removable media and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, or on or in any other vehicle for digital data storage or transmittal.

8.    "Deleted file" means any electronic data file that has been deleted or deleted from the electronic media on which it resided, including but not limited to, any file whose File Allocation Table (FAT) entry has been modified to indicate the file as being deleted and/or which is riot readily visible to the operating system and/or the software with which it was produced.

9.    "File Fragment" means any electronic data file that exists as a subset of an original active file. A file fragment may be active or deleted. The cause of fragmentation can include, but is not limited to, the execution of ordinary file management routines such as the creation of new files over parts of previously deleted files, the creation of files on disks which do not have enough contiguous blocks to write the file from beginning to end, where the file has been split up between several sections of the disk (each piece a

fragment). Other causes include manual intervention, electronic surges, or physical defects on electronic media.

10. "Native format" means the default format of a data file created by its associated software program. For example. Microsoft Excel produces its output as '.xls' files by default, which is the native format of Excel. Microsoft word produces native files with a '.doc' extension, which is the native format of Word.

11. "Network" means any hardware or software combination that connects two or more computers together and which allows the computers to share or transfer data between them. For the purposes of this definition, the connection between or among the microcomputers need not be either physical or direct (i.e., wireless networks, and sharing or transferring data via indirect routes utilizing modems and phone company facilities). In addition, there need not be a central file or data server or a central network operating system in place (i.e., peer-to-peer networks and networks utilizing a mainframe host to facilitate data transfer).

12. "Plaintiff" refers to the named plaintiff in Ravi P. Rawat.

13. "Identify" when used in reference to a natural person means the following should be stated: (a) Full name; (b) Present or last known home and business addresses; (c) Telephone number at home and business; and (d) Employer and position or job title.

14. "Identify" when used in reference to any entity, means the following should be stated: (a) Full name; (b) Place and date of incorporation or creation; (c) Main office address; and (d) Telephone numbers for any addresses identified.

15. "Identify" when used in reference to any document means to give, to the extent known, the: (a) type of document; (b) general subject matter; (c) date of the document; (d) author(s), addressee(s) and recipient(s); and (e) Bates stamp number, if any.

16. "Identify" when used in reference to any electronic data, means to state the software or operating system under which the data was created, title and author, the type of data (example: word processing document, spreadsheet, database, application

program, etc.), and all other means of identifying that document or information with sufficient particularity to meet the requirements of the Federal Rules of Civil Procedure, and its present or last known location or custodian. If any such electronic data was, or no longer is, in the possession or subject to your control, state what disposition was made of it and the reason for such disposition.

17.    "Meeting" means the contemporaneous presence of any natural persons (including by telephone, videoconference, or via the Internet or a company intranet) for any purpose, whether or not such presence was prearranged, and whether or not the meeting was formal or informal, or occurred in connection with some other activity.

18.    "Complaint" refers to the complaint in *Rawat v. Navistar Int'l Corp*, Case No. 08cv3038 (N.D. Ill.).

19.    A "Stock Option" is an employee stock option granted pursuant to any Navistar Stock Option Plan.

20.    The term "or" should be construed as disjunctive and conjunctive, and "any" and "all" as used herein shall include "each" and "every." Similarly, the singular includes the plural, and vice versa.

21.    The term "person" means any individual, corporation, partnership, firm, association, government agency or other organization recognizable at law, and its agents and employees.

22.    The term "concerning" means relating to, referring to, describing, evidencing, or constituting. Requests for documents "concerning" any subject matter include documents concerning communications regarding that subject matter.

23.    "Policy" means any rule, procedure, practice, or course of conduct, whether formal or informal, written or unwritten, recorded or unrecorded, which was recognized or followed, explicitly or implicitly, by Navistar.

24.    "Produced" with respect to any document, shall include authored, dictated, edited, reviewed; or approved, in whole or in part.

25.    "Rotation" means any plan, policy or scheme that involves the re-use of an electronic media device after it has been used for backup, archival or other electronic data storage purposes, particularly if such re-use results in the alteration and/or destruction of the electronic data residing on the device prior to it being re-used.

26.    "Support" means any help or assistance provided to a user of a computer by another individual, whether or not in an official job capacity. Such help or assistance may take the form of, but is not limited to, answering questions, in person or via mechanical means, direct intervention, training, software troubleshooting, hardware troubleshooting, programming, systems consulting, maintenance, repair, or user forums. Providers of support may be employees, contractors, or other third-party providers.

27.    "Telephone records" includes, without limitation, diaries, telephone directories, Rolodexes (electronic or paper), address books, telephone logs, recordings of telephone conversations, and telephone hills (both local and long distance). To the extent that you use Internet telephony in any manner, this definition applies to that type of telephone usage as well.

28.    "You" and "Your" refer to Defendant, individually or collectively, as defined above and in the Complaint.

## II.    INSTRUCTIONS

29.    All documents shall be produced in the order they are kept in the ordinary course of business, and shall be produced in their original size, original folders, binders, covers or containers, or facsimile thereof.

30.    Unless otherwise indicated, the relevant time period ("Relevant Time Period") for each request shall be January 1, 1995 through the date of service of this document request.

31.    These requests relate to all documents which are in defendants' possession, custody or control or in the possession, custody or control of Navistar's predecessors, successors, parents, subsidiaries, divisions, or affiliates, or any of

Navistar's respective directors, officers, managing agents, employees, attorneys, accountants, or other representatives.

32.    Each Defendant shall produce the original of each document described below or, if the original is not in its or his custody, then a copy thereof, and in any event, all non-identical copies which differ from the original or from the other copies produced for any reason, including, but not limited to, the making of notes thereon.

33.    If production of a document is withheld pursuant to a claim of privilege, as to each such withheld document, state the following information:

(a)    Which privilege is claimed;

(b)    A precise statement of the facts upon which said claim of privilege is based; and

(c)    The following information describing each purportedly privileged document:

(i)    Its nature, *e.g.*, agreement, letter, memorandum, etc.;

(ii)    The date it was prepared;

(iii)    The date it bears;

(iv)    The date it was sent;

(v)    The date it was received;

(vi)    The identity of the person preparing it;

(vii)    The identity of the person sending it;

(viii)    The identity of each person to whom it was sent or was to have been sent, including all addressees and all recipients of copies;

(ix)    A statement as to whom each identified person represented or purported to represent at all relevant times; and

(d)    A precise description of the place where each copy of that document is kept, including the title or description of the file in which said document may be found and the location of such file.

34.    Whenever a document is not produced in full or is produced in redacted form, so indicate on the document and state with particularity the reason or reasons it is not being produced in full and describe to the best of your knowledge, information and belief, and with as much particularity as possible, those portions of the document which are not being produced.

35.    If a document responsive to these requests was at any time in defendants' possession, custody or control but now is no longer available for production, as to each such document state the following information:

(a)    Whether the document is missing or lost;

(b)    Whether it has been destroyed;

(c)    Whether the document has been transferred or delivered to another person or entity and, if so, at whose request;

(d)    Whether the document has been otherwise disposed of; and

(e)    A precise statement of the circumstances surrounding the disposition of the document and the date of the document's disposition.

## I.    DOCUMENTS TO BE PRODUCED BY DEFENDANT

Any and all documents or communications in the possession, custody, or control of Defendant relating to:

1.    all communications sent to any Stock Option holders during or after the Blackout Period by Navistar, its Stock Option administrator, or any other agent of Navistar with respect to their Stock Options.

2.    all communications regarding stock options with any individual who had any Stock Options expire after April 6, 2006.

3.    all communications from any third party Stock Option administrator during or after the Blackout Period to holders of Stock Options or former holders of Stock Options, including, but not limited to any "Notice of Cancellation and Expiration of All Employee Stock Options."

4.    all communications between the Defendant and the Stock Option administrator during or after the Blackout Period addressing the issue of Stock Options.

5.    all Stock Options granted between January 1, 1995 and the present, including both Incentive Stock Options and Non-qualified Stock Options, including, but not limited to all documents that:

a.   identify each and every person who received a Stock Option grant;

b.   identify the type of each Stock Option grant, e.g., Incentive Stock Option, Non-Qualified Stock Option;

c.   identify the number of Stock Options granted to each such individual;

d.   identify the date of each Stock Option grant;

e.   identify the exercise price for each Stock Option;

f.   identify the exercise date of each Stock Option; and

g.   identify the expiration date of each the Stock Option.

6.    all Board meetings and/or Committee meetings and/or communications and/or discussions after April 6, 2006 addressing the subject of Stock Options expiring during the Blackout Period.

7.    support for Exhibit A of Defendant's June 26, 2008 Motion to Dismiss, titled "Declaration of Monica Stark."

Dated:  July 3, 2008

_____
Clinton A. Krislov

Clinton A. Krislov
Jeffrey M. Salas
KRISLOV & ASSOCIATES, LTD.
20 North Wacker Drive, Suite 1350
Chicago, Illinois  60606
Tel.:  (312) 606-0500
Fax:  (312) 606-0207

## PROOF OF SERVICE

I, Jeffrey M. Salas, an attorney, state that I caused a copy of the foregoing Plaintiff's First Set of Requests for the Production of Documents to be delivered via hand delivery on July 3, 2008 to the counsel below.

_____
Attorney for Plaintiff

Robin Hulshizer
Cary R. Perlman
Latham & Watkins LLP
233 South Wacker Drive
5800 Sears Tower
Chicago, IL 60606
(312) 876-7700

Laurence Harvey Levine
Laurence H. Levine Law Offices
190 South LaSalle
Suite 3120
Chicago, IL 60603
312 927 0625

# EXHIBIT 7

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **RAVI P. RAWAT, on behalf of himself and others similarly situated,** | ) ) ) | |
| | ) | **Case No. 08-cv-03038** |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **Judge John W. Darrah** |
| **NAVISTAR INTERNATIONAL CORPORATION,** | ) ) ) | **Magistrate Judge Nan R. Nolan** |
| **Defendant.** | ) ) ) | |

### NAVISTAR'S OBJECTIONS AND RESPONSES TO
### PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendant Navistar

International Corporation ("Defendant" or "Navistar"), by its attorneys, hereby objects and

responds to the First Set of Requests for Production of Documents ("Requests") served by

Plaintiff Ravi P. Rawat ("Plaintiff" or "Rawat") as follows:

### PRELIMINARY STATEMENT

The responses set forth below are based upon a reasonable and diligent search of the

information and documents presently in the possession, custody and control of Navistar, and

except for explicit acts stated herein, no incidental or implied admissions are intended. These

responses are provided without prejudice to Navistar's right to modify, amend or supplement

these responses if additional facts or information come to its attention in the course of Navistar's

continuing investigation. This reservation, however, is not to be construed as an undertaking by

Navistar of an affirmative duty to change or supplement these responses, except as otherwise

required by law or the Federal Rules of Civil Procedure. The fact that Navistar has responded to

one or more of the Requests is not intended and shall not be construed as waiver of all or any

part of any objection to any such Request. By making these responses, Navistar does not concede that the information sought is relevant or reasonably calculated to lead to the discovery of admissible evidence.

## GENERAL OBJECTIONS

A.    Navistar objects to the definitions and instructions set forth in the Requests to the extent those definitions and instructions call for a legal conclusion or purport to impose obligations on Navistar that exceed the obligations imposed upon a responding party under the Federal Rules of Civil Procedure and/or applicable local rules and case law, including, but not limited to, the various overbroad definitions and Instructions ¶¶ 29, 30, 32, 33 and 35.

B.    Navistar further objects to the Requests as prohibited due to Plaintiff's failure to comply with Federal Rules of Civil Procedure 26(d)(1) and 26(f). Plaintiff is improperly using discovery to compensate for Plaintiff's failure to undertake an adequate pre-filing investigation.

C.    Navistar further objects to all of the Requests as they seek materials or information unnecessary to resolve and/or beyond the scope of the jurisdictional question currently pending before the Court, i.e. whether Plaintiff's proposed class consists of less than 100 members thereby precluding subject matter jurisdiction under the Class Action Fairness Act ("CAFA"). Given Navistar's pending motion to dismiss for lack of subject matter jurisdiction, no jurisdictional discovery, let alone more general discovery, is appropriate. The evidence submitted by Navistar regarding the number of employees who had vested options that expired during the blackout period is clear; the jurisdictional requirements of CAFA are not met. Any discovery on an issue as simple and straightforward as the number of people who fall in the class as defined by Plaintiff would be irrelevant, cumulative, duplicative, unnecessary to resolve the jurisdictional question and impose an undue burden on Navistar.

D.     Navistar further objects to the Requests to the extent they seek information protected from disclosure by the attorney-client privilege, the work-product doctrine, the common interest privilege, the protections afforded by Federal Rule of Civil Procedure 26(b)(4)(B) or any other applicable privilege, doctrine or protection.

E.     Navistar further objects to the Requests to the extent they are vague, ambiguous and/or incapable of reasonable ascertainment.

F.     Navistar further objects to the "Relevant Time Period" as defined in the Instructions, as well as to the Requests to the extent they are overly broad, unduly burdensome, seek information not reasonably limited in time or scope and/or would require undue expense to answer.

G.     Navistar further objects to the Requests to the extent they seek information that is not relevant to the claim or defense of any party and/or that is not reasonably calculated to lead to the discovery of admissible evidence.

H.     Navistar further objects to the Requests to the extent they assume facts not in evidence and/or facts which do not exist or are otherwise incorrect.

I.     Navistar further objects to the Requests to the extent they seek information that is equally available to Plaintiff in the public domain or available from sources other than Navistar, or that is equally available to or already in the possession, custody or control of Plaintiff or his attorneys and for which the burden on Plaintiff to obtain the information is no greater than the burden on Navistar.

J.     Navistar further objects to the Requests to the extent they are cumulative and/or duplicative.

K.     Navistar further objects to the Requests to the extent they seek information and

identification of facts not in the possession, custody or control of Navistar and/or in the possession, custody or control of non-parties.

  L.  Navistar further objects to the Requests to the extent they seek the confidential information of third parties that Navistar is under an obligation to not disclose.

  M.  Navistar further objects to the Requests to the extent that they seek materials or information outside of the applicable statutes of limitation and/or the "blackout period" referenced in Plaintiff's Complaint.

  N.  Navistar further objects to the Requests to the extent they seek materials or information regarding individuals not in Plaintiff's proposed class.

  O.  Navistar further objects to the Requests to the extent they seek confidential and/or proprietary information.  Such information, to the extent it is not privileged or otherwise objectionable, will be withheld until entry of a protective order in this case.

  P.  No response to these Requests by Navistar shall be deemed to constitute any agreement or concession that the subject matter thereof is relevant to this action, and any information provided by Navistar shall be made without in any way waiving or intending to waive any objection thereto, including but not limited to relevance, privilege or admissibility.

  Q.  Navistar expressly reserves the right to modify, amend or supplement its responses to the Requests.

  R.  Each of the foregoing General Objections shall be deemed to apply to Navistar's specific objections and responses set forth below, notwithstanding the fact that Navistar has responded to all or part of any Request.

## OBJECTIONS AND RESPONSES TO REQUESTS

Any and all documents or communications in the possession, custody, or control of Defendant relating to:

## REQUEST NO. 1:

[A]ll communications sent to any Stock Option holders during or after the Blackout Period by Navistar, its Stock Option administrator, or any other agent of Navistar with respect to their Stock Options.

## RESPONSE:

Navistar hereby incorporates its General Objections as and for its objections to Request No. 1. Navistar further objects to Request No. 1 as prohibited due to Plaintiff's failure to comply with Federal Rules of Civil Procedure 26(d)(1) and 26(f). Navistar further objects to Request No. 1 as calling for information that is irrelevant, immaterial and/or not reasonably calculated to lead to the discovery of admissible evidence in this matter. Navistar further objects to Request No. 1 as overly broad and unduly burdensome. Navistar further objects to Request No. 1 as assuming facts not in evidence and/or facts which do not exist or are otherwise incorrect. Navistar further objects to Request No. 1 as cumulative and duplicative. Navistar further objects to Request No. 1 as seeking materials or information regarding individuals not in Plaintiff's proposed class. Navistar further objects to Request No. 1 as seeking materials or information unnecessary to resolve and/or beyond the scope of the jurisdictional question currently pending before the Court, i.e. whether Plaintiff's proposed class consists of less than 100 members thereby precluding subject matter jurisdiction under the Class Action Fairness Act.

## REQUEST NO. 2:

[A]ll communications regarding stock options with any individual who had any Stock

Options expire after April 6, 2006.

**RESPONSE:**

Navistar hereby incorporates its General Objections as and for its objections to Request No. 2. Navistar further objects to Request No. 2 as prohibited due to Plaintiff's failure to comply with Federal Rules of Civil Procedure 26(d)(1) and 26(f). Navistar further objects to Request No. 2 as calling for information that is irrelevant, immaterial and/or not reasonably calculated to lead to the discovery of admissible evidence in this matter. Navistar further objects to Request No. 2 as overly broad and unduly burdensome. Navistar further objects to Request No. 2 as cumulative and duplicative. Navistar further objects to Request No. 2 as seeking seek materials or information outside of the applicable statutes of limitation and/or the "blackout period" referenced in Plaintiff's Complaint. Navistar further objects to Request No. 2 as seeking materials or information regarding individuals not in Plaintiff's proposed class. Navistar further objects to Request No. 2 as seeking materials or information unnecessary to resolve and/or beyond the scope of the jurisdictional question currently pending before the Court, _i.e._ whether Plaintiff's proposed class consists of less than 100 members thereby precluding subject matter jurisdiction under the Class Action Fairness Act.

**REQUEST NO. 3:**

[A]ll communications from any third party Stock Option administrator during or after the Blackout Period to holders of Stock Options or former holders of Stock Options, including, but not limited to any "Notice of Cancellation and Expiration of All Employee Stock Options."

**RESPONSE:**

Navistar hereby incorporates its General Objections as and for its objections to Request No. 3. Navistar further objects to Request No. 3 as prohibited due to Plaintiff's failure to comply

with Federal Rules of Civil Procedure 26(d)(1) and 26(f).  Navistar further objects to Request No. 3 as calling for information that is irrelevant, immaterial and/or not reasonably calculated to lead to the discovery of admissible evidence in this matter.  Navistar further objects to Request No. 3 as overly broad and unduly burdensome.  Navistar further objects to Request No. 3 as vague, ambiguous and incapable of reasonable ascertainment.  Navistar further objects to Request No. 3 as assuming facts not in evidence and/or facts which do not exist or are otherwise incorrect.  Navistar further objects to Request No. 3 as cumulative and duplicative.  Navistar further objects to Request No. 3 as seeking materials or information regarding individuals not in Plaintiff's proposed class.  Navistar further objects to Request No. 3 as seeking materials or information unnecessary to resolve and/or beyond the scope of the jurisdictional question currently pending before the Court, i.e. whether Plaintiff's proposed class consists of less than 100 members thereby precluding subject matter jurisdiction under the Class Action Fairness Act.

## REQUEST NO. 4:

[A]ll communications between the Defendant and the Stock Option administrator during or after the Blackout Period addressing the issue of Stock Options.

## RESPONSE:

Navistar hereby incorporates its General Objections as and for its objections to Request No. 4.  Navistar further objects to Request No. 4 as prohibited due to Plaintiff's failure to comply with Federal Rules of Civil Procedure 26(d)(1) and 26(f).  Navistar further objects to Request No. 4 as overly broad and unduly burdensome.  Navistar further objects to Request No. 4 as vague, ambiguous and incapable of reasonable ascertainment.  Navistar further objects to Request No. 4 as calling for information that is irrelevant, immaterial and/or not reasonably calculated to lead to the discovery of admissible evidence in this matter.  Navistar further objects

7

to Request No. 4 as assuming facts not in evidence and/or facts which do not exist or are

otherwise incorrect.  Navistar further objects to Request No. 4 as cumulative and duplicative.

Navistar further objects to Request No. 4 as seeking materials or information unnecessary to

resolve and/or beyond the scope of the jurisdictional question currently pending before the Court,

i.e. whether Plaintiff's proposed class consists of less than 100 members thereby precluding

subject matter jurisdiction under the Class Action Fairness Act.

**REQUEST NO. 5:**

[A]ll Stock Options granted between January 1, 1995 and the present, including both

Incentive Stock Options and Non-qualified Stock Options, including, but not limited to all

documents that:

a. identify each and every person who received a Stock Option grant;

b. identify the type of each Stock Option grant, e.g., Incentive Stock Option, Non-

Qualified Stock Option;

c. identify the number of Stock Options granted to each such individual;

d. identify the date of each Stock Option grant;

e. identify the exercise price for each Stock Option;

f. identify the exercise date of each Stock Option; and

g. identify the expiration date of each the [*sic.*] Stock Option.

**RESPONSE:**

Navistar hereby incorporates its General Objections as and for its objections to Request

No. 5.  Navistar further objects to Request No. 5 as prohibited due to Plaintiff's failure to comply

with Federal Rules of Civil Procedure 26(d)(1) and 26(f).  Navistar further objects to Request

No. 5 as overly broad and unduly burdensome.  Navistar further objects to Request No. 5 as

calling for information that is irrelevant, immaterial and/or not reasonably calculated to lead to the discovery of admissible evidence in this matter. Navistar further objects to Request No. 5 as cumulative and duplicative. Navistar further objects to Request No. 5 as seeking seek materials or information outside of the applicable statutes of limitation and/or the "blackout period" referenced in Plaintiff's Complaint. Navistar further objects to Request No. 5 as seeking materials or information regarding individuals not in Plaintiff's proposed class. Navistar further objects to Request No. 5 as seeking materials or information unnecessary to resolve and/or beyond the scope of the jurisdictional question currently pending before the Court, <u>i.e.</u> whether Plaintiff's proposed class consists of less than 100 members thereby precluding subject matter jurisdiction under the Class Action Fairness Act.

## REQUEST NO. 6:

[A]ll Board meetings and/or Committee meetings and/or communications and/or discussions after April 6, 2006 addressing the subject of Stock Options expiring during the Blackout Period.

## RESPONSE:

Navistar hereby incorporates its General Objections as and for its objections to Request No. 6. Navistar further objects to Request No. 6 as prohibited due to Plaintiff's failure to comply with Federal Rules of Civil Procedure 26(d)(1) and 26(f). Navistar further objects to Request No. 6 as calling for information that is irrelevant, immaterial and/or not reasonably calculated to lead to the discovery of admissible evidence in this matter. Navistar further objects to Request No. 6 as overly broad and unduly burdensome. Navistar further objects to Request No. 6 as cumulative and duplicative. Navistar further objects to Request No. 6 as seeking materials or information unnecessary to resolve and/or beyond the scope of the jurisdictional question

currently pending before the Court, i.e. whether Plaintiff's proposed class consists of less than 100 members thereby precluding subject matter jurisdiction under the Class Action Fairness Act.

**REQUEST NO. 7:**

[S]upport for Exhibit A of Defendant's June 26, 2008 Motion to Dismiss, titled "Declaration of Monica Stark."

**RESPONSE:**

Navistar hereby incorporates its General Objections as and for its objections to Request No. 7. Navistar further objects to Request No. 7 as prohibited due to Plaintiff's failure to comply with Federal Rules of Civil Procedure 26(d)(1) and 26(f). Navistar further objects to Request No. 7 as vague, ambiguous and incapable of reasonable ascertainment. Navistar further objects to Request No. 7 as cumulative and duplicative, and thus, an undue burden on Navistar, seeking materials or information unnecessary to resolve the jurisdictional question currently pending before the Court, i.e. whether Plaintiff's proposed class consists of less than 100 members thereby precluding subject matter jurisdiction under the Class Action Fairness Act.

Dated:  August 4, 2008

Respectfully submitted,

One of the Attorneys for Defendant
Navistar International Corporation

Laurence H. Levine
Maaike S. Almeida
LAURENCE H. LEVINE LAW OFFICES
190 South LaSalle Street, Suite 3120
Chicago, Illinois 60603
Phone: (312) 291-7000
Fax: (312) 291-7015

Cary R. Perlman
Mark S. Mester
Robin M. Hulshizer
Robert C. Levels
LATHAM & WATKINS LLP
Sears Tower, Suite 5800
233 South Wacker Drive
Chicago, Illinois 60606
Phone: (312) 876-7700
Fax: (312) 993-9767

CH\1039949.4

10

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 4, 2008, a copy of the foregoing

NAVISTAR'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST SET OF

REQUESTS FOR PRODUCTION OF DOCUMENTS was served on the following by U.S.

Mail:

Clinton A. Krislov
Jeffrey Michael Salas
Krislov & Associates, Ltd.
20 North Wacker Drive, Suite 1350
Chicago, Illinois 60606


_____
Robert C. Levels

# EXHIBIT 8

**Robert C. Levels**
Direct Dial: (312) 777-7006
robert.levels@lw.com

Sears Tower, Suite 5800
233 S. Wacker Dr.
Chicago, Illinois  60606
Tel: +1.312.876.7700  Fax: +1.312.993.9767
www.lw.com

# LATHAM&WATKINS LLP

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Barcelona | New Jersey |
| Brussels | New York |
| Chicago | Northern Virginia |
| Dubai | Orange County |
| Frankfurt | Paris |
| Hamburg | Rome |
| Hong Kong | San Diego |
| London | San Francisco |
| Los Angeles | Shanghai |
| Madrid | Silicon Valley |
| Milan | Singapore |
| Moscow | Tokyo |
| Munich | Washington, D.C. |

August 12, 2008

File No. 010255-0330

Mr. Clinton A. Krislov
Mr. Jeffrey M. Salas
Krislov & Associates, Ltd.
20 North Wacker Drive, Suite 1350
Chicago, Illinois  60606

Re:     Rawat v. Navistar International Corporation -- Case No. 08-cv-03038

Dear Clint and Jeff:

We write to memorialize our conversation of August 8, 2008 regarding Plaintiffs' First Set of Requests for the Production of Documents, dated July 3, 2008.  During the call we explained that we do not believe Plaintiff is entitled to any discovery at this stage of the litigation, and you asked that we provide authority.  We are happy to do so.

First, Rule 26(d)(1) provides that no party may seek discovery until after the Rule 26(f) conference takes place, which has obviously not occurred in this case.  See Fed. R. Civ. P. 26(d)(1); Borom v. Town Of Merrillville, No. 2:07 CV 98, 2007 WL 1797639, at *5-6 (N.D. Ind. June 19, 2007).  Thus, you were required to seek leave of court to conduct the requested discovery, and Navistar was under no obligation to respond to your discovery.  See id.  Navistar provided its written objections as a courtesy, however, to apprise you of the procedural deficiency of your discovery and memorialize Navistar's objections.

Second, to the extent you seek jurisdictional discovery, the requests you served on Navistar reach far beyond the narrow jurisdictional question at issue, and thus, are not permitted. See, e.g., Sprague v. Brook, 149 F.R.D. 575, 578 (N.D. Ill. 1993) ("[a] plaintiff's right to discovery before a ruling on a motion to dismiss may be stayed when the requested discovery is unlikely to produce facts necessary to defeat the motion"); GTE New Media Servs., Inc. v. BellSouth Corp., 199 F.3d 1343, 1352 (D.C. Cir. 2000) (jurisdictional discovery must be "precisely focused" and aimed at addressing matters relevant to jurisdiction); Kitson v. Bank of Edwardsville, No. 06-528-GPM, 2006 WL 3392752, at *7 (S.D. Ill. Nov. 22, 2006) (denying jurisdictional discovery in a CAFA case where the affidavits permitted the Court to be "satisfied that the record shows by a preponderance of the evidence" that the requirements of a CAFA exception were met).  As in Kitson, Navistar has already produced evidence concerning the number of putative class members, i.e. two sworn declarations from Monica Stark, an employee at Navistar who works on stock options and who has great familiarity with Navistar's records on

Clinton A. Krislov, Jeffrey M. Salas
August 12, 2008
Page 2

LATHAM&WATKINS LLP

the subject.  See Stark Decl., Ex. A to Navistar's Motion to Dismiss; Suppl. Stark Decl., Ex. A to Navistar's Mem. in Supp. of its Motion to Dismiss.  As such, no further discovery is warranted.

Nevertheless, in an effort to resolve the current discovery dispute, we agreed to produce documentation supporting Ms. Stark's declaration.  The enclosed excel spreadsheet (Bates-stamped NAV000001-28), is generated from the database that tracks stock options, and it lists the expiration date for the options granted to each individual.[1]  Per your class definitions, this list includes the "individuals whose vested options expired during Navistar's 'blackout period'" (see Rawat I Compl. at ¶ 36) as well as individuals "who were prevented from exercising their options" but whose options did not expire (Rawat II Compl. at ¶ 46).  As you can see, the total number of persons exceeds 200 individuals.  However, as you will also see from the "Expr Date" column, the number of individuals whose options actually expired during the blackout is far less than the 100 needed for jurisdiction.

Because this documentation further proves that no subject matter jurisdiction exists, we ask that you immediately dismiss Case No. 08-cv-03038.  On our call, you agreed to consider this additional information for just that purpose and unless you have a good faith basis for believing the number of individuals whose options actually expired during the black out is greater than 100 – it is incumbent on your firm to dismiss.  In any event, given the legal authority and documentation we have produced, we expect that you will not pursue additional discovery pending Judge Darrah's ruling on the motion to dismiss.  If that expectation proves false, please alert us immediately in writing.

Finally, you requested that Navistar agree not to send any further checks until after August 22, 2008, when Mr. Krislov will return from vacation.  Unfortunately, Navistar cannot agree to this further limitation.  If this were a simple matter of case management scheduling or an extension of time for briefing, Navistar would likely agree.  However, Navistar must respect the rights of its current and former employees who have accepted the cash payment offer, signed effective releases, and chose not to hire you.  We do not know with certainty when, after August 15, the checks will be sent, but we are unwilling to keep people from their money longer than might otherwise be the case, especially since the date the checks are sent is of no significance.  Thus, Navistar respectfully declines your request.

Sincerely yours,

Robert C. Levels
of LATHAM & WATKINS LLP

Enclosure

cc:    Cary R. Perlman
       Robin M. Hulshizer

---

[1]    To preserve confidentiality, employees are identified using the last five digits of their social security number.

# EXHIBIT 9

Grant Master Report
Navistar International Corporation
Grant Dates From  1/1/1900  to  12/31/2999
Expiration Dates from  1/1/1900  to  12/31/2999
Participants With Options Outstanding

| Optionee ID | SSN | Grant Date | Expr  Date |
|---|---|---|---|
| 00262 | 00262 | 02/02/2002 | 10/20/2007 |
| 00262 | 00262 | 12/10/2002 | 10/20/2007 |
| 00262 | 00262 | 12/10/2002 | 10/20/2007 |
| 00262 | 00262 | 12/09/2003 | 10/20/2007 |
| 00262 | 00262 | 12/14/2004 | 10/20/2007 |
| 00262 | 00262 | 10/18/2005 | 10/20/2007 |
| 00887 | 00887 | 04/01/2003 | 07/13/2007 |
| 00887 | 00887 | 12/09/2003 | 07/13/2007 |
| 00887 | 00887 | 12/14/2004 | 07/13/2007 |
| 00887 | 00887 | 10/18/2005 | 07/13/2007 |
| 00903 | 00903 | 12/16/1997 | 12/16/2007 |
| 00903 | 00903 | 12/16/1997 | 12/17/2007 |
| 00903 | 00903 | 12/15/1998 | 12/15/2008 |
| 00903 | 00903 | 12/15/1998 | 12/16/2008 |
| 00903 | 00903 | 12/14/1999 | 12/14/2009 |
| 00903 | 00903 | 12/14/1999 | 12/15/2009 |
| 00903 | 00903 | 12/12/2000 | 12/12/2010 |
| 00903 | 00903 | 12/12/2000 | 12/13/2010 |
| 00903 | 00903 | 12/11/2001 | 12/11/2011 |
| 00903 | 00903 | 12/11/2001 | 12/12/2011 |
| 00903 | 00903 | 01/01/2002 | 01/02/2012 |
| 00903 | 00903 | 12/10/2002 | 12/10/2012 |
| 00903 | 00903 | 12/10/2002 | 12/11/2012 |
| 00903 | 00903 | 12/09/2003 | 12/09/2013 |
| 00903 | 00903 | 12/09/2003 | 12/10/2013 |
| 00903 | 00903 | 12/14/2004 | 12/14/2014 |
| 00903 | 00903 | 12/14/2004 | 12/14/2014 |
| 00903 | 00903 | 10/18/2005 | 10/18/2015 |
| 00903 | 00903 | 10/18/2005 | 10/18/2015 |
| 01055 | 01055 | 12/15/1998 | 12/15/2008 |
| 01055 | 01055 | 12/12/2000 | 12/12/2010 |
| 01055 | 01055 | 12/12/2000 | 12/13/2010 |
| 01055 | 01055 | 12/11/2001 | 12/11/2011 |
| 01055 | 01055 | 12/11/2001 | 12/11/2011 |
| 01055 | 01055 | 12/10/2002 | 12/10/2012 |
| 01055 | 01055 | 12/10/2002 | 12/11/2012 |
| 01433 | 01433 | 01/01/2000 | 01/02/2010 |
| 01433 | 01433 | 12/12/2000 | 12/12/2010 |
| 01433 | 01433 | 12/11/2001 | 12/11/2011 |
| 01433 | 01433 | 12/10/2002 | 12/10/2012 |
| 01433 | 01433 | 12/10/2002 | 12/11/2012 |
| 01636 | 01636 | 12/11/2001 | 01/31/2007 |
| 01636 | 01636 | 12/10/2002 | 01/31/2007 |
| 01636 | 01636 | 12/10/2002 | 01/31/2007 |
| 01636 | 01636 | 12/09/2003 | 01/31/2007 |
| 01636 | 01636 | 12/09/2003 | 01/31/2007 |
| 01636 | 01636 | 12/14/2004 | 01/31/2007 |
| 01636 | 01636 | 10/18/2005 | 01/31/2007 |
| 01893 | 01893 | 12/11/2001 | 12/11/2011 |
| 01893 | 01893 | 12/10/2002 | 12/10/2012 |
| 01893 | 01893 | 12/10/2002 | 12/11/2012 |
| 01893 | 01893 | 12/09/2003 | 12/09/2013 |
| 01893 | 01893 | 12/09/2003 | 12/10/2013 |
| 01893 | 01893 | 12/14/2004 | 12/14/2014 |
| 01893 | 01893 | 12/14/2004 | 12/14/2014 |

NAV000001

| Optionee ID | SSN | Grant Date | Exer Date |
|---|---|---|---|
| 01893 | 01893 | 10/18/2005 | 10/18/2015 |
| 01893 | 01893 | 10/18/2005 | 10/18/2015 |
| 02560 | 02560 | 03/01/2000 | 03/02/2010 |
| 02560 | 02560 | 12/11/2001 | 12/11/2011 |
| 02560 | 02560 | 12/10/2002 | 12/10/2012 |
| 02560 | 02560 | 12/10/2002 | 12/11/2012 |
| 02560 | 02560 | 12/09/2003 | 12/09/2013 |
| 02560 | 02560 | 12/09/2003 | 12/10/2013 |
| 02560 | 02560 | 12/14/2004 | 12/14/2014 |
| 02560 | 02560 | 10/18/2005 | 10/18/2015 |
| 02810A | 02810A | 12/14/1999 | 12/14/2009 |
| 02810A | 02810A | 12/14/1999 | 12/14/2009 |
| 02810A | 02810A | 12/12/2000 | 12/12/2010 |
| 02810A | 02810A | 12/12/2000 | 12/12/2010 |
| 02810A | 02810A | 12/11/2001 | 12/11/2011 |
| 02810A | 02810A | 12/11/2001 | 12/12/2011 |
| 02810A | 02810A | 12/10/2002 | 12/10/2012 |
| 02810A | 02810A | 12/10/2002 | 12/10/2012 |
| 02810A | 02810A | 12/10/2002 | 12/11/2012 |
| 02810B | 02810B | 12/14/1999 | 12/14/2009 |
| 02810B | 02810B | 12/12/2000 | 12/12/2010 |
| 02810B | 02810B | 12/11/2001 | 12/11/2011 |
| 02810B | 02810B | 12/10/2002 | 12/10/2012 |
| 02810B | 02810B | 12/10/2002 | 12/11/2012 |
| 02810B | 02810B | 12/09/2003 | 12/09/2013 |
| 02810B | 02810B | 12/09/2003 | 12/10/2013 |
| 02810B | 02810B | 12/14/2004 | 12/14/2014 |
| 02810B | 02810B | 10/18/2005 | 10/18/2015 |
| 03078 | 03078 | 12/11/2001 | 12/26/2007 |
| 03078 | 03078 | 12/10/2002 | 12/26/2007 |
| 03078 | 03078 | 12/10/2002 | 12/26/2007 |
| 03078 | 03078 | 12/09/2003 | 12/26/2007 |
| 03078 | 03078 | 12/09/2003 | 12/26/2007 |
| 03078 | 03078 | 12/14/2004 | 12/26/2007 |
| 03078 | 03078 | 10/18/2005 | 12/26/2007 |
| 03178 | 03178 | 12/14/1999 | 12/14/2009 |
| 03178 | 03178 | 12/14/1999 | 12/15/2009 |
| 03178 | 03178 | 12/11/2001 | 12/11/2011 |
| 03178 | 03178 | 12/11/2001 | 12/12/2011 |
| 03178 | 03178 | 12/10/2002 | 12/10/2012 |
| 03178 | 03178 | 12/10/2002 | 12/10/2012 |
| 03178 | 03178 | 12/10/2002 | 12/11/2012 |
| 03178 | 03178 | 12/09/2003 | 12/09/2013 |
| 03178 | 03178 | 12/09/2003 | 12/10/2013 |
| 04274 | 04274 | 12/14/1999 | 12/14/2009 |
| 04274 | 04274 | 12/11/2001 | 12/11/2011 |
| 04274 | 04274 | 12/10/2002 | 12/10/2012 |
| 04274 | 04274 | 12/10/2002 | 12/11/2012 |
| 04274 | 04274 | 12/09/2003 | 12/09/2013 |
| 04274 | 04274 | 12/09/2003 | 12/10/2013 |
| 04274 | 04274 | 12/14/2004 | 12/14/2014 |
| 04274 | 04274 | 10/18/2005 | 10/18/2015 |
| 04274 | 04274 | 10/18/2005 | 10/18/2015 |
| 04757 | 04757 | 12/15/1998 | 12/15/2008 |
| 04757 | 04757 | 12/14/1999 | 12/14/2009 |
| 04757 | 04757 | 12/14/1999 | 12/15/2009 |
| 04757 | 04757 | 12/12/2000 | 12/12/2010 |
| 04757 | 04757 | 12/12/2000 | 12/13/2010 |
| 04757 | 04757 | 12/12/2000 | 12/13/2010 |
| 04757 | 04757 | 12/11/2001 | 12/11/2011 |
| 04757 | 04757 | 12/11/2001 | 12/12/2011 |

NAV000002

| Optionee ID | SSN | Grant Date | Exer Date |
|---|---|---|---|
| 04757 | 04757 | 12/11/2001 | 12/12/2011 |
| 04757 | 04757 | 12/10/2002 | 12/10/2012 |
| 04757 | 04757 | 12/10/2002 | 12/11/2012 |
| 04757 | 04757 | 12/10/2002 | 12/11/2012 |
| 05087 | 05087 | 10/18/2005 | 10/18/2015 |
| 05115 | 05115 | 12/14/1999 | 12/14/2009 |
| 05115 | 05115 | 12/12/2000 | 12/12/2010 |
| 05115 | 05115 | 12/12/2000 | 12/12/2010 |
| 05115 | 05115 | 12/11/2001 | 12/11/2011 |
| 05115 | 05115 | 12/11/2001 | 12/12/2011 |
| 05115 | 05115 | 12/10/2002 | 12/10/2012 |
| 05115 | 05115 | 12/10/2002 | 12/11/2012 |
| 05115 | 05115 | 12/09/2003 | 12/09/2013 |
| 05115 | 05115 | 12/09/2003 | 12/10/2013 |
| 05115 | 05115 | 12/14/2004 | 12/14/2014 |
| 05261 | 05261 | 12/14/2004 | 12/14/2014 |
| 05261 | 05261 | 10/18/2005 | 10/18/2015 |
| 05291 | 05291 | 02/16/1998 | 10/31/2006 |
| 05291 | 05291 | 12/15/1998 | 10/31/2006 |
| 05291 | 05291 | 12/14/1999 | 10/31/2006 |
| 05291 | 05291 | 12/14/1999 | 10/31/2006 |
| 05291 | 05291 | 12/12/2000 | 10/31/2006 |
| 05291 | 05291 | 12/11/2001 | 10/31/2006 |
| 05291 | 05291 | 12/11/2001 | 10/31/2006 |
| 05291 | 05291 | 12/10/2002 | 10/31/2006 |
| 05291 | 05291 | 12/10/2002 | 10/31/2006 |
| 05291 | 05291 | 12/09/2003 | 10/31/2006 |
| 05291 | 05291 | 12/09/2003 | 10/31/2006 |
| 05291 | 05291 | 12/14/2004 | 10/31/2006 |
| 05291 | 05291 | 10/18/2005 | 10/31/2006 |
| 05433 | 05433 | 10/18/2005 | 10/18/2015 |
| 05921 | 05921 | 01/01/2000 | 01/02/2010 |
| 05921 | 05921 | 12/11/2001 | 12/11/2011 |
| 05921 | 05921 | 12/10/2002 | 12/10/2012 |
| 05921 | 05921 | 12/10/2002 | 12/11/2012 |
| 05921 | 05921 | 12/09/2003 | 12/09/2013 |
| 05921 | 05921 | 12/09/2003 | 12/10/2013 |
| 05921 | 05921 | 12/14/2004 | 12/14/2014 |
| 05921 | 05921 | 10/18/2005 | 10/18/2015 |
| 06523 | 06523 | 12/11/2001 | 12/11/2011 |
| 06523 | 06523 | 12/11/2001 | 12/11/2011 |
| 06523 | 06523 | 12/10/2002 | 12/10/2012 |
| 06523 | 06523 | 12/10/2002 | 12/10/2012 |
| 06523 | 06523 | 12/10/2002 | 12/11/2012 |
| 06523 | 06523 | 12/09/2003 | 12/09/2013 |
| 06523 | 06523 | 12/09/2003 | 12/10/2013 |
| 06681 | 06681 | 12/12/2000 | 05/08/2007 |
| 06681 | 06681 | 12/11/2001 | 05/08/2007 |
| 06681 | 06681 | 12/11/2001 | 05/08/2007 |
| 06681 | 06681 | 12/10/2002 | 05/08/2007 |
| 06681 | 06681 | 12/10/2002 | 05/08/2007 |
| 06681 | 06681 | 12/09/2003 | 05/08/2007 |
| 06681 | 06681 | 12/09/2003 | 05/08/2007 |
| 06681 | 06681 | 12/14/2004 | 05/08/2007 |
| 06681 | 06681 | 10/18/2005 | 05/08/2007 |
| 08003 | 08003 | 10/18/2005 | 10/18/2015 |
| 08271 | 08271 | 12/15/1999 | 12/14/2009 |
| 08271 | 08271 | 12/13/2000 | 12/13/2010 |
| 08271 | 08271 | 12/12/2001 | 12/12/2011 |
| 08271 | 08271 | 12/11/2002 | 12/11/2012 |
| 08271 | 08271 | 12/10/2003 | 12/10/2013 |

NAV000003

| Optionee ID | SSN | Grant Date | Expr Date |
|---|---|---|---|
| 08271 | 08271 | 12/14/2004 | 12/14/2014 |
| 08271 | 08271 | 10/18/2005 | 10/18/2015 |
| 08508 | 08508 | 12/11/2001 | 12/11/2011 |
| 08508 | 08508 | 12/10/2002 | 12/10/2012 |
| 08508 | 08508 | 12/10/2002 | 12/11/2012 |
| 08508 | 08508 | 12/09/2003 | 12/09/2013 |
| 08508 | 08508 | 12/09/2003 | 12/10/2013 |
| 08508 | 08508 | 12/14/2004 | 12/14/2014 |
| 08508 | 08508 | 10/18/2005 | 10/18/2015 |
| 09236 | 09236 | 12/14/1999 | 12/14/2009 |
| 09236 | 09236 | 12/14/1999 | 12/15/2009 |
| 09236 | 09236 | 12/11/2001 | 12/11/2011 |
| 09236 | 09236 | 12/11/2001 | 12/12/2011 |
| 09236 | 09236 | 12/10/2002 | 12/10/2012 |
| 09236 | 09236 | 12/10/2002 | 12/11/2012 |
| 09236 | 09236 | 12/09/2003 | 12/09/2013 |
| 09236 | 09236 | 12/09/2003 | 12/10/2013 |
| 09239 | 09239 | 12/16/1996 | 12/16/2006 |
| 09239 | 09239 | 12/16/1996 | 12/17/2006 |
| 09239 | 09239 | 12/16/1997 | 12/16/2007 |
| 09239 | 09239 | 12/16/1997 | 12/17/2007 |
| 09239 | 09239 | 12/15/1998 | 12/15/2008 |
| 09239 | 09239 | 12/15/1998 | 12/16/2008 |
| 09239 | 09239 | 12/14/1999 | 12/14/2009 |
| 09239 | 09239 | 12/14/1999 | 12/15/2009 |
| 09239 | 09239 | 12/12/2000 | 12/12/2010 |
| 09239 | 09239 | 12/12/2000 | 12/13/2010 |
| 09239 | 09239 | 12/11/2001 | 12/11/2011 |
| 09239 | 09239 | 12/11/2001 | 12/12/2011 |
| 09239 | 09239 | 12/10/2002 | 12/10/2012 |
| 09239 | 09239 | 12/10/2002 | 12/11/2012 |
| 09239 | 09239 | 12/09/2003 | 12/09/2013 |
| 09239 | 09239 | 12/09/2003 | 12/10/2013 |
| 09239 | 09239 | 12/14/2004 | 12/14/2014 |
| 09239 | 09239 | 10/18/2005 | 10/18/2015 |
| 09742 | 09742 | 12/16/1997 | 12/16/2007 |
| 09742 | 09742 | 12/16/1997 | 12/17/2007 |
| 09742 | 09742 | 12/15/1998 | 12/15/2008 |
| 09742 | 09742 | 12/15/1998 | 12/16/2008 |
| 09742 | 09742 | 12/14/1999 | 12/14/2009 |
| 09742 | 09742 | 12/14/1999 | 12/15/2009 |
| 09742 | 09742 | 12/12/2000 | 12/12/2010 |
| 09742 | 09742 | 12/12/2000 | 12/13/2010 |
| 09742 | 09742 | 12/11/2001 | 12/11/2011 |
| 09742 | 09742 | 12/11/2001 | 12/12/2011 |
| 09742 | 09742 | 12/10/2002 | 12/10/2012 |
| 09742 | 09742 | 12/10/2002 | 12/11/2012 |
| 09742 | 09742 | 12/09/2003 | 12/09/2013 |
| 09742 | 09742 | 12/09/2003 | 12/10/2013 |
| 09742 | 09742 | 12/14/2004 | 12/14/2014 |
| 09742 | 09742 | 12/14/2004 | 12/14/2014 |
| 09919 | 09919 | 01/08/2002 | 01/09/2012 |
| 09919 | 09919 | 12/10/2002 | 12/10/2012 |
| 09919 | 09919 | 12/10/2002 | 12/11/2012 |
| 09919 | 09919 | 12/09/2003 | 12/09/2013 |
| 09919 | 09919 | 12/09/2003 | 12/10/2013 |
| 09919 | 09919 | 12/14/2004 | 12/14/2014 |
| 09919 | 09919 | 12/14/2004 | 12/14/2014 |
| 09919 | 09919 | 10/18/2005 | 10/18/2015 |
| 09919 | 09919 | 10/18/2005 | 10/18/2015 |

NAV000004

| Optionee ID | SSN | Grant Date | Expr Date |
|---|---|---|---|
| 15071 | 15071 | 04/15/2002 | 04/16/2012 |
| 15071 | 15071 | 12/10/2002 | 12/10/2012 |
| 15071 | 15071 | 12/10/2002 | 12/11/2012 |
| 15071 | 15071 | 12/09/2003 | 12/09/2013 |
| 15071 | 15071 | 12/14/2004 | 12/14/2014 |
| 15071 | 15071 | 10/18/2005 | 10/18/2015 |
| 20038 | 20038 | 09/02/2003 | 09/03/2013 |
| 20038 | 20038 | 12/09/2003 | 12/09/2013 |
| 20038 | 20038 | 12/09/2003 | 12/10/2013 |
| 20038 | 20038 | 12/14/2004 | 12/14/2014 |
| 20038 | 20038 | 12/14/2004 | 12/14/2014 |
| 20038 | 20038 | 10/18/2005 | 10/18/2015 |
| 20038 | 20038 | 10/18/2005 | 10/18/2015 |
| 20203 | 20203 | 12/15/1998 | 12/15/2008 |
| 20203 | 20203 | 12/15/1998 | 12/16/2008 |
| 20203 | 20203 | 12/14/1999 | 12/14/2009 |
| 20203 | 20203 | 12/14/1999 | 12/15/2009 |
| 20203 | 20203 | 03/01/2000 | 03/02/2010 |
| 20203 | 20203 | 12/11/2001 | 12/11/2011 |
| 20203 | 20203 | 12/11/2001 | 12/12/2011 |
| 20203 | 20203 | 12/10/2002 | 12/10/2012 |
| 20203 | 20203 | 12/10/2002 | 12/10/2012 |
| 20203 | 20203 | 12/10/2002 | 12/11/2012 |
| 20203 | 20203 | 12/09/2003 | 12/09/2013 |
| 20203 | 20203 | 12/09/2003 | 12/10/2013 |
| 20203 | 20203 | 12/14/2004 | 12/14/2014 |
| 20203 | 20203 | 12/14/2004 | 12/14/2014 |
| 20203 | 20203 | 10/18/2005 | 10/18/2015 |
| 20203 | 20203 | 10/18/2005 | 10/18/2015 |
| 20242 | 20242 | 11/01/2001 | 10/31/2006 |
| 20242 | 20242 | 12/11/2001 | 10/31/2006 |
| 20242 | 20242 | 12/10/2002 | 10/31/2006 |
| 20242 | 20242 | 12/10/2002 | 10/31/2006 |
| 20242 | 20242 | 12/09/2003 | 10/31/2006 |
| 20242 | 20242 | 12/09/2003 | 10/31/2006 |
| 20242 | 20242 | 12/14/2004 | 10/31/2006 |
| 20242 | 20242 | 10/18/2005 | 10/31/2006 |
| 20372 | 20372 | 12/14/1999 | 12/14/2009 |
| 20372 | 20372 | 12/14/1999 | 12/15/2009 |
| 20372 | 20372 | 07/01/2001 | 07/02/2011 |
| 20372 | 20372 | 12/11/2001 | 12/11/2011 |
| 20372 | 20372 | 12/11/2001 | 12/12/2011 |
| 20372 | 20372 | 12/10/2002 | 12/10/2012 |
| 20372 | 20372 | 12/10/2002 | 12/11/2012 |
| 20372 | 20372 | 12/09/2003 | 12/09/2013 |
| 20372 | 20372 | 12/09/2003 | 12/10/2013 |
| 20372 | 20372 | 12/14/2004 | 12/14/2014 |
| 20372 | 20372 | 12/14/2004 | 12/14/2014 |
| 20372 | 20372 | 10/18/2005 | 10/18/2015 |
| 20372 | 20372 | 10/18/2005 | 10/18/2015 |
| 20533 | 20533 | 12/14/2004 | 12/14/2014 |
| 20533 | 20533 | 10/18/2005 | 10/18/2015 |
| 20591 | 20591 | 12/16/1997 | 12/16/2007 |
| 20591 | 20591 | 12/15/1998 | 12/15/2008 |
| 20591 | 20591 | 12/14/1999 | 12/14/2009 |
| 20591 | 20591 | 12/12/2000 | 12/12/2010 |
| 20591 | 20591 | 12/11/2001 | 12/11/2011 |
| 20591 | 20591 | 12/11/2001 | 12/12/2011 |
| 20591 | 20591 | 12/10/2002 | 12/10/2012 |
| 20591 | 20591 | 12/10/2002 | 12/11/2012 |
| 20653 | 20653 | 12/14/1999 | 12/14/2009 |

NAV000005

| Optionee ID | SSN | Grant Date | Exer. Date |
|---|---|---|---|
| 20653 | 20653 | 12/14/1999 | 12/15/2009 |
| 20653 | 20653 | 12/11/2001 | 12/11/2011 |
| 20653 | 20653 | 12/11/2001 | 12/12/2011 |
| 20653 | 20653 | 12/10/2002 | 12/10/2012 |
| 20653 | 20653 | 12/10/2002 | 12/11/2012 |
| 20653 | 20653 | 12/09/2003 | 12/09/2013 |
| 20653 | 20653 | 12/09/2003 | 12/10/2013 |
| 20653 | 20653 | 12/14/2004 | 12/14/2014 |
| 20653 | 20653 | 10/18/2005 | 10/18/2015 |
| 21428 | 21428 | 08/19/1997 | 08/19/2007 |
| 21428 | 21428 | 12/16/1997 | 12/16/2007 |
| 21428 | 21428 | 12/15/1998 | 12/15/2008 |
| 21428 | 21428 | 12/15/1998 | 12/16/2008 |
| 21428 | 21428 | 12/14/1999 | 12/14/2009 |
| 21428 | 21428 | 12/14/1999 | 12/15/2009 |
| 21428 | 21428 | 12/12/2000 | 12/12/2010 |
| 21428 | 21428 | 12/12/2000 | 12/13/2010 |
| 21428 | 21428 | 12/11/2001 | 12/11/2011 |
| 21428 | 21428 | 12/11/2001 | 12/12/2011 |
| 21428 | 21428 | 12/10/2002 | 12/10/2012 |
| 21428 | 21428 | 12/10/2002 | 12/11/2012 |
| 21428 | 21428 | 12/09/2003 | 12/09/2013 |
| 21428 | 21428 | 12/09/2003 | 12/10/2013 |
| 21428 | 21428 | 12/14/2004 | 12/14/2014 |
| 21428 | 21428 | 12/14/2004 | 12/14/2014 |
| 21428 | 21428 | 10/18/2005 | 10/18/2015 |
| 21428 | 21428 | 10/18/2005 | 10/18/2015 |
| 21433 | 21433 | 12/14/1999 | 12/14/2009 |
| 21433 | 21433 | 12/12/2000 | 12/12/2010 |
| 21433 | 21433 | 12/11/2001 | 12/11/2011 |
| 21433 | 21433 | 12/11/2001 | 12/12/2011 |
| 21433 | 21433 | 12/10/2002 | 12/10/2012 |
| 21433 | 21433 | 12/10/2002 | 12/11/2012 |
| 21433 | 21433 | 12/09/2003 | 12/09/2013 |
| 21433 | 21433 | 12/09/2003 | 12/10/2013 |
| 21433 | 21433 | 12/14/2004 | 12/14/2014 |
| 21433 | 21433 | 10/18/2005 | 10/18/2015 |
| 21810 | 21810 | 12/11/2001 | 12/11/2011 |
| 21810 | 21810 | 12/10/2002 | 12/10/2012 |
| 21810 | 21810 | 12/10/2002 | 12/11/2012 |
| 21810 | 21810 | 12/09/2003 | 12/09/2013 |
| 21810 | 21810 | 12/09/2003 | 12/10/2013 |
| 21926 | 21926 | 12/10/2002 | 12/10/2012 |
| 21926 | 21926 | 12/10/2002 | 12/11/2012 |
| 21926 | 21926 | 12/09/2003 | 12/09/2013 |
| 21926 | 21926 | 12/14/2004 | 12/14/2014 |
| 21926 | 21926 | 10/18/2005 | 10/18/2015 |
| 22802 | 22802 | 12/11/2001 | 12/11/2011 |
| 22802 | 22802 | 12/10/2002 | 12/10/2012 |
| 22802 | 22802 | 12/10/2002 | 12/11/2012 |
| 22802 | 22802 | 12/09/2003 | 12/09/2013 |
| 22802 | 22802 | 12/09/2003 | 12/10/2013 |
| 22802 | 22802 | 12/14/2004 | 12/14/2014 |
| 22802 | 22802 | 10/18/2005 | 10/18/2015 |
| 22832 | 22832 | 12/11/2001 | 12/29/2006 |
| 22832 | 22832 | 12/10/2002 | 12/29/2006 |
| 22832 | 22832 | 12/10/2002 | 12/29/2006 |
| 22832 | 22832 | 12/09/2003 | 12/29/2006 |
| 22832 | 22832 | 12/09/2003 | 12/29/2006 |
| 22832 | 22832 | 12/14/2004 | 12/29/2006 |
| 22832 | 22832 | 10/18/2005 | 12/29/2006 |

NAV000006

| Optionee ID | SSN | Grant Date | Exer Date |
|---|---|---|---|
| 22968 | 22968 | 10/18/2005 | 10/18/2015 |
| 23124 | 23124 | 12/14/1999 | 12/14/2009 |
| 23124 | 23124 | 12/14/1999 | 12/15/2009 |
| 23124 | 23124 | 12/12/2000 | 12/13/2010 |
| 23124 | 23124 | 12/11/2001 | 12/11/2011 |
| 23124 | 23124 | 12/11/2001 | 12/12/2011 |
| 23124 | 23124 | 12/10/2002 | 12/10/2012 |
| 23124 | 23124 | 12/10/2002 | 12/11/2012 |
| 23124 | 23124 | 12/09/2003 | 12/09/2013 |
| 23124 | 23124 | 12/09/2003 | 12/10/2013 |
| 23124 | 23124 | 12/14/2004 | 12/14/2014 |
| 23124 | 23124 | 12/14/2004 | 12/14/2014 |
| 23124 | 23124 | 10/18/2005 | 10/18/2015 |
| 23124 | 23124 | 10/18/2005 | 10/18/2015 |
| 23284 | 23284 | 12/15/1998 | 12/15/2008 |
| 23284 | 23284 | 12/15/1998 | 12/16/2008 |
| 23284 | 23284 | 12/14/1999 | 12/14/2009 |
| 23284 | 23284 | 12/12/2000 | 12/12/2010 |
| 23284 | 23284 | 12/12/2000 | 12/13/2010 |
| 23284 | 23284 | 12/11/2001 | 12/11/2011 |
| 23284 | 23284 | 12/11/2001 | 12/12/2011 |
| 23284 | 23284 | 12/10/2002 | 12/10/2012 |
| 23284 | 23284 | 12/10/2002 | 12/11/2012 |
| 23284 | 23284 | 12/09/2003 | 12/09/2013 |
| 23284 | 23284 | 12/09/2003 | 12/10/2013 |
| 23284 | 23284 | 12/14/2004 | 12/14/2014 |
| 23284 | 23284 | 10/18/2005 | 10/18/2015 |
| 23820 | 23820 | 10/18/2005 | 11/03/2007 |
| 23854 | 23854 | 07/02/2001 | 07/03/2011 |
| 23854 | 23854 | 12/11/2001 | 12/11/2011 |
| 23854 | 23854 | 12/10/2002 | 12/10/2012 |
| 23854 | 23854 | 12/10/2002 | 12/11/2012 |
| 23854 | 23854 | 12/09/2003 | 12/09/2013 |
| 23854 | 23854 | 12/09/2003 | 12/10/2013 |
| 23854 | 23854 | 12/14/2004 | 12/14/2014 |
| 23854 | 23854 | 10/18/2005 | 10/18/2015 |
| 23890 | 23890 | 10/18/2005 | 10/18/2015 |
| 23898 | 23898 | 04/14/1998 | 04/15/2008 |
| 23898 | 23898 | 12/14/1999 | 12/14/2009 |
| 23898 | 23898 | 12/14/1999 | 12/15/2009 |
| 23898 | 23898 | 12/12/2000 | 12/12/2010 |
| 23898 | 23898 | 12/11/2001 | 12/11/2011 |
| 23898 | 23898 | 12/11/2001 | 12/12/2011 |
| 23898 | 23898 | 12/10/2002 | 12/10/2012 |
| 23898 | 23898 | 12/10/2002 | 12/11/2012 |
| 23898 | 23898 | 12/09/2003 | 12/09/2013 |
| 23898 | 23898 | 12/09/2003 | 12/10/2013 |
| 23898 | 23898 | 12/14/2004 | 12/14/2014 |
| 23898 | 23898 | 10/18/2005 | 10/18/2015 |
| 24159 | 24159 | 12/12/2000 | 12/12/2010 |
| 24159 | 24159 | 12/12/2000 | 12/13/2010 |
| 24159 | 24159 | 12/11/2001 | 12/11/2011 |
| 24159 | 24159 | 12/10/2002 | 12/10/2012 |
| 24159 | 24159 | 12/10/2002 | 12/11/2012 |
| 24159 | 24159 | 12/09/2003 | 12/09/2013 |
| 24159 | 24159 | 12/09/2003 | 12/10/2013 |
| 24159 | 24159 | 12/14/2004 | 12/14/2014 |
| 24159 | 24159 | 10/18/2005 | 10/18/2015 |
| 24362 | 24362 | 12/14/1999 | 12/14/2009 |
| 24362 | 24362 | 12/14/1999 | 12/15/2009 |
| 24362 | 24362 | 12/14/1999 | 12/15/2009 |

NAV000007

| Optionee ID | SSN | Grant Date | Exer Date |
|---|---|---|---|
| 24362 | 24362 | 12/11/2001 | 12/11/2011 |
| 24362 | 24362 | 12/11/2001 | 12/12/2011 |
| 24362 | 24362 | 12/10/2002 | 12/10/2012 |
| 24362 | 24362 | 12/10/2002 | 12/11/2012 |
| 24382 | 24382 | 08/18/1998 | 08/19/2008 |
| 24382 | 24382 | 12/15/1998 | 12/15/2008 |
| 24382 | 24382 | 12/15/1998 | 12/16/2008 |
| 24382 | 24382 | 12/14/1999 | 12/14/2009 |
| 24839 | 24839 | 12/14/2004 | 12/14/2014 |
| 24839 | 24839 | 10/18/2005 | 10/18/2015 |
| 24980 | 24980 | 12/11/2001 | 12/11/2011 |
| 24980 | 24980 | 12/11/2001 | 12/11/2011 |
| 24980 | 24980 | 12/11/2001 | 12/12/2011 |
| 25015 | 25015 | 12/11/2001 | 12/11/2011 |
| 25015 | 25015 | 12/10/2002 | 12/10/2012 |
| 25015 | 25015 | 12/10/2002 | 12/11/2012 |
| 25015 | 25015 | 12/09/2003 | 12/09/2013 |
| 25015 | 25015 | 12/09/2003 | 12/10/2013 |
| 25015 | 25015 | 12/14/2004 | 12/14/2014 |
| 25015 | 25015 | 10/18/2005 | 10/18/2015 |
| 25575 | 25575 | 12/16/1997 | 12/16/2007 |
| 25575 | 25575 | 12/16/1997 | 12/17/2007 |
| 25575 | 25575 | 12/15/1998 | 12/15/2008 |
| 25575 | 25575 | 12/15/1998 | 12/16/2008 |
| 25575 | 25575 | 12/14/1999 | 12/14/2009 |
| 25575 | 25575 | 12/14/1999 | 12/15/2009 |
| 25575 | 25575 | 12/12/2000 | 12/12/2010 |
| 25575 | 25575 | 12/12/2000 | 12/13/2010 |
| 25575 | 25575 | 12/11/2001 | 12/11/2011 |
| 25575 | 25575 | 12/11/2001 | 12/12/2011 |
| 25575 | 25575 | 12/10/2002 | 12/10/2012 |
| 25575 | 25575 | 12/10/2002 | 12/11/2012 |
| 25575 | 25575 | 12/09/2003 | 12/09/2013 |
| 25575 | 25575 | 12/09/2003 | 12/10/2013 |
| 25575 | 25575 | 12/14/2004 | 12/14/2014 |
| 25575 | 25575 | 10/18/2005 | 10/18/2015 |
| 25674 | 25674 | 02/16/1998 | 02/16/2008 |
| 25674 | 25674 | 12/15/1998 | 12/15/2008 |
| 25674 | 25674 | 12/15/1998 | 12/16/2008 |
| 25674 | 25674 | 12/14/1999 | 12/14/2009 |
| 25674 | 25674 | 12/14/1999 | 12/15/2009 |
| 25674 | 25674 | 12/09/2003 | 12/09/2013 |
| 25674 | 25674 | 12/14/2004 | 12/14/2014 |
| 25674 | 25674 | 10/18/2005 | 10/18/2015 |
| 26186 | 26186 | 12/21/2001 | 12/17/2006 |
| 26186 | 26186 | 12/21/2001 | 12/17/2007 |
| 26186 | 26186 | 12/21/2001 | 12/16/2008 |
| 26186 | 26186 | 12/21/2001 | 12/16/2008 |
| 26186 | 26186 | 12/14/1999 | 12/14/2009 |
| 26186 | 26186 | 12/14/1999 | 12/15/2009 |
| 26186 | 26186 | 12/14/1999 | 12/15/2009 |
| 26186 | 26186 | 12/21/2001 | 12/13/2010 |
| 26186 | 26186 | 08/26/2003 | 12/13/2010 |
| 26186 | 26186 | 08/26/2003 | 12/13/2010 |
| 26186 | 26186 | 12/16/2003 | 12/13/2010 |
| 26186 | 26186 | 12/16/2003 | 12/13/2010 |
| 26186 | 26186 | 12/11/2001 | 12/11/2011 |
| 26186 | 26186 | 12/11/2001 | 12/12/2011 |
| 26186 | 26186 | 12/11/2001 | 12/12/2011 |
| 26186 | 26186 | 12/10/2002 | 12/10/2012 |
| 26186 | 26186 | 12/10/2002 | 12/10/2012 |

NAV000008

| Optionee ID | SSN | Grant Date | Exer Date |
|---|---|---|---|
| 26186 | 26186 | 12/10/2002 | 12/11/2012 |
| 26186 | 26186 | 12/16/2003 | 12/11/2012 |
| 26186 | 26186 | 12/16/2003 | 12/11/2012 |
| 26186 | 26186 | 12/22/2004 | 12/11/2012 |
| 26186 | 26186 | 12/09/2003 | 12/09/2013 |
| 26186 | 26186 | 12/09/2003 | 12/10/2013 |
| 26186 | 26186 | 12/09/2003 | 12/10/2013 |
| 26186 | 26186 | 12/14/2004 | 12/14/2014 |
| 26186 | 26186 | 12/14/2004 | 12/14/2014 |
| 26186 | 26186 | 10/18/2005 | 10/18/2015 |
| 26186 | 26186 | 10/18/2005 | 10/18/2015 |
| 27348 | 27348 | 03/20/2000 | 06/20/2008 |
| 27348 | 27348 | 12/12/2000 | 06/20/2008 |
| 27348 | 27348 | 12/11/2001 | 06/20/2008 |
| 27348 | 27348 | 12/10/2002 | 06/20/2008 |
| 27348 | 27348 | 12/10/2002 | 06/20/2008 |
| 27348 | 27348 | 12/09/2003 | 06/20/2008 |
| 27348 | 27348 | 12/09/2003 | 06/20/2008 |
| 27348 | 27348 | 12/14/2004 | 06/20/2008 |
| 27348 | 27348 | 10/18/2005 | 06/20/2008 |
| 27348 | 27348 | 10/18/2005 | 06/20/2008 |
| 27356 | 27356 | 10/18/2005 | 10/18/2015 |
| 27770 | 27770 | 12/16/1997 | 12/16/2007 |
| 27770 | 27770 | 12/15/1998 | 12/15/2008 |
| 27770 | 27770 | 12/14/1999 | 12/14/2009 |
| 27770 | 27770 | 12/14/1999 | 12/15/2009 |
| 27770 | 27770 | 12/14/1999 | 12/15/2009 |
| 27770 | 27770 | 12/12/2000 | 12/12/2010 |
| 27770 | 27770 | 12/12/2000 | 12/13/2010 |
| 27770 | 27770 | 12/11/2001 | 12/11/2011 |
| 27770 | 27770 | 12/11/2001 | 12/12/2011 |
| 27770 | 27770 | 12/10/2002 | 12/10/2012 |
| 27770 | 27770 | 12/10/2002 | 12/11/2012 |
| 27770 | 27770 | 02/28/2003 | 03/01/2013 |
| 27770 | 27770 | 12/09/2003 | 12/09/2013 |
| 27770 | 27770 | 12/09/2003 | 12/10/2013 |
| 27770 | 27770 | 12/14/2004 | 12/14/2014 |
| 27770 | 27770 | 12/14/2004 | 12/14/2014 |
| 27770 | 27770 | 10/18/2005 | 10/18/2015 |
| 27770 | 27770 | 10/18/2005 | 10/18/2015 |
| 27968 | 27968 | 12/16/1997 | 12/16/2007 |
| 27968 | 27968 | 12/15/1998 | 12/15/2008 |
| 27968 | 27968 | 12/14/1999 | 12/14/2009 |
| 27968 | 27968 | 12/14/1999 | 12/14/2009 |
| 27968 | 27968 | 12/12/2000 | 12/12/2010 |
| 27968 | 27968 | 12/12/2000 | 12/13/2010 |
| 27968 | 27968 | 12/11/2001 | 12/11/2011 |
| 27968 | 27968 | 12/11/2001 | 12/12/2011 |
| 28440 | 28440 | 10/18/2005 | 04/17/2007 |
| 28472 | 28472 | 04/01/2001 | 09/02/2006 |
| 28472 | 28472 | 04/02/2001 | 09/02/2006 |
| 28472 | 28472 | 12/11/2001 | 09/02/2006 |
| 28472 | 28472 | 12/11/2001 | 09/02/2006 |
| 28472 | 28472 | 12/10/2002 | 09/02/2006 |
| 28472 | 28472 | 12/10/2002 | 09/02/2006 |
| 28472 | 28472 | 12/09/2003 | 09/02/2006 |
| 28472 | 28472 | 12/09/2003 | 09/02/2006 |
| 28472 | 28472 | 12/14/2004 | 09/02/2006 |
| 28472 | 28472 | 12/14/2004 | 09/02/2006 |
| 28472 | 28472 | 10/18/2005 | 09/02/2006 |
| 28472 | 28472 | 10/18/2005 | 09/02/2006 |

NAV000009

| Optionee ID | SSN | Grant Date | Exer Date |
|---|---|---|---|
| 28588 | 28588 | 08/01/2001 | 08/02/2011 |
| 28588 | 28588 | 12/11/2001 | 12/11/2011 |
| 28588 | 28588 | 12/10/2002 | 12/10/2012 |
| 28588 | 28588 | 12/10/2002 | 12/11/2012 |
| 28588 | 28588 | 12/09/2003 | 12/09/2013 |
| 28588 | 28588 | 12/09/2003 | 12/10/2013 |
| 28588 | 28588 | 12/14/2004 | 12/14/2014 |
| 28588 | 28588 | 10/18/2005 | 10/18/2015 |
| 28697 | 28697 | 07/03/2000 | 07/04/2010 |
| 28697 | 28697 | 12/12/2000 | 12/12/2010 |
| 28697 | 28697 | 12/11/2001 | 12/11/2011 |
| 28697 | 28697 | 12/10/2002 | 12/10/2012 |
| 28697 | 28697 | 12/10/2002 | 12/11/2012 |
| 28697 | 28697 | 12/09/2003 | 12/09/2013 |
| 28697 | 28697 | 12/09/2003 | 12/10/2013 |
| 28697 | 28697 | 12/14/2004 | 12/14/2014 |
| 28697 | 28697 | 10/18/2005 | 10/18/2015 |
| 28766 | 28766 | 12/14/2004 | 10/27/2007 |
| 28766 | 28766 | 10/18/2005 | 10/27/2007 |
| 28811 | 28811 | 12/16/1997 | 12/17/2007 |
| 28811 | 28811 | 12/15/1998 | 12/15/2008 |
| 28811 | 28811 | 12/15/1998 | 12/16/2008 |
| 28811 | 28811 | 12/14/1999 | 12/14/2009 |
| 28811 | 28811 | 12/14/1999 | 12/15/2009 |
| 28811 | 28811 | 12/12/2000 | 12/12/2010 |
| 28811 | 28811 | 12/12/2000 | 12/13/2010 |
| 28811 | 28811 | 12/11/2001 | 12/11/2011 |
| 28811 | 28811 | 12/11/2001 | 12/12/2011 |
| 28811 | 28811 | 12/10/2002 | 12/10/2012 |
| 28811 | 28811 | 12/10/2002 | 12/11/2012 |
| 28811 | 28811 | 12/09/2003 | 12/09/2013 |
| 28811 | 28811 | 12/09/2003 | 12/10/2013 |
| 28811 | 28811 | 12/14/2004 | 12/14/2014 |
| 28811 | 28811 | 10/18/2005 | 10/18/2015 |
| 28843 | 28843 | 12/14/2004 | 12/14/2014 |
| 28843 | 28843 | 10/18/2005 | 10/18/2015 |
| 29032 | 29032 | 10/18/2005 | 10/18/2015 |
| 29126 | 29126 | 12/14/1999 | 12/14/2009 |
| 29126 | 29126 | 12/14/1999 | 12/15/2009 |
| 29126 | 29126 | 12/12/2000 | 12/12/2010 |
| 29126 | 29126 | 12/11/2001 | 12/11/2011 |
| 29126 | 29126 | 12/11/2001 | 12/12/2011 |
| 29126 | 29126 | 12/10/2002 | 12/10/2012 |
| 29126 | 29126 | 12/10/2002 | 12/11/2012 |
| 29310 | 29310 | 12/14/2004 | 12/14/2014 |
| 29310 | 29310 | 10/18/2005 | 10/18/2015 |
| 29326 | 29326 | 02/29/2000 | 01/02/2010 |
| 29326 | 29326 | 12/11/2001 | 12/11/2011 |
| 29326 | 29326 | 12/10/2002 | 12/10/2012 |
| 29326 | 29326 | 12/10/2002 | 12/10/2012 |
| 29326 | 29326 | 12/10/2002 | 12/11/2012 |
| 29326 | 29326 | 12/09/2003 | 12/09/2013 |
| 29326 | 29326 | 12/09/2003 | 12/10/2013 |
| 29326 | 29326 | 12/14/2004 | 12/14/2014 |
| 29326 | 29326 | 10/18/2005 | 10/18/2015 |
| 29722 | 29722 | 12/14/1999 | 12/15/2009 |
| 29722 | 29722 | 12/14/1999 | 12/15/2009 |
| 29722 | 29722 | 12/11/2001 | 12/11/2011 |
| 29722 | 29722 | 03/18/2004 | 12/12/2011 |
| 29722 | 29722 | 12/10/2002 | 12/10/2012 |
| 29722 | 29722 | 12/10/2002 | 12/11/2012 |

NAV000010

| Optionee ID | SSN | Grant Date | Exer Date |
|---|---|---|---|
| 29722 | 29722 | 03/18/2004 | 12/11/2012 |
| 29722 | 29722 | 12/09/2003 | 12/09/2013 |
| 29722 | 29722 | 12/09/2003 | 12/10/2013 |
| 29722 | 29722 | 12/14/2004 | 12/14/2014 |
| 29722 | 29722 | 12/14/2004 | 12/14/2014 |
| 29722 | 29722 | 10/18/2005 | 10/18/2015 |
| 29722 | 29722 | 10/18/2005 | 10/18/2015 |
| 29956 | 29956 | 03/15/2001 | 03/16/2011 |
| 29956 | 29956 | 12/11/2001 | 12/11/2011 |
| 29956 | 29956 | 12/10/2002 | 12/10/2012 |
| 29956 | 29956 | 12/10/2002 | 12/11/2012 |
| 29956 | 29956 | 12/09/2003 | 12/09/2013 |
| 29956 | 29956 | 12/09/2003 | 12/10/2013 |
| 29956 | 29956 | 12/14/2004 | 12/14/2014 |
| 29956 | 29956 | 10/18/2005 | 10/18/2015 |
| 37452 | 37452 | 02/01/1999 | 10/26/2007 |
| 37453 | 37453 | 12/14/1999 | 12/15/2009 |
| 37453 | 37453 | 12/14/1999 | 12/15/2009 |
| 37453 | 37453 | 12/12/2000 | 12/13/2010 |
| 37453 | 37453 | 12/11/2001 | 12/12/2011 |
| 37453 | 37453 | 12/10/2002 | 12/11/2012 |
| 37453 | 37453 | 12/09/2003 | 12/09/2013 |
| 37453 | 37453 | 12/14/2004 | 12/14/2014 |
| 37453 | 37453 | 12/14/2004 | 12/14/2014 |
| 37453 | 37453 | 10/18/2005 | 10/18/2015 |
| 37453 | 37453 | 10/18/2005 | 10/18/2015 |
| 37455 | 37455 | 12/11/2001 | 12/12/2011 |
| 37455 | 37455 | 12/10/2002 | 12/11/2012 |
| 37455 | 37455 | 12/09/2003 | 12/09/2013 |
| 37455 | 37455 | 12/14/2004 | 12/14/2014 |
| 37455 | 37455 | 10/18/2005 | 10/18/2015 |
| 40128 | 40128 | 12/11/2002 | 12/11/2012 |
| 40128 | 40128 | 12/10/2003 | 12/10/2013 |
| 40128 | 40128 | 12/14/2004 | 12/14/2014 |
| 40128 | 40128 | 10/18/2005 | 10/18/2015 |
| 40343 | 40343 | 12/15/1998 | 12/15/2008 |
| 40343 | 40343 | 12/14/1999 | 12/14/2009 |
| 40343 | 40343 | 12/11/2001 | 12/11/2011 |
| 40343 | 40343 | 12/11/2001 | 12/12/2011 |
| 40343 | 40343 | 12/10/2002 | 12/10/2012 |
| 40343 | 40343 | 12/10/2002 | 12/11/2012 |
| 40728 | 40728 | 12/12/2001 | 12/12/2011 |
| 40728 | 40728 | 12/11/2002 | 12/11/2012 |
| 40728 | 40728 | 12/10/2003 | 12/10/2013 |
| 40728 | 40728 | 12/14/2004 | 12/14/2014 |
| 40728 | 40728 | 10/18/2005 | 10/18/2015 |
| 40738 | 40738 | 10/18/2005 | 10/18/2015 |
| 40742 | 40742 | 12/15/1998 | 12/15/2008 |
| 40742 | 40742 | 12/14/1999 | 12/14/2009 |
| 40742 | 40742 | 12/12/2000 | 12/12/2010 |
| 40742 | 40742 | 12/11/2001 | 12/11/2011 |
| 40742 | 40742 | 12/11/2001 | 12/12/2011 |
| 40742 | 40742 | 12/10/2002 | 12/10/2012 |
| 40742 | 40742 | 12/10/2002 | 12/11/2012 |
| 40997 | 40997 | 12/15/1998 | 12/15/2008 |
| 40997 | 40997 | 12/15/1998 | 12/16/2008 |
| 40997 | 40997 | 12/14/1999 | 12/14/2009 |
| 40997 | 40997 | 12/12/2000 | 12/12/2010 |
| 40997 | 40997 | 12/11/2001 | 12/11/2011 |
| 40997 | 40997 | 12/11/2001 | 12/12/2011 |
| 40997 | 40997 | 12/10/2002 | 12/10/2012 |

NAV000011

| Optionee ID | SSN | Grant Date | Expr Date |
|---|---|---|---|
| 40997 | 40997 | 12/10/2002 | 12/11/2012 |
| 40997 | 40997 | 12/09/2003 | 12/09/2013 |
| 40997 | 40997 | 12/09/2003 | 12/10/2013 |
| 40997 | 40997 | 12/14/2004 | 12/14/2014 |
| 40997 | 40997 | 10/18/2005 | 10/18/2015 |
| 41008 | 41008 | 12/14/1999 | 12/14/2009 |
| 41008 | 41008 | 12/12/2000 | 12/12/2010 |
| 41008 | 41008 | 12/11/2001 | 12/11/2011 |
| 41008 | 41008 | 12/11/2001 | 12/12/2011 |
| 41008 | 41008 | 12/10/2002 | 12/10/2012 |
| 41008 | 41008 | 12/10/2002 | 12/11/2012 |
| 41008 | 41008 | 12/09/2003 | 12/09/2013 |
| 41008 | 41008 | 12/09/2003 | 12/10/2013 |
| 41008 | 41008 | 12/14/2004 | 12/14/2014 |
| 41008 | 41008 | 10/18/2005 | 10/18/2015 |
| 41008 | 41008 | 10/18/2005 | 10/18/2015 |
| 41099 | 41099 | 10/18/2005 | 10/18/2015 |
| 41151 | 41151 | 09/01/2003 | 09/02/2013 |
| 41151 | 41151 | 12/09/2003 | 12/09/2013 |
| 41151 | 41151 | 12/14/2004 | 12/14/2014 |
| 41151 | 41151 | 10/18/2005 | 10/18/2015 |
| 41253 | 41253 | 04/01/2002 | 04/02/2012 |
| 41253 | 41253 | 12/10/2002 | 12/10/2012 |
| 41253 | 41253 | 12/10/2002 | 12/11/2012 |
| 41253 | 41253 | 12/09/2003 | 12/09/2013 |
| 41253 | 41253 | 12/14/2004 | 12/14/2014 |
| 41253 | 41253 | 10/18/2005 | 10/18/2015 |
| 41388 | 41388 | 12/16/1997 | 12/16/2007 |
| 41388 | 41388 | 12/14/1999 | 12/14/2009 |
| 41388 | 41388 | 12/12/2000 | 12/12/2010 |
| 41388 | 41388 | 12/11/2001 | 12/11/2011 |
| 41388 | 41388 | 08/12/2002 | 08/13/2012 |
| 41388 | 41388 | 12/10/2002 | 12/10/2012 |
| 41388 | 41388 | 12/10/2002 | 12/11/2012 |
| 41388 | 41388 | 12/09/2003 | 12/09/2013 |
| 41388 | 41388 | 12/09/2003 | 12/10/2013 |
| 41388 | 41388 | 12/14/2004 | 12/14/2014 |
| 41388 | 41388 | 12/14/2004 | 12/14/2014 |
| 41388 | 41388 | 10/18/2005 | 10/18/2015 |
| 41388 | 41388 | 10/18/2005 | 10/18/2015 |
| 41909 | 41909 | 04/03/2000 | 04/04/2010 |
| 41909 | 41909 | 12/11/2001 | 12/11/2011 |
| 41909 | 41909 | 12/10/2002 | 12/10/2012 |
| 41909 | 41909 | 12/10/2002 | 12/11/2012 |
| 41909 | 41909 | 12/09/2003 | 12/09/2013 |
| 41909 | 41909 | 12/09/2003 | 12/10/2013 |
| 41909 | 41909 | 12/14/2004 | 12/14/2014 |
| 41909 | 41909 | 10/18/2005 | 10/18/2015 |
| 41920 | 41920 | 10/01/2003 | 10/02/2013 |
| 41920 | 41920 | 12/09/2003 | 12/09/2013 |
| 41920 | 41920 | 12/14/2004 | 12/14/2014 |
| 42177 | 42177 | 10/18/2005 | 10/18/2015 |
| 42324 | 42324 | 10/03/2000 | 12/17/2006 |
| 42324 | 42324 | 10/03/2000 | 12/17/2007 |
| 42324 | 42324 | 10/03/2000 | 12/16/2008 |
| 42324 | 42324 | 12/14/1999 | 12/14/2009 |
| 42324 | 42324 | 12/14/1999 | 12/15/2009 |
| 42324 | 42324 | 12/12/2000 | 12/12/2010 |
| 42324 | 42324 | 12/12/2000 | 12/13/2010 |
| 42324 | 42324 | 12/12/2000 | 12/13/2010 |
| 42324 | 42324 | 12/11/2001 | 12/11/2011 |

NAV000012

| Optionee ID | SSN | Grant Date | Exer Date |
|---|---|---|---|
| 42324 | 42324 | 12/11/2001 | 12/12/2011 |
| 42324 | 42324 | 12/11/2001 | 12/12/2011 |
| 42324 | 42324 | 04/16/2002 | 04/17/2012 |
| 42324 | 42324 | 12/10/2002 | 12/10/2012 |
| 42324 | 42324 | 12/10/2002 | 12/11/2012 |
| 42324 | 42324 | 12/10/2002 | 12/11/2012 |
| 42324 | 42324 | 02/19/2003 | 02/20/2013 |
| 42324 | 42324 | 12/09/2003 | 12/09/2013 |
| 42324 | 42324 | 12/09/2003 | 12/10/2013 |
| 42324 | 42324 | 12/09/2003 | 12/10/2013 |
| 42324 | 42324 | 12/14/2004 | 12/14/2014 |
| 42324 | 42324 | 12/14/2004 | 12/14/2014 |
| 42324 | 42324 | 10/18/2005 | 10/18/2015 |
| 42324 | 42324 | 10/18/2005 | 10/18/2015 |
| 42483 | 42483 | 12/11/2001 | 12/11/2011 |
| 42483 | 42483 | 12/10/2002 | 12/10/2012 |
| 42483 | 42483 | 12/10/2002 | 12/11/2012 |
| 42483 | 42483 | 12/09/2003 | 12/09/2013 |
| 42483 | 42483 | 12/09/2003 | 12/10/2013 |
| 42483 | 42483 | 12/14/2004 | 12/14/2014 |
| 42483 | 42483 | 10/18/2005 | 10/18/2015 |
| 42772 | 42772 | 12/14/2004 | 12/14/2014 |
| 42772 | 42772 | 10/18/2005 | 10/18/2015 |
| 42931 | 42931 | 12/15/1999 | 12/14/2009 |
| 42931 | 42931 | 12/12/2001 | 12/12/2011 |
| 42931 | 42931 | 12/10/2003 | 12/10/2013 |
| 42931 | 42931 | 12/14/2004 | 12/14/2014 |
| 42931 | 42931 | 10/18/2005 | 10/18/2015 |
| 42973 | 42973 | 12/14/1999 | 12/14/2009 |
| 42973 | 42973 | 12/11/2001 | 12/11/2011 |
| 42973 | 42973 | 12/11/2001 | 12/12/2011 |
| 42973 | 42973 | 12/10/2002 | 12/10/2012 |
| 42973 | 42973 | 12/10/2002 | 12/11/2012 |
| 42973 | 42973 | 12/09/2003 | 12/09/2013 |
| 42973 | 42973 | 12/09/2003 | 12/10/2013 |
| 42973 | 42973 | 12/14/2004 | 12/14/2014 |
| 42973 | 42973 | 10/18/2005 | 10/18/2015 |
| 43012 | 43012 | 12/09/2003 | 12/09/2013 |
| 43012 | 43012 | 12/14/2004 | 12/14/2014 |
| 43012 | 43012 | 10/18/2005 | 10/18/2015 |
| 43157 | 43157 | 12/11/2001 | 12/11/2011 |
| 43157 | 43157 | 12/10/2002 | 12/10/2012 |
| 43157 | 43157 | 12/10/2002 | 12/11/2012 |
| 43157 | 43157 | 12/09/2003 | 12/09/2013 |
| 43157 | 43157 | 12/09/2003 | 12/10/2013 |
| 43157 | 43157 | 12/14/2004 | 12/14/2014 |
| 43157 | 43157 | 10/18/2005 | 10/18/2015 |
| 43318 | 43318 | 12/14/2004 | 12/14/2014 |
| 43318 | 43318 | 10/18/2005 | 10/18/2015 |
| 43457 | 43457 | 10/18/2005 | 10/18/2015 |
| 43558 | 43558 | 10/18/2005 | 10/18/2015 |
| 43919 | 43919 | 12/16/1997 | 12/16/2007 |
| 43919 | 43919 | 12/16/1997 | 12/17/2007 |
| 43919 | 43919 | 12/15/1998 | 12/15/2008 |
| 43919 | 43919 | 12/15/1998 | 12/16/2008 |
| 43919 | 43919 | 12/14/1999 | 12/14/2009 |
| 43919 | 43919 | 12/12/2000 | 12/12/2010 |
| 43919 | 43919 | 12/12/2000 | 12/13/2010 |
| 43919 | 43919 | 12/11/2001 | 12/11/2011 |
| 43919 | 43919 | 03/11/2002 | 03/12/2012 |
| 43919 | 43919 | 12/10/2002 | 12/10/2012 |

NAV000013

| Optionee ID | SSN | Grant Date | Exer Date |
|---|---|---|---|
| 43919 | 43919 | 12/10/2002 | 12/11/2012 |
| 43919 | 43919 | 12/09/2003 | 12/09/2013 |
| 43919 | 43919 | 12/09/2003 | 12/10/2013 |
| 43919 | 43919 | 12/14/2004 | 12/14/2014 |
| 43919 | 43919 | 12/14/2004 | 12/14/2014 |
| 43919 | 43919 | 10/18/2005 | 10/18/2015 |
| 43919 | 43919 | 10/18/2005 | 10/18/2015 |
| 44061 | 44061 | 12/14/1999 | 12/14/2009 |
| 44061 | 44061 | 12/14/1999 | 12/15/2009 |
| 44061 | 44061 | 12/14/1999 | 12/15/2009 |
| 44061 | 44061 | 12/12/2000 | 12/12/2010 |
| 44061 | 44061 | 12/11/2001 | 12/11/2011 |
| 44061 | 44061 | 12/11/2001 | 12/12/2011 |
| 44061 | 44061 | 12/10/2002 | 12/10/2012 |
| 44061 | 44061 | 12/10/2002 | 12/11/2012 |
| 44061 | 44061 | 02/15/2003 | 02/16/2013 |
| 44061 | 44061 | 12/09/2003 | 12/09/2013 |
| 44061 | 44061 | 12/09/2003 | 12/10/2013 |
| 44061 | 44061 | 12/14/2004 | 12/14/2014 |
| 44061 | 44061 | 12/14/2004 | 12/14/2014 |
| 44061 | 44061 | 10/18/2005 | 10/18/2015 |
| 44061 | 44061 | 10/18/2005 | 10/18/2015 |
| 44398 | 44398 | 12/14/1999 | 12/14/2009 |
| 44398 | 44398 | 12/11/2001 | 12/11/2011 |
| 44398 | 44398 | 12/11/2001 | 12/12/2011 |
| 44398 | 44398 | 12/10/2002 | 12/10/2012 |
| 44398 | 44398 | 12/10/2002 | 12/10/2012 |
| 44398 | 44398 | 12/10/2002 | 12/11/2012 |
| 44398 | 44398 | 12/09/2003 | 12/09/2013 |
| 44398 | 44398 | 12/09/2003 | 12/10/2013 |
| 44398 | 44398 | 12/14/2004 | 12/14/2014 |
| 44520 | 44520 | 04/16/2001 | 01/12/2008 |
| 44520 | 44520 | 12/11/2001 | 01/12/2008 |
| 44520 | 44520 | 12/10/2002 | 01/12/2008 |
| 44520 | 44520 | 12/10/2002 | 01/12/2008 |
| 44520 | 44520 | 12/09/2003 | 01/12/2008 |
| 44520 | 44520 | 12/09/2003 | 01/12/2008 |
| 44520 | 44520 | 12/14/2004 | 01/12/2008 |
| 44520 | 44520 | 10/18/2005 | 01/12/2008 |
| 44689 | 44689 | 10/18/2005 | 10/18/2015 |
| 44725 | 44725 | 12/11/2001 | 12/11/2011 |
| 44725 | 44725 | 12/10/2002 | 12/10/2012 |
| 44725 | 44725 | 12/10/2002 | 12/11/2012 |
| 44725 | 44725 | 12/09/2003 | 12/09/2013 |
| 44725 | 44725 | 12/09/2003 | 12/10/2013 |
| 44725 | 44725 | 12/14/2004 | 12/14/2014 |
| 44725 | 44725 | 12/14/2004 | 12/14/2014 |
| 44725 | 44725 | 10/18/2005 | 10/18/2015 |
| 44725 | 44725 | 10/18/2005 | 10/18/2015 |
| 44786 | 44786 | 12/14/2004 | 06/05/2008 |
| 44786 | 44786 | 10/18/2005 | 06/05/2008 |
| 45173 | 45173 | 12/15/1998 | 12/15/2008 |
| 45173 | 45173 | 12/10/2002 | 12/10/2012 |
| 45173 | 45173 | 12/10/2002 | 12/11/2012 |
| 45962 | 45962 | 12/11/2001 | 12/11/2011 |
| 45962 | 45962 | 12/10/2002 | 12/10/2012 |
| 45962 | 45962 | 12/10/2002 | 12/11/2012 |
| 45962 | 45962 | 12/09/2003 | 12/09/2013 |
| 45962 | 45962 | 12/09/2003 | 12/10/2013 |
| 45962 | 45962 | 12/14/2004 | 12/14/2014 |
| 45962 | 45962 | 10/18/2005 | 10/18/2015 |

NAV000014

| Optionee ID | SSN | Grant Date | Expr Date |
|---|---|---|---|
| 45977 | 45977 | 12/15/1998 | 12/15/2008 |
| 45977 | 45977 | 12/14/1999 | 12/14/2009 |
| 45977 | 45977 | 12/12/2000 | 12/12/2010 |
| 45977 | 45977 | 12/12/2000 | 12/13/2010 |
| 45977 | 45977 | 12/11/2001 | 12/11/2011 |
| 45977 | 45977 | 12/11/2001 | 12/12/2011 |
| 45977 | 45977 | 12/10/2002 | 12/10/2012 |
| 45977 | 45977 | 12/10/2002 | 12/11/2012 |
| 45977 | 45977 | 12/09/2003 | 12/09/2013 |
| 45977 | 45977 | 12/09/2003 | 12/10/2013 |
| 45977 | 45977 | 12/14/2004 | 12/14/2014 |
| 45977 | 45977 | 10/18/2005 | 10/18/2015 |
| 46406 | 46406 | 01/01/2000 | 01/02/2010 |
| 46406 | 46406 | 12/12/2000 | 12/12/2010 |
| 46406 | 46406 | 12/11/2001 | 12/11/2011 |
| 46406 | 46406 | 12/10/2002 | 12/10/2012 |
| 46406 | 46406 | 12/10/2002 | 12/11/2012 |
| 46406 | 46406 | 12/09/2003 | 12/09/2013 |
| 46406 | 46406 | 12/09/2003 | 12/10/2013 |
| 46406 | 46406 | 12/14/2004 | 12/14/2014 |
| 46406 | 46406 | 10/18/2005 | 10/18/2015 |
| 46474 | 46474 | 12/11/2001 | 09/16/2006 |
| 46474 | 46474 | 12/11/2001 | 09/16/2006 |
| 46474 | 46474 | 12/10/2002 | 09/16/2006 |
| 46474 | 46474 | 12/10/2002 | 09/16/2006 |
| 46474 | 46474 | 12/09/2003 | 09/16/2006 |
| 46474 | 46474 | 12/09/2003 | 09/16/2006 |
| 46474 | 46474 | 12/14/2004 | 09/16/2006 |
| 46474 | 46474 | 12/14/2004 | 09/16/2006 |
| 46474 | 46474 | 10/18/2005 | 09/16/2006 |
| 46474 | 46474 | 10/18/2005 | 09/16/2006 |
| 46519 | 46519 | 12/14/2004 | 12/14/2014 |
| 46519 | 46519 | 10/18/2005 | 10/18/2015 |
| 47002 | 47002 | 10/18/2005 | 10/18/2015 |
| 47023 | 47023 | 06/01/2002 | 06/02/2012 |
| 47023 | 47023 | 12/10/2002 | 12/10/2012 |
| 47023 | 47023 | 12/10/2002 | 12/11/2012 |
| 47023 | 47023 | 12/09/2003 | 12/09/2013 |
| 47023 | 47023 | 12/14/2004 | 12/14/2014 |
| 47023 | 47023 | 10/18/2005 | 10/18/2015 |
| 47588 | 47588 | 01/01/2003 | 01/02/2013 |
| 47588 | 47588 | 12/09/2003 | 12/09/2013 |
| 47588 | 47588 | 12/14/2004 | 12/14/2014 |
| 47588 | 47588 | 10/18/2005 | 10/18/2015 |
| 48982 | 48982 | 12/16/1996 | 12/17/2006 |
| 48982 | 48982 | 12/16/1997 | 12/17/2007 |
| 48982 | 48982 | 12/15/1998 | 12/15/2008 |
| 48982 | 48982 | 12/15/1998 | 12/16/2008 |
| 48982 | 48982 | 12/14/1999 | 12/14/2009 |
| 48982 | 48982 | 12/12/2000 | 12/12/2010 |
| 48982 | 48982 | 12/12/2000 | 12/13/2010 |
| 48982 | 48982 | 12/11/2001 | 12/11/2011 |
| 48982 | 48982 | 12/11/2001 | 12/12/2011 |
| 48982 | 48982 | 12/10/2002 | 12/10/2012 |
| 48982 | 48982 | 12/10/2002 | 12/11/2012 |
| 48982 | 48982 | 12/09/2003 | 12/09/2013 |
| 48982 | 48982 | 12/09/2003 | 12/10/2013 |
| 48982 | 48982 | 12/14/2004 | 12/14/2014 |
| 48982 | 48982 | 10/18/2005 | 10/18/2015 |
| 49098 | 49098 | 05/01/1999 | 05/02/2009 |
| 49098 | 49098 | 12/14/1999 | 12/14/2009 |

NAV000015

| Optionee ID | SSN | Grant Date | Expr Date |
|---|---|---|---|
| 49098 | 49098 | 12/14/1999 | 12/15/2009 |
| 49098 | 49098 | 12/12/2000 | 12/12/2010 |
| 49098 | 49098 | 12/12/2000 | 12/13/2010 |
| 49098 | 49098 | 07/01/2001 | 07/02/2011 |
| 49098 | 49098 | 12/11/2001 | 12/11/2011 |
| 49098 | 49098 | 12/11/2001 | 12/12/2011 |
| 49098 | 49098 | 12/10/2002 | 12/10/2012 |
| 49098 | 49098 | 12/10/2002 | 12/11/2012 |
| 49098 | 49098 | 12/09/2003 | 12/09/2013 |
| 49098 | 49098 | 12/09/2003 | 12/10/2013 |
| 49098 | 49098 | 12/14/2004 | 12/14/2014 |
| 49098 | 49098 | 12/14/2004 | 12/14/2014 |
| 49098 | 49098 | 10/18/2005 | 10/18/2015 |
| 49098 | 49098 | 10/18/2005 | 10/18/2015 |
| 49723 | 49723 | 06/09/1998 | 03/31/2007 |
| 49723 | 49723 | 06/09/1998 | 03/31/2007 |
| 49723 | 49723 | 12/15/1998 | 03/31/2007 |
| 49723 | 49723 | 12/15/1998 | 03/31/2007 |
| 49723 | 49723 | 12/14/1999 | 03/31/2007 |
| 49723 | 49723 | 12/14/1999 | 03/31/2007 |
| 49723 | 49723 | 12/12/2000 | 03/31/2007 |
| 49723 | 49723 | 12/12/2000 | 03/31/2007 |
| 49723 | 49723 | 12/11/2001 | 03/31/2007 |
| 49723 | 49723 | 12/11/2001 | 03/31/2007 |
| 49723 | 49723 | 12/10/2002 | 03/31/2007 |
| 49723 | 49723 | 12/10/2002 | 03/31/2007 |
| 49723 | 49723 | 12/09/2003 | 03/31/2007 |
| 49723 | 49723 | 12/09/2003 | 03/31/2007 |
| 49723 | 49723 | 12/14/2004 | 03/31/2007 |
| 49723 | 49723 | 12/14/2004 | 03/31/2007 |
| 49723 | 49723 | 10/18/2005 | 03/31/2007 |
| 49723 | 49723 | 10/18/2005 | 03/31/2007 |
| 59323 | 59323 | 06/01/2002 | 09/16/2006 |
| 59323 | 59323 | 12/10/2002 | 09/16/2006 |
| 59323 | 59323 | 12/10/2002 | 09/16/2006 |
| 59323 | 59323 | 12/09/2003 | 09/16/2006 |
| 59323 | 59323 | 12/14/2004 | 09/16/2006 |
| 59323 | 59323 | 10/18/2005 | 09/16/2006 |
| 60117 | 60117 | 12/11/2001 | 12/11/2011 |
| 60117 | 60117 | 12/10/2002 | 12/10/2012 |
| 60117 | 60117 | 12/10/2002 | 12/11/2012 |
| 60117 | 60117 | 12/09/2003 | 12/09/2013 |
| 60117 | 60117 | 12/09/2003 | 12/10/2013 |
| 60117 | 60117 | 12/14/2004 | 12/14/2014 |
| 60117 | 60117 | 10/18/2005 | 10/18/2015 |
| 60472 | 60472 | 12/16/1996 | 12/16/2006 |
| 60472 | 60472 | 12/16/1997 | 12/16/2007 |
| 60472 | 60472 | 12/16/1997 | 12/17/2007 |
| 60472 | 60472 | 12/15/1998 | 12/15/2008 |
| 60472 | 60472 | 12/15/1998 | 12/16/2008 |
| 60472 | 60472 | 12/14/1999 | 12/14/2009 |
| 60472 | 60472 | 12/12/2000 | 12/12/2010 |
| 60472 | 60472 | 12/12/2000 | 12/13/2010 |
| 60472 | 60472 | 12/11/2001 | 12/11/2011 |
| 60472 | 60472 | 12/11/2001 | 12/12/2011 |
| 60472 | 60472 | 12/10/2002 | 12/10/2012 |
| 60472 | 60472 | 12/10/2002 | 12/11/2012 |
| 60472 | 60472 | 12/09/2003 | 12/09/2013 |
| 60472 | 60472 | 12/09/2003 | 12/10/2013 |
| 60472 | 60472 | 12/14/2004 | 12/14/2014 |
| 60472 | 60472 | 10/18/2005 | 10/18/2015 |

NAV000016

| Optionee ID | SSN | Grant Date | Expr Date |
|---|---|---|---|
| 60909 | 60909 | 12/14/2004 | 12/14/2014 |
| 60909 | 60909 | 10/18/2005 | 10/18/2015 |
| 61055 | 61055 | 10/18/2005 | 10/18/2015 |
| 61088 | 61088 | 01/01/2000 | 01/02/2010 |
| 61088 | 61088 | 12/12/2000 | 12/12/2010 |
| 61088 | 61088 | 12/11/2001 | 12/11/2011 |
| 61088 | 61088 | 12/10/2002 | 12/10/2012 |
| 61088 | 61088 | 12/10/2002 | 12/11/2012 |
| 61088 | 61088 | 12/09/2003 | 12/09/2013 |
| 61088 | 61088 | 12/09/2003 | 12/10/2013 |
| 61088 | 61088 | 12/14/2004 | 12/14/2014 |
| 61088 | 61088 | 10/18/2005 | 10/18/2015 |
| 61128 | 61128 | 12/14/2004 | 12/14/2014 |
| 61128 | 61128 | 10/18/2005 | 10/18/2015 |
| 61194 | 61194 | 12/15/1998 | 12/15/2008 |
| 61194 | 61194 | 12/15/1998 | 12/16/2008 |
| 61194 | 61194 | 12/14/1999 | 12/14/2009 |
| 61194 | 61194 | 12/14/1999 | 12/15/2009 |
| 61194 | 61194 | 12/11/2001 | 12/11/2011 |
| 61194 | 61194 | 12/11/2001 | 12/12/2011 |
| 61194 | 61194 | 12/10/2002 | 12/10/2012 |
| 61194 | 61194 | 12/10/2002 | 12/11/2012 |
| 61194 | 61194 | 12/09/2003 | 12/09/2013 |
| 61194 | 61194 | 12/09/2003 | 12/10/2013 |
| 61194 | 61194 | 12/14/2004 | 12/14/2014 |
| 61194 | 61194 | 12/14/2004 | 12/14/2014 |
| 61194 | 61194 | 10/18/2005 | 10/18/2015 |
| 61194 | 61194 | 10/18/2005 | 10/18/2015 |
| 61668 | 61668 | 12/11/2002 | 12/11/2012 |
| 61668 | 61668 | 12/10/2003 | 12/10/2013 |
| 61668 | 61668 | 12/14/2004 | 12/14/2014 |
| 61668 | 61668 | 10/18/2005 | 10/18/2015 |
| 61669 | 61669 | 10/18/2005 | 10/18/2015 |
| 61670 | 61670 | 10/18/2005 | 10/18/2015 |
| 61671 | 61671 | 10/18/2005 | 10/18/2015 |
| 61711 | 61711 | 03/01/2000 | 07/25/2008 |
| 61711 | 61711 | 12/11/2001 | 07/25/2008 |
| 61711 | 61711 | 12/10/2002 | 07/25/2008 |
| 61711 | 61711 | 12/10/2002 | 07/25/2008 |
| 61711 | 61711 | 12/09/2003 | 07/25/2008 |
| 61711 | 61711 | 12/09/2003 | 07/25/2008 |
| 61711 | 61711 | 12/14/2004 | 07/25/2008 |
| 61711 | 61711 | 10/18/2005 | 07/25/2008 |
| 61721 | 61721 | 12/14/1999 | 12/14/2009 |
| 61721 | 61721 | 12/14/1999 | 12/15/2009 |
| 61721 | 61721 | 12/11/2001 | 12/11/2011 |
| 61721 | 61721 | 12/11/2001 | 12/12/2011 |
| 61721 | 61721 | 12/10/2002 | 12/10/2012 |
| 61721 | 61721 | 12/10/2002 | 12/11/2012 |
| 61721 | 61721 | 12/09/2003 | 12/09/2013 |
| 61721 | 61721 | 12/09/2003 | 12/10/2013 |
| 61721 | 61721 | 12/14/2004 | 12/14/2014 |
| 61721 | 61721 | 10/18/2005 | 10/18/2015 |
| 61782 | 61782 | 12/14/1999 | 12/14/2009 |
| 61782 | 61782 | 12/14/1999 | 12/15/2009 |
| 61782 | 61782 | 12/11/2001 | 12/11/2011 |
| 61782 | 61782 | 12/11/2001 | 12/12/2011 |
| 61782 | 61782 | 12/10/2002 | 12/10/2012 |
| 61782 | 61782 | 12/10/2002 | 12/11/2012 |
| 61782 | 61782 | 12/09/2003 | 12/09/2013 |
| 61782 | 61782 | 12/09/2003 | 12/10/2013 |

NAV000017

| Optionee ID | SSN | Grant Date | Exer Date |
|---|---|---|---|
| 61782 | 61782 | 12/14/2004 | 12/14/2014 |
| 61782 | 61782 | 12/14/2004 | 12/14/2014 |
| 61782 | 61782 | 10/18/2005 | 10/18/2015 |
| 61782 | 61782 | 10/18/2005 | 10/18/2015 |
| 62011 | 62011 | 01/01/2003 | 01/02/2013 |
| 62011 | 62011 | 12/09/2003 | 12/09/2013 |
| 62011 | 62011 | 12/14/2004 | 12/14/2014 |
| 62011 | 62011 | 10/18/2005 | 10/18/2015 |
| 62274 | 62274 | 01/01/2003 | 01/02/2013 |
| 62274 | 62274 | 12/09/2003 | 12/09/2013 |
| 62274 | 62274 | 12/14/2004 | 12/14/2014 |
| 62274 | 62274 | 10/18/2005 | 10/18/2015 |
| 62406 | 62406 | 12/11/2001 | 12/11/2011 |
| 62406 | 62406 | 12/10/2002 | 12/10/2012 |
| 62406 | 62406 | 12/10/2002 | 12/11/2012 |
| 62406 | 62406 | 12/09/2003 | 12/09/2013 |
| 62406 | 62406 | 12/09/2003 | 12/10/2013 |
| 63037 | 63037 | 12/15/1998 | 12/16/2008 |
| 63037 | 63037 | 12/14/1999 | 12/14/2009 |
| 63037 | 63037 | 12/12/2000 | 12/12/2010 |
| 63037 | 63037 | 12/12/2000 | 12/13/2010 |
| 63037 | 63037 | 12/11/2001 | 12/11/2011 |
| 63037 | 63037 | 12/11/2001 | 12/12/2011 |
| 63037 | 63037 | 12/10/2002 | 12/10/2012 |
| 63037 | 63037 | 12/10/2002 | 12/11/2012 |
| 63037 | 63037 | 12/09/2003 | 12/09/2013 |
| 63037 | 63037 | 12/09/2003 | 12/10/2013 |
| 63037 | 63037 | 12/14/2004 | 12/14/2014 |
| 63037 | 63037 | 10/18/2005 | 10/18/2015 |
| 63107 | 63107 | 12/14/2004 | 12/14/2014 |
| 63107 | 63107 | 10/18/2005 | 10/18/2015 |
| 63265 | 63265 | 12/09/2003 | 12/09/2013 |
| 63265 | 63265 | 12/14/2004 | 12/14/2014 |
| 63265 | 63265 | 10/18/2005 | 10/18/2015 |
| 63573 | 63573 | 06/01/2001 | 06/02/2011 |
| 63573 | 63573 | 12/11/2001 | 12/11/2011 |
| 63573 | 63573 | 12/10/2002 | 12/10/2012 |
| 63573 | 63573 | 12/10/2002 | 12/11/2012 |
| 63573 | 63573 | 12/09/2003 | 12/09/2013 |
| 63573 | 63573 | 12/09/2003 | 12/10/2013 |
| 63573 | 63573 | 12/14/2004 | 12/14/2014 |
| 63573 | 63573 | 10/18/2005 | 10/18/2015 |
| 63723 | 63723 | 12/15/1998 | 12/15/2008 |
| 63723 | 63723 | 12/15/1998 | 12/16/2008 |
| 63723 | 63723 | 08/15/2005 | 12/16/2008 |
| 63723 | 63723 | 12/14/1999 | 12/14/2009 |
| 63723 | 63723 | 12/12/2000 | 12/12/2010 |
| 63723 | 63723 | 12/11/2001 | 12/11/2011 |
| 63723 | 63723 | 12/11/2001 | 12/12/2011 |
| 63723 | 63723 | 12/10/2002 | 12/10/2012 |
| 63723 | 63723 | 12/10/2002 | 12/11/2012 |
| 63723 | 63723 | 12/09/2003 | 12/09/2013 |
| 63723 | 63723 | 12/09/2003 | 12/10/2013 |
| 63723 | 63723 | 12/14/2004 | 12/14/2014 |
| 63723 | 63723 | 12/14/2004 | 12/14/2014 |
| 63723 | 63723 | 10/18/2005 | 10/18/2015 |
| 63723 | 63723 | 10/18/2005 | 10/18/2015 |
| 63895 | 63895 | 12/15/1998 | 12/15/2008 |
| 63895 | 63895 | 12/14/1999 | 12/14/2009 |
| 63895 | 63895 | 12/14/1999 | 12/15/2009 |
| 63895 | 63895 | 04/01/2000 | 04/02/2010 |

NAV000018

| Optionee ID | SSN | Grant Date | Exer Date |
|---|---|---|---|
| 63895 | 63895 | 12/12/2000 | 12/12/2010 |
| 63895 | 63895 | 12/11/2001 | 12/11/2011 |
| 63895 | 63895 | 12/11/2001 | 12/12/2011 |
| 63895 | 63895 | 12/10/2002 | 12/10/2012 |
| 63895 | 63895 | 12/10/2002 | 12/11/2012 |
| 63895 | 63895 | 12/09/2003 | 12/09/2013 |
| 63895 | 63895 | 12/09/2003 | 12/10/2013 |
| 63895 | 63895 | 12/14/2004 | 12/14/2014 |
| 63895 | 63895 | 12/14/2004 | 12/14/2014 |
| 63895 | 63895 | 10/18/2005 | 10/18/2015 |
| 63895 | 63895 | 10/18/2005 | 10/18/2015 |
| 64582 | 64582 | 07/27/2000 | 12/17/2006 |
| 64582 | 64582 | 12/19/2001 | 12/17/2007 |
| 64582 | 64582 | 10/29/2003 | 12/17/2007 |
| 64582 | 64582 | 12/19/2001 | 12/16/2008 |
| 64582 | 64582 | 12/19/2001 | 12/16/2008 |
| 64582 | 64582 | 10/29/2003 | 12/16/2008 |
| 64582 | 64582 | 12/14/1999 | 12/15/2009 |
| 64582 | 64582 | 12/14/1999 | 12/15/2009 |
| 64582 | 64582 | 12/19/2001 | 12/13/2010 |
| 64582 | 64582 | 12/19/2001 | 12/13/2010 |
| 64582 | 64582 | 10/29/2003 | 12/13/2010 |
| 64582 | 64582 | 10/29/2003 | 12/13/2010 |
| 64582 | 64582 | 12/11/2001 | 12/11/2011 |
| 64582 | 64582 | 12/11/2001 | 12/12/2011 |
| 64582 | 64582 | 12/11/2001 | 12/12/2011 |
| 64582 | 64582 | 12/10/2002 | 12/10/2012 |
| 64582 | 64582 | 12/10/2002 | 12/11/2012 |
| 64582 | 64582 | 12/09/2003 | 12/09/2013 |
| 64582 | 64582 | 12/09/2003 | 12/10/2013 |
| 64582 | 64582 | 12/09/2003 | 12/10/2013 |
| 64737 | 64737 | 07/18/2000 | 12/17/2006 |
| 64737 | 64737 | 12/19/2001 | 12/17/2007 |
| 64737 | 64737 | 07/18/2000 | 12/16/2008 |
| 64737 | 64737 | 12/19/2001 | 12/16/2008 |
| 64737 | 64737 | 12/14/1999 | 12/14/2009 |
| 64737 | 64737 | 12/14/1999 | 12/15/2009 |
| 64737 | 64737 | 12/12/2000 | 12/12/2010 |
| 64737 | 64737 | 12/12/2000 | 12/13/2010 |
| 64737 | 64737 | 12/19/2001 | 12/13/2010 |
| 64737 | 64737 | 12/11/2001 | 12/11/2011 |
| 64737 | 64737 | 12/11/2001 | 12/12/2011 |
| 64737 | 64737 | 12/10/2002 | 12/10/2012 |
| 64737 | 64737 | 12/10/2002 | 12/11/2012 |
| 64737 | 64737 | 12/09/2003 | 12/09/2013 |
| 64737 | 64737 | 12/09/2003 | 12/10/2013 |
| 64737 | 64737 | 12/14/2004 | 12/14/2014 |
| 64737 | 64737 | 12/14/2004 | 12/14/2014 |
| 64737 | 64737 | 10/18/2005 | 10/18/2015 |
| 64737 | 64737 | 10/18/2005 | 10/18/2015 |
| 64957 | 64957 | 12/15/1999 | 12/14/2009 |
| 64957 | 64957 | 12/12/2001 | 12/12/2011 |
| 65493 | 65493 | 12/14/1999 | 12/14/2009 |
| 65493 | 65493 | 12/14/1999 | 12/15/2009 |
| 65493 | 65493 | 04/01/2000 | 04/02/2010 |
| 65493 | 65493 | 12/11/2001 | 12/11/2011 |
| 65493 | 65493 | 12/11/2001 | 12/12/2011 |
| 65493 | 65493 | 12/10/2002 | 12/10/2012 |
| 65493 | 65493 | 12/10/2002 | 12/11/2012 |
| 65493 | 65493 | 12/09/2003 | 12/09/2013 |
| 65493 | 65493 | 12/09/2003 | 12/10/2013 |

NAV000019

| Optionee ID | SSN | Grant Date | Exer Date |
| --- | --- | --- | --- |
| 65493 | 65493 | 12/14/2004 | 12/14/2014 |
| 65493 | 65493 | 12/14/2004 | 12/14/2014 |
| 65493 | 65493 | 10/18/2005 | 10/18/2015 |
| 65493 | 65493 | 10/18/2005 | 10/18/2015 |
| 65670 | 65670 | 10/18/2005 | 10/18/2015 |
| 65847 | 65847 | 07/01/1999 | 07/02/2009 |
| 65847 | 65847 | 12/12/2000 | 12/12/2010 |
| 65847 | 65847 | 12/11/2001 | 12/11/2011 |
| 65847 | 65847 | 12/11/2001 | 12/12/2011 |
| 65847 | 65847 | 12/10/2002 | 12/10/2012 |
| 65847 | 65847 | 12/10/2002 | 12/11/2012 |
| 65847 | 65847 | 12/09/2003 | 12/09/2013 |
| 65847 | 65847 | 12/09/2003 | 12/10/2013 |
| 65847 | 65847 | 12/14/2004 | 12/14/2014 |
| 65847 | 65847 | 10/18/2005 | 10/18/2015 |
| 65881 | 65881 | 12/12/2001 | 12/12/2011 |
| 65881 | 65881 | 12/11/2002 | 12/11/2012 |
| 65881 | 65881 | 12/10/2003 | 12/10/2013 |
| 65881 | 65881 | 12/14/2004 | 12/14/2014 |
| 65881 | 65881 | 10/18/2005 | 10/18/2015 |
| 65912 | 65912 | 10/18/2005 | 10/18/2015 |
| 66009 | 66009 | 12/16/1997 | 12/16/2007 |
| 66009 | 66009 | 12/15/1998 | 12/15/2008 |
| 66009 | 66009 | 12/14/1999 | 12/14/2009 |
| 66009 | 66009 | 12/12/2000 | 12/12/2010 |
| 66009 | 66009 | 12/12/2000 | 12/12/2010 |
| 66009 | 66009 | 12/11/2001 | 12/11/2011 |
| 66009 | 66009 | 12/11/2001 | 12/12/2011 |
| 66009 | 66009 | 12/10/2002 | 12/10/2012 |
| 66009 | 66009 | 12/10/2002 | 12/11/2012 |
| 66009 | 66009 | 12/09/2003 | 12/09/2013 |
| 66009 | 66009 | 12/09/2003 | 12/10/2013 |
| 66009 | 66009 | 12/14/2004 | 12/14/2014 |
| 66260 | 66260 | 10/31/2005 | 10/31/2015 |
| 66260 | 66260 | 10/31/2005 | 10/31/2015 |
| 66452 | 66452 | 12/16/1996 | 12/16/2006 |
| 66452 | 66452 | 12/16/1997 | 12/16/2007 |
| 66452 | 66452 | 12/16/1997 | 12/17/2007 |
| 66452 | 66452 | 12/15/1998 | 12/15/2008 |
| 66452 | 66452 | 12/15/1998 | 12/16/2008 |
| 66452 | 66452 | 12/14/1999 | 12/14/2009 |
| 66452 | 66452 | 12/12/2000 | 12/12/2010 |
| 66452 | 66452 | 12/12/2000 | 12/13/2010 |
| 66452 | 66452 | 12/11/2001 | 12/11/2011 |
| 66452 | 66452 | 12/11/2001 | 12/12/2011 |
| 66452 | 66452 | 12/10/2002 | 12/10/2012 |
| 66452 | 66452 | 12/10/2002 | 12/11/2012 |
| 66452 | 66452 | 12/09/2003 | 12/09/2013 |
| 66452 | 66452 | 12/09/2003 | 12/10/2013 |
| 66656 | 66656 | 12/14/1999 | 12/14/2009 |
| 66656 | 66656 | 12/14/1999 | 12/15/2009 |
| 66656 | 66656 | 12/11/2001 | 12/11/2011 |
| 66656 | 66656 | 12/11/2001 | 12/12/2011 |
| 66656 | 66656 | 12/10/2002 | 12/10/2012 |
| 66656 | 66656 | 12/10/2002 | 12/11/2012 |
| 66656 | 66656 | 12/09/2003 | 12/09/2013 |
| 66656 | 66656 | 12/09/2003 | 12/10/2013 |
| 66656 | 66656 | 12/14/2004 | 12/14/2014 |
| 66656 | 66656 | 10/18/2005 | 10/18/2015 |
| 66905 | 66905 | 12/14/1999 | 12/14/2009 |
| 66905 | 66905 | 12/12/2000 | 12/12/2010 |

NAV000020

| Optionee ID | SSN | Grant Date | Expr Date |
|---|---|---|---|
| 66905 | 66905 | 12/12/2000 | 12/12/2010 |
| 66905 | 66905 | 12/11/2001 | 12/11/2011 |
| 66905 | 66905 | 12/11/2001 | 12/12/2011 |
| 66976 | 66976 | 05/01/1999 | 05/02/2009 |
| 66976 | 66976 | 12/14/1999 | 12/14/2009 |
| 66976 | 66976 | 12/11/2001 | 12/11/2011 |
| 66976 | 66976 | 12/10/2002 | 12/10/2012 |
| 66976 | 66976 | 12/10/2002 | 12/11/2012 |
| 66976 | 66976 | 12/09/2003 | 12/09/2013 |
| 66976 | 66976 | 12/09/2003 | 12/10/2013 |
| 66976 | 66976 | 12/14/2004 | 12/14/2014 |
| 66976 | 66976 | 12/14/2004 | 12/14/2014 |
| 66976 | 66976 | 10/18/2005 | 10/18/2015 |
| 66976 | 66976 | 10/18/2005 | 10/18/2015 |
| 67021 | 67021 | 12/11/2001 | 03/08/2007 |
| 67021 | 67021 | 12/10/2002 | 03/08/2007 |
| 67021 | 67021 | 12/10/2002 | 03/08/2007 |
| 67021 | 67021 | 12/09/2003 | 03/08/2007 |
| 67021 | 67021 | 12/09/2003 | 03/08/2007 |
| 67021 | 67021 | 12/14/2004 | 03/08/2007 |
| 67113 | 67113 | 10/18/2005 | 10/18/2015 |
| 67173 | 67173 | 10/18/2005 | 10/18/2015 |
| 67249 | 67249 | 12/16/1997 | 12/16/2007 |
| 67249 | 67249 | 12/16/1997 | 12/17/2007 |
| 67249 | 67249 | 12/15/1998 | 12/15/2008 |
| 67249 | 67249 | 12/15/1998 | 12/16/2008 |
| 67249 | 67249 | 12/14/1999 | 12/14/2009 |
| 67249 | 67249 | 12/14/1999 | 12/15/2009 |
| 67249 | 67249 | 12/11/2001 | 12/11/2011 |
| 67249 | 67249 | 12/11/2001 | 12/12/2011 |
| 67249 | 67249 | 12/10/2002 | 12/10/2012 |
| 67249 | 67249 | 12/10/2002 | 12/11/2012 |
| 67249 | 67249 | 12/09/2003 | 12/09/2013 |
| 67249 | 67249 | 12/09/2003 | 12/10/2013 |
| 67249 | 67249 | 12/14/2004 | 12/14/2014 |
| 67249 | 67249 | 10/18/2005 | 10/18/2015 |
| 67257 | 67257 | 12/15/2003 | 12/15/2013 |
| 67257 | 67257 | 12/15/2003 | 12/15/2013 |
| 67257 | 67257 | 12/14/2004 | 12/14/2014 |
| 67257 | 67257 | 12/14/2004 | 12/14/2014 |
| 67257 | 67257 | 10/18/2005 | 10/18/2015 |
| 67257 | 67257 | 10/18/2005 | 10/18/2015 |
| 67456 | 67456 | 12/11/2001 | 12/11/2011 |
| 67456 | 67456 | 12/10/2002 | 12/10/2012 |
| 67456 | 67456 | 12/10/2002 | 12/11/2012 |
| 67456 | 67456 | 12/09/2003 | 12/09/2013 |
| 67456 | 67456 | 12/09/2003 | 12/10/2013 |
| 67774 | 67774 | 12/14/1999 | 12/14/2009 |
| 67774 | 67774 | 12/11/2001 | 12/11/2011 |
| 67774 | 67774 | 12/10/2002 | 12/10/2012 |
| 67774 | 67774 | 12/10/2002 | 12/11/2012 |
| 67774 | 67774 | 12/09/2003 | 12/09/2013 |
| 67774 | 67774 | 12/09/2003 | 12/10/2013 |
| 67774 | 67774 | 12/14/2004 | 12/14/2014 |
| 67774 | 67774 | 12/14/2004 | 12/14/2014 |
| 67774 | 67774 | 10/18/2005 | 10/18/2015 |
| 67774 | 67774 | 10/18/2005 | 10/18/2015 |
| 67910 | 67910 | 12/14/2004 | 12/14/2014 |
| 67910 | 67910 | 10/18/2005 | 10/18/2015 |
| 67910 | 67910 | 10/18/2005 | 10/18/2015 |
| 68062 | 68062 | 12/14/2004 | 12/14/2014 |

NAV000021

| Optionee ID | SSN | Grant Date | Exer Date |
|---|---|---|---|
| 68062 | 68062 | 12/14/2004 | 12/14/2014 |
| 68062 | 68062 | 10/18/2005 | 10/18/2015 |
| 68062 | 68062 | 10/18/2005 | 10/18/2015 |
| 68340 | 68340 | 12/15/1999 | 12/14/2009 |
| 68340 | 68340 | 12/12/2001 | 12/12/2011 |
| 68340 | 68340 | 12/10/2003 | 12/10/2013 |
| 68340 | 68340 | 12/14/2004 | 12/14/2014 |
| 68349 | 68349 | 01/01/2002 | 01/02/2012 |
| 68349 | 68349 | 12/10/2002 | 12/10/2012 |
| 68349 | 68349 | 12/10/2002 | 12/11/2012 |
| 68349 | 68349 | 12/09/2003 | 12/09/2013 |
| 68349 | 68349 | 12/14/2004 | 12/14/2014 |
| 68349 | 68349 | 10/18/2005 | 10/18/2015 |
| 68351 | 68351 | 10/18/2005 | 10/18/2015 |
| 68398 | 68398 | 12/14/1999 | 12/14/2009 |
| 68398 | 68398 | 12/14/1999 | 12/15/2009 |
| 68398 | 68398 | 12/12/2000 | 12/12/2010 |
| 68398 | 68398 | 12/12/2000 | 12/13/2010 |
| 68398 | 68398 | 12/11/2001 | 12/11/2011 |
| 68398 | 68398 | 12/11/2001 | 12/12/2011 |
| 68398 | 68398 | 12/10/2002 | 12/10/2012 |
| 68398 | 68398 | 12/10/2002 | 12/11/2012 |
| 68398 | 68398 | 12/09/2003 | 12/09/2013 |
| 68398 | 68398 | 12/09/2003 | 12/10/2013 |
| 68398 | 68398 | 12/14/2004 | 12/14/2014 |
| 68398 | 68398 | 10/18/2005 | 10/18/2015 |
| 68414 | 68414 | 12/15/1998 | 12/15/2008 |
| 68414 | 68414 | 12/14/1999 | 12/14/2009 |
| 68414 | 68414 | 12/11/2001 | 12/11/2011 |
| 68414 | 68414 | 12/11/2001 | 12/12/2011 |
| 68414 | 68414 | 12/10/2002 | 12/10/2012 |
| 68414 | 68414 | 12/10/2002 | 12/11/2012 |
| 68414 | 68414 | 12/09/2003 | 12/09/2013 |
| 68414 | 68414 | 12/09/2003 | 12/10/2013 |
| 68414 | 68414 | 12/14/2004 | 12/14/2014 |
| 68414 | 68414 | 10/18/2005 | 10/18/2015 |
| 68701 | 68701 | 06/09/1998 | 06/10/2008 |
| 68701 | 68701 | 12/15/1998 | 12/15/2008 |
| 68701 | 68701 | 09/16/2005 | 12/16/2008 |
| 68701 | 68701 | 12/14/1999 | 12/14/2009 |
| 68701 | 68701 | 12/14/1999 | 12/15/2009 |
| 68701 | 68701 | 03/15/2005 | 12/15/2009 |
| 68701 | 68701 | 12/12/2000 | 12/12/2010 |
| 68701 | 68701 | 12/12/2000 | 12/13/2010 |
| 68701 | 68701 | 09/16/2005 | 12/13/2010 |
| 68701 | 68701 | 12/11/2001 | 12/11/2011 |
| 68701 | 68701 | 12/11/2001 | 12/12/2011 |
| 68701 | 68701 | 12/10/2002 | 12/10/2012 |
| 68701 | 68701 | 12/10/2002 | 12/11/2012 |
| 68701 | 68701 | 12/10/2002 | 12/11/2012 |
| 68701 | 68701 | 12/09/2003 | 12/09/2013 |
| 68701 | 68701 | 12/09/2003 | 12/10/2013 |
| 68701 | 68701 | 12/14/2004 | 12/14/2014 |
| 68701 | 68701 | 12/14/2004 | 12/14/2014 |
| 68701 | 68701 | 10/18/2005 | 10/18/2015 |
| 68701 | 68701 | 10/18/2005 | 10/18/2015 |
| 68856 | 68856 | 01/01/2002 | 01/02/2012 |
| 68856 | 68856 | 12/10/2002 | 12/10/2012 |
| 68856 | 68856 | 12/10/2002 | 12/11/2012 |
| 68856 | 68856 | 12/09/2003 | 12/09/2013 |
| 68856 | 68856 | 12/14/2004 | 12/14/2014 |

NAV000022

| Optionee ID | SSN | Grant Date | Exer Date |
|---|---|---|---|
| 68856 | 68856 | 10/18/2005 | 10/18/2015 |
| 68888 | 68888 | 09/01/2000 | 09/02/2010 |
| 68888 | 68888 | 12/12/2000 | 12/12/2010 |
| 68888 | 68888 | 12/11/2001 | 12/11/2011 |
| 68888 | 68888 | 12/10/2002 | 12/10/2012 |
| 68888 | 68888 | 12/10/2002 | 12/11/2012 |
| 68888 | 68888 | 12/09/2003 | 12/09/2013 |
| 68888 | 68888 | 12/09/2003 | 12/10/2013 |
| 68888 | 68888 | 12/14/2004 | 12/14/2014 |
| 68888 | 68888 | 10/18/2005 | 10/18/2015 |
| 68969 | 68969 | 12/14/1999 | 12/14/2009 |
| 68969 | 68969 | 12/14/1999 | 12/15/2009 |
| 68969 | 68969 | 12/12/2000 | 12/12/2010 |
| 68969 | 68969 | 12/11/2001 | 12/11/2011 |
| 68969 | 68969 | 12/11/2001 | 12/12/2011 |
| 68969 | 68969 | 12/10/2002 | 12/10/2012 |
| 68969 | 68969 | 12/10/2002 | 12/11/2012 |
| 68969 | 68969 | 12/09/2003 | 12/09/2013 |
| 68969 | 68969 | 12/09/2003 | 12/10/2013 |
| 68969 | 68969 | 12/14/2004 | 12/14/2014 |
| 68969 | 68969 | 10/18/2005 | 10/18/2015 |
| 69071 | 69071 | 08/15/2003 | 08/16/2013 |
| 69071 | 69071 | 12/09/2003 | 12/09/2013 |
| 69071 | 69071 | 12/14/2004 | 12/14/2014 |
| 69071 | 69071 | 12/14/2004 | 12/14/2014 |
| 69071 | 69071 | 10/18/2005 | 10/18/2015 |
| 69071 | 69071 | 10/18/2005 | 10/18/2015 |
| 69122 | 69122 | 10/18/2005 | 10/18/2015 |
| 69432 | 69432 | 04/01/2003 | 05/22/2008 |
| 69432 | 69432 | 12/09/2003 | 05/22/2008 |
| 69432 | 69432 | 12/14/2004 | 05/22/2008 |
| 69432 | 69432 | 10/18/2005 | 05/22/2008 |
| 69455 | 69455 | 07/01/2002 | 07/02/2012 |
| 69455 | 69455 | 12/10/2002 | 12/10/2012 |
| 69455 | 69455 | 12/10/2002 | 12/11/2012 |
| 69455 | 69455 | 12/09/2003 | 12/09/2013 |
| 69455 | 69455 | 12/14/2004 | 12/14/2014 |
| 69455 | 69455 | 10/18/2005 | 10/18/2015 |
| 69455 | 69455 | 10/18/2005 | 10/18/2015 |
| 69460 | 69460 | 12/11/2001 | 12/11/2011 |
| 69460 | 69460 | 12/10/2002 | 12/10/2012 |
| 69460 | 69460 | 12/10/2002 | 12/11/2012 |
| 69460 | 69460 | 12/09/2003 | 12/09/2013 |
| 69460 | 69460 | 12/09/2003 | 12/10/2013 |
| 69460 | 69460 | 12/14/2004 | 12/14/2014 |
| 69460 | 69460 | 12/14/2004 | 12/14/2014 |
| 69460 | 69460 | 10/18/2005 | 10/18/2015 |
| 69460 | 69460 | 10/18/2005 | 10/18/2015 |
| 69489 | 69489 | 12/14/2004 | 12/14/2014 |
| 69489 | 69489 | 10/18/2005 | 10/18/2015 |
| 69616 | 69616 | 06/01/2000 | 06/02/2010 |
| 69616 | 69616 | 12/11/2001 | 12/11/2011 |
| 69616 | 69616 | 12/10/2002 | 12/10/2012 |
| 69616 | 69616 | 12/10/2002 | 12/11/2012 |
| 69616 | 69616 | 12/09/2003 | 12/09/2013 |
| 69616 | 69616 | 12/09/2003 | 12/10/2013 |
| 69616 | 69616 | 12/14/2004 | 12/14/2014 |
| 69616 | 69616 | 10/18/2005 | 10/18/2015 |
| 69746 | 69746 | 12/14/2004 | 11/20/2007 |
| 69746 | 69746 | 10/18/2005 | 11/20/2007 |
| 79533 | 79533 | 12/14/2004 | 09/28/2007 |

NAV000023

| Optionee ID | SSN | Grant Date | Exer Date |
|---|---|---|---|
| 79533 | 79533 | 10/18/2005 | 09/28/2007 |
| 80044 | 80044 | 12/16/1997 | 12/16/2007 |
| 80044 | 80044 | 12/16/1997 | 12/17/2007 |
| 80044 | 80044 | 12/15/1998 | 12/15/2008 |
| 80044 | 80044 | 12/15/1998 | 12/16/2008 |
| 80044 | 80044 | 12/14/1999 | 12/14/2009 |
| 80044 | 80044 | 12/12/2000 | 12/12/2010 |
| 80044 | 80044 | 12/12/2000 | 12/13/2010 |
| 80044 | 80044 | 12/11/2001 | 12/11/2011 |
| 80044 | 80044 | 12/11/2001 | 12/12/2011 |
| 80044 | 80044 | 12/10/2002 | 12/10/2012 |
| 80044 | 80044 | 12/10/2002 | 12/11/2012 |
| 80044 | 80044 | 12/09/2003 | 12/09/2013 |
| 80044 | 80044 | 12/09/2003 | 12/10/2013 |
| 80044 | 80044 | 12/14/2004 | 12/14/2014 |
| 80044 | 80044 | 10/18/2005 | 10/18/2015 |
| 80051 | 80051 | 12/18/1996 | 12/17/2007 |
| 80051 | 80051 | 12/17/1997 | 12/17/2007 |
| 80051 | 80051 | 12/16/1998 | 12/15/2008 |
| 80051 | 80051 | 12/15/1999 | 12/14/2009 |
| 80051 | 80051 | 12/13/2000 | 12/13/2010 |
| 80051 | 80051 | 12/12/2001 | 12/12/2011 |
| 80051 | 80051 | 12/11/2002 | 12/11/2012 |
| 80051 | 80051 | 12/10/2003 | 12/10/2013 |
| 80051 | 80051 | 12/14/2004 | 12/14/2014 |
| 80051 | 80051 | 10/18/2005 | 10/18/2015 |
| 80211 | 80211 | 12/14/1999 | 12/14/2009 |
| 80211 | 80211 | 12/11/2001 | 12/11/2011 |
| 80211 | 80211 | 12/11/2001 | 12/12/2011 |
| 80211 | 80211 | 12/10/2002 | 12/10/2012 |
| 80211 | 80211 | 12/10/2002 | 12/11/2012 |
| 80211 | 80211 | 12/09/2003 | 12/09/2013 |
| 80211 | 80211 | 12/09/2003 | 12/10/2013 |
| 80211 | 80211 | 12/14/2004 | 12/14/2014 |
| 80211 | 80211 | 10/18/2005 | 10/18/2015 |
| 80602 | 80602 | 02/01/2001 | 02/02/2011 |
| 80602 | 80602 | 12/11/2001 | 12/11/2011 |
| 80602 | 80602 | 12/10/2002 | 12/10/2012 |
| 80602 | 80602 | 12/10/2002 | 12/10/2012 |
| 80602 | 80602 | 12/10/2002 | 12/11/2012 |
| 80602 | 80602 | 12/09/2003 | 12/09/2013 |
| 80602 | 80602 | 12/09/2003 | 12/10/2013 |
| 80602 | 80602 | 12/14/2004 | 12/14/2014 |
| 80602 | 80602 | 10/18/2005 | 10/18/2015 |
| 80764 | 80764 | 12/14/1999 | 12/14/2009 |
| 80764 | 80764 | 12/14/1999 | 12/15/2009 |
| 80764 | 80764 | 12/12/2000 | 12/12/2010 |
| 80764 | 80764 | 12/12/2000 | 12/12/2010 |
| 80764 | 80764 | 12/11/2001 | 12/11/2011 |
| 80764 | 80764 | 12/11/2001 | 12/12/2011 |
| 80764 | 80764 | 12/10/2002 | 12/10/2012 |
| 80764 | 80764 | 12/10/2002 | 12/11/2012 |
| 80764 | 80764 | 12/09/2003 | 12/09/2013 |
| 80764 | 80764 | 12/09/2003 | 12/10/2013 |
| 80764 | 80764 | 12/14/2004 | 12/14/2014 |
| 81106 | 81106 | 12/14/2004 | 02/01/2008 |
| 81106 | 81106 | 10/18/2005 | 02/01/2008 |
| 81107 | 81107 | 12/13/2000 | 12/13/2010 |
| 81124 | 81124 | 12/16/1996 | 12/16/2006 |
| 81124 | 81124 | 07/01/2003 | 07/02/2013 |
| 81124 | 81124 | 12/09/2003 | 12/09/2013 |

NAV000024

| Optionee ID | SSN | Grant Date | Expr Date |
|---|---|---|---|
| 81124 | 81124 | 12/14/2004 | 12/14/2014 |
| 81124 | 81124 | 10/18/2005 | 10/18/2015 |
| 82541 | 82541 | 10/18/2005 | 10/18/2015 |
| 82846 | 82846 | 12/14/2004 | 12/14/2014 |
| 82846 | 82846 | 10/18/2005 | 10/18/2015 |
| 82964 | 82964 | 03/26/2003 | 03/27/2013 |
| 82964 | 82964 | 12/09/2003 | 12/09/2013 |
| 82964 | 82964 | 12/14/2004 | 12/14/2014 |
| 82964 | 82964 | 10/18/2005 | 10/18/2015 |
| 83144 | 83144 | 02/11/2002 | 12/17/2007 |
| 83144 | 83144 | 02/11/2002 | 12/16/2008 |
| 83144 | 83144 | 02/11/2002 | 12/13/2010 |
| 83144 | 83144 | 12/11/2001 | 12/11/2011 |
| 83144 | 83144 | 12/11/2001 | 12/12/2011 |
| 83200 | 83200 | 12/10/2002 | 03/01/2007 |
| 83200 | 83200 | 12/10/2002 | 03/01/2007 |
| 83200 | 83200 | 12/09/2003 | 03/01/2007 |
| 83200 | 83200 | 12/14/2004 | 03/01/2007 |
| 83200 | 83200 | 10/18/2005 | 03/01/2007 |
| 83232 | 83232 | 12/14/2004 | 12/14/2014 |
| 83232 | 83232 | 10/18/2005 | 10/18/2015 |
| 83428 | 83428 | 12/16/1997 | 12/16/2007 |
| 83428 | 83428 | 12/15/1998 | 12/15/2008 |
| 83428 | 83428 | 12/12/2000 | 12/12/2010 |
| 83428 | 83428 | 12/11/2001 | 12/11/2011 |
| 83428 | 83428 | 12/11/2001 | 12/12/2011 |
| 83428 | 83428 | 12/10/2002 | 12/10/2012 |
| 83428 | 83428 | 12/10/2002 | 12/11/2012 |
| 83428 | 83428 | 12/09/2003 | 12/09/2013 |
| 83428 | 83428 | 12/09/2003 | 12/10/2013 |
| 83428 | 83428 | 12/14/2004 | 12/14/2014 |
| 83428 | 83428 | 10/18/2005 | 10/18/2015 |
| 83791 | 83791 | 12/14/1999 | 12/14/2009 |
| 83791 | 83791 | 12/14/1999 | 12/15/2009 |
| 83791 | 83791 | 12/11/2001 | 12/11/2011 |
| 83791 | 83791 | 12/11/2001 | 12/12/2011 |
| 83791 | 83791 | 12/10/2002 | 12/10/2012 |
| 83791 | 83791 | 12/10/2002 | 12/11/2012 |
| 83791 | 83791 | 12/09/2003 | 12/09/2013 |
| 83791 | 83791 | 12/09/2003 | 12/10/2013 |
| 83791 | 83791 | 12/14/2004 | 12/14/2014 |
| 83791 | 83791 | 10/18/2005 | 10/18/2015 |
| 84040 | 84040 | 12/14/2004 | 12/14/2014 |
| 84040 | 84040 | 10/18/2005 | 10/18/2015 |
| 84262 | 84262 | 12/11/2001 | 12/11/2011 |
| 84262 | 84262 | 12/10/2002 | 12/10/2012 |
| 84262 | 84262 | 12/10/2002 | 12/11/2012 |
| 84262 | 84262 | 12/09/2003 | 12/09/2013 |
| 84262 | 84262 | 12/09/2003 | 12/10/2013 |
| 84262 | 84262 | 12/14/2004 | 12/14/2014 |
| 84262 | 84262 | 10/18/2005 | 10/18/2015 |
| 84331 | 84331 | 08/30/1999 | 08/31/2009 |
| 84331 | 84331 | 12/14/1999 | 12/14/2009 |
| 84331 | 84331 | 12/14/1999 | 12/15/2009 |
| 84331 | 84331 | 05/02/2000 | 05/03/2010 |
| 84331 | 84331 | 12/11/2001 | 12/11/2011 |
| 84331 | 84331 | 12/11/2001 | 12/12/2011 |
| 84331 | 84331 | 12/10/2002 | 12/10/2012 |
| 84331 | 84331 | 12/10/2002 | 12/11/2012 |
| 84331 | 84331 | 12/09/2003 | 12/09/2013 |
| 84331 | 84331 | 12/09/2003 | 12/10/2013 |

NAV000025

| Optionee ID | SSN | Grant Date | Exer Date |
|---|---|---|---|
| 84331 | 84331 | 12/14/2004 | 12/14/2014 |
| 84331 | 84331 | 12/14/2004 | 12/14/2014 |
| 84331 | 84331 | 10/18/2005 | 10/18/2015 |
| 84331 | 84331 | 10/18/2005 | 10/18/2015 |
| 85046 | 85046 | 12/14/2004 | 12/14/2014 |
| 85046 | 85046 | 10/18/2005 | 10/18/2015 |
| 85222 | 85222 | 09/01/2000 | 09/02/2010 |
| 85222 | 85222 | 12/12/2000 | 12/12/2010 |
| 85222 | 85222 | 12/11/2001 | 12/11/2011 |
| 85222 | 85222 | 12/10/2002 | 12/10/2012 |
| 85222 | 85222 | 12/10/2002 | 12/11/2012 |
| 85222 | 85222 | 12/09/2003 | 12/09/2013 |
| 85222 | 85222 | 12/09/2003 | 12/10/2013 |
| 85222 | 85222 | 12/14/2004 | 12/14/2014 |
| 85222 | 85222 | 10/18/2005 | 10/18/2015 |
| 85276 | 85276 | 12/16/1997 | 12/16/2007 |
| 85276 | 85276 | 12/16/1997 | 12/17/2007 |
| 85276 | 85276 | 12/15/1998 | 12/15/2008 |
| 85276 | 85276 | 12/15/1998 | 12/16/2008 |
| 85276 | 85276 | 12/14/1999 | 12/14/2009 |
| 85276 | 85276 | 12/14/1999 | 12/15/2009 |
| 85276 | 85276 | 12/12/2000 | 12/12/2010 |
| 85276 | 85276 | 12/12/2000 | 12/13/2010 |
| 85276 | 85276 | 12/11/2001 | 12/11/2011 |
| 85276 | 85276 | 12/11/2001 | 12/12/2011 |
| 85276 | 85276 | 12/10/2002 | 12/10/2012 |
| 85276 | 85276 | 12/10/2002 | 12/11/2012 |
| 85276 | 85276 | 12/09/2003 | 12/09/2013 |
| 85276 | 85276 | 12/09/2003 | 12/10/2013 |
| 85276 | 85276 | 12/14/2004 | 12/14/2014 |
| 85276 | 85276 | 12/14/2004 | 12/14/2014 |
| 85276 | 85276 | 10/18/2005 | 10/18/2015 |
| 85276 | 85276 | 10/18/2005 | 10/18/2015 |
| 85276 | 85276 | 10/18/2005 | 10/18/2015 |
| 85501 | 85501 | 04/01/2003 | 04/02/2013 |
| 85501 | 85501 | 12/09/2003 | 12/09/2013 |
| 85501 | 85501 | 12/14/2004 | 12/14/2014 |
| 85501 | 85501 | 10/18/2005 | 10/18/2015 |
| 85556 | 85556 | 02/16/1998 | 02/16/2008 |
| 85556 | 85556 | 12/15/1998 | 12/16/2008 |
| 85556 | 85556 | 12/14/1999 | 12/14/2009 |
| 85556 | 85556 | 12/14/1999 | 12/15/2009 |
| 85556 | 85556 | 12/12/2000 | 12/12/2010 |
| 85556 | 85556 | 12/11/2001 | 12/11/2011 |
| 85556 | 85556 | 12/11/2001 | 12/12/2011 |
| 85556 | 85556 | 12/10/2002 | 12/10/2012 |
| 85556 | 85556 | 12/10/2002 | 12/11/2012 |
| 85556 | 85556 | 12/09/2003 | 12/09/2013 |
| 85556 | 85556 | 12/09/2003 | 12/10/2013 |
| 85556 | 85556 | 12/14/2004 | 12/14/2014 |
| 85556 | 85556 | 10/18/2005 | 10/18/2015 |
| 85770 | 85770 | 04/01/2003 | 04/02/2013 |
| 85770 | 85770 | 12/09/2003 | 12/09/2013 |
| 85770 | 85770 | 12/14/2004 | 12/14/2014 |
| 85770 | 85770 | 10/18/2005 | 10/18/2015 |
| 85855 | 85855 | 12/14/1999 | 12/14/2009 |
| 85855 | 85855 | 12/11/2001 | 12/11/2011 |
| 85855 | 85855 | 12/11/2001 | 12/12/2011 |
| 86413 | 86413 | 04/01/2002 | 04/02/2012 |
| 86413 | 86413 | 12/10/2002 | 12/10/2012 |
| 86413 | 86413 | 12/10/2002 | 12/11/2012 |

NAV000026

| Optionee ID | SSN | Grant Date | Expr Date |
|---|---|---|---|
| 86413 | 86413 | 12/09/2003 | 12/09/2013 |
| 86413 | 86413 | 12/14/2004 | 12/14/2014 |
| 86413 | 86413 | 10/18/2005 | 10/18/2015 |
| 86593 | 86593 | 12/14/1999 | 04/05/2007 |
| 86593 | 86593 | 12/14/1999 | 04/05/2007 |
| 86593 | 86593 | 12/12/2000 | 04/05/2007 |
| 86593 | 86593 | 12/11/2001 | 04/05/2007 |
| 86593 | 86593 | 12/11/2001 | 04/05/2007 |
| 86593 | 86593 | 12/10/2002 | 04/05/2007 |
| 86593 | 86593 | 12/10/2002 | 04/05/2007 |
| 86593 | 86593 | 12/09/2003 | 04/05/2007 |
| 86593 | 86593 | 12/09/2003 | 04/05/2007 |
| 86593 | 86593 | 12/14/2004 | 04/05/2007 |
| 86593 | 86593 | 10/18/2005 | 04/05/2007 |
| 87617 | 87617 | 12/15/1998 | 12/15/2008 |
| 87617 | 87617 | 12/15/1998 | 12/16/2008 |
| 87617 | 87617 | 12/14/1999 | 12/14/2009 |
| 87617 | 87617 | 12/14/1999 | 12/15/2009 |
| 87617 | 87617 | 12/12/2000 | 12/12/2010 |
| 87617 | 87617 | 12/11/2001 | 12/11/2011 |
| 87617 | 87617 | 12/11/2001 | 12/12/2011 |
| 87617 | 87617 | 12/10/2002 | 12/10/2012 |
| 87617 | 87617 | 12/10/2002 | 12/11/2012 |
| 87617 | 87617 | 12/09/2003 | 12/09/2013 |
| 87617 | 87617 | 12/09/2003 | 12/10/2013 |
| 87617 | 87617 | 12/14/2004 | 12/14/2014 |
| 87617 | 87617 | 12/14/2004 | 12/14/2014 |
| 87617 | 87617 | 10/18/2005 | 10/18/2015 |
| 87617 | 87617 | 10/18/2005 | 10/18/2015 |
| 87632 | 87632 | 12/09/2003 | 12/09/2013 |
| 87632 | 87632 | 12/14/2004 | 12/14/2014 |
| 87632 | 87632 | 10/18/2005 | 10/18/2015 |
| 88381 | 88381 | 03/01/2001 | 11/22/2009 |
| 88381 | 88381 | 12/11/2001 | 11/22/2009 |
| 88381 | 88381 | 12/10/2002 | 11/22/2009 |
| 88381 | 88381 | 12/10/2002 | 11/22/2009 |
| 88381 | 88381 | 12/09/2003 | 11/22/2009 |
| 88381 | 88381 | 12/14/2004 | 11/22/2009 |
| 88381 | 88381 | 10/18/2005 | 11/22/2009 |
| 88665 | 88665 | 12/17/1993 | 12/16/2006 |
| 88665 | 88665 | 12/18/1996 | 12/17/2006 |
| 88665 | 88665 | 12/17/1997 | 12/17/2007 |
| 88665 | 88665 | 12/16/1998 | 12/15/2008 |
| 88665 | 88665 | 12/15/1999 | 12/14/2009 |
| 88665 | 88665 | 12/13/2000 | 12/13/2010 |
| 88665 | 88665 | 12/12/2001 | 12/12/2011 |
| 88723 | 88723 | 12/14/2004 | 12/14/2014 |
| 88723 | 88723 | 10/18/2005 | 10/18/2015 |
| 89096 | 89096 | 12/14/1999 | 12/14/2009 |
| 89096 | 89096 | 12/12/2000 | 12/12/2010 |
| 89096 | 89096 | 12/11/2001 | 12/11/2011 |
| 89096 | 89096 | 12/11/2001 | 12/12/2011 |
| 89096 | 89096 | 12/10/2002 | 12/10/2012 |
| 89096 | 89096 | 12/10/2002 | 12/11/2012 |
| 89096 | 89096 | 12/09/2003 | 12/09/2013 |
| 89096 | 89096 | 12/09/2003 | 12/10/2013 |
| 89096 | 89096 | 12/14/2004 | 12/14/2014 |
| 89096 | 89096 | 12/14/2004 | 12/14/2014 |
| 89096 | 89096 | 10/18/2005 | 10/18/2015 |
| 89096 | 89096 | 10/18/2005 | 10/18/2015 |

NAV000027

| Optionee ID | SSN | Grant Date | Expr Date |
|---|---|---|---|
| 89807 | 89807 | 12/12/2000 | 12/12/2010 |
| 89807 | 89807 | 12/11/2001 | 12/11/2011 |
| 89807 | 89807 | 12/11/2001 | 12/12/2011 |
| 89807 | 89807 | 12/10/2002 | 12/10/2012 |
| 89807 | 89807 | 12/10/2002 | 12/11/2012 |
| 89807 | 89807 | 12/09/2003 | 12/09/2013 |
| 89807 | 89807 | 12/09/2003 | 12/10/2013 |
| 89807 | 89807 | 12/14/2004 | 12/14/2014 |
| 89807 | 89807 | 10/18/2005 | 10/18/2015 |
| 94649 | 94649 | 10/18/2005 | 06/30/2007 |

Version: 2008.05.09
Run Date:08/06/2008  8:54:46PM

NAV000028